# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

-------------------------------------------------------------X

BIENVENIDO FRANCO, Individually, and
on Behalf of All Others Similarly Situated,          Civil Case No. CV 07-3956 (JS) (AKT)

                           Plaintiff,

-against-

LEND AMERICA, INC.

                           Defendant.
-------------------------------------------------------------X

**DEFENDANT IDEAL MORTGAGE BANKERS, LTD. D/B/A LEND AMERICA'S OPPOSITION TO PLAINTIFF BIENVENIDO FRANCO'S MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. §216(B)**

                                       /s/ Mitchel H. Kider
                                       Mitchel H. Kider
                                       David M. Souders*
                                       Van T. Lam*
                                       Weiner Brodsky Sidman Kider PC
                                       1300 19th Street NW, Fifth Floor
                                       Washington, DC 20036
                                       Telephone: (202) 628-2000
                                       Facsimile: (202) 628-2011

                                       and

                                       Daniel F. Markham
                                       Coughlin Duffy LLP
                                       Wall Street Plaza
                                       88 Pine Street, 5th Floor
                                       New York, NY 10005
                                       Telephone: (212) 483-0105
                                       Facsimile: (212) 480-3899

                                       Attorneys for Defendant Ideal Mortgage Bankers, Ltd.
                                       d/b/a Lend America

                                       * *Pro hac vice* application pending

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

I.      INTRODUCTION .............................................................................................1

II.     STATEMENT OF RELEV FACTS ...............................................................3

        A.     Structure of the Sales Department And Loan
              Officer Sales Force At Lend America's Melville Office.........................................3

            1.     Lend America's Loan Officers ...................................................3

            2.     Plaintiff Bienvenido Franco's Employment At Lend America ..................4

III.    IT IS WITHIN THIS COURT'S DISCRETION TO DETEMNE IF
        NOTICE IS APPRIOPRIATE .........................................................................5

        A.     The Court Has Discretion To Deny The Sending Of Notice to Potential Collective
              Action Members.......................................................................5

        B.     FLSA Exemptions Applicable To Lend America's Loan Officers .........................8

            1.     Outside Sales Exemptions..........................................................9

            2.     Administrative Exemptions .......................................................10

            3.     Highly Compensated Employee Exemption.............................................11

            4.     Combination Exemption ...........................................................11

IV. PLAINTIFF HAS FAILED TOMEET HIS BURDEN OF ESTABLISHING THAT ALL
     FORMER AND CURRENT LEND AMERICA LOAN OFFICERS IN THE MELVILLE
     OFFICE ARE SIMILARLY SITUATED TO HIM AND TO EACH OTHER ...............12

        A.     Plaintiff Cannot Be Deemed Similarly Situated To Other Loan Officers Because
              Determining Plaintiff's (And Putative Class Members') Exempt Status
              Necessarily Involves Highly Individualized Inquiries...........................................12

        B.     Plaintiff Is Not Similarly Situated To Other Loan Officers, And Those Other Loan
              Officers Are Not Similarly Situated To Each Other............................................16

            1.     The Job Duties Of Lend America's Loan Officers Vary With Respect To
                  How They Generate Business...................................................16

i

2. The Job Duties of Loan Officers Vary Depending On Whether They Are Also In Managerial Positions.....................................................................16

3. The Compensation Of Loan Officers Vary ...............................................18

V. PLAINTIFF HAS NOT, AND CANNOT, SHOW AN UNLAWFUL POLICY RELATING TO LOAN OFFICERS TO JUSTIFY HIS REQUEST FOR NOTICE.....19

A. The Purported Misclassification Of Loan Officers Alone Is Insufficient To Show That The Putative Collective Action Members Are Similarly Situated ................20

B. Premature Notice Could Severely And Irreparably Damage Lend America's Relationship With Its Employee And Customers ...................................................21

VI. PLAINTIFF'S PROPOSED NOTICE IS BIASED AND MISLEADING, AND IN THE VENT THAT THE COURT AUTHORIZES ISSUANCE OF ANY NOTICE, THE NOTICE SHIOUDL BE ONE THAT IS JOINTLY DRAFTED BY BOTH PARTIES .....................................................................................................................22

V. CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Allen v. Marshall Field & Co.*, 93 F.R.D. 438 (N.D. Ill. 1982) .........................................24

*Aquilino v. Home Depot, Inc.*, No. 04-4100,
2006 WL 2583563 (D N.J. Sept. 7, 2006) .............................................................8, 19

*Barron v. Henry County School System,*.............................................................6, 7, 8, 19
242 F. Supp. 2d 1096 (M.D. Ala 2003)

*Basco v. Wal-Mart Stores, Inc.*, No. 00-3184,
2004 WL 1497709 (E.D. La. July 2, 2004) ...........................................................8, 19

*Belcher v. Shoney's, Inc., 927* F. Supp. 249 (M.D. Tenn. 1996) ......................................23

*Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516 (D. Md. 2000) ...............................6

*Chemi v. Champion Mortgage*, No. 2:05-cv-01238-WHW-CCC,
(D.N.J. June 19, 2006) ........................................................................1, 2, 3, 11, 13, 20

*Clausman v. Nortel Networks, Inc.*, No. 02-0400,
2003 WL 21314065 (S.D. Ind. May 1, 2003) ............................................................13

*Dean v. Priceline.com, Inc.*, No. 00-1273,
2001 WL 35961086 (D. Conn. June 6, 2001) .......................................................14, 21

*Diaz v. Electronic Boutique Holding Corp.*, No. 04-0840,
2005 WL 2654270, (Oct. 17, 2005) ...........................................................................20

*Donovan v. Burger King Corp. II*, 675 F.2d 516 (2d Cir. 1982) .....................................14

*Edwards v. City of Long Beach*, 467 F. Supp. 2d 986 (C.D. Cal. 2006) ...........................8

*England v. New Century Finance Corp.*, 370 F. Supp. 2d 504 (M.D. La. 2005) ...............7

*Freeman v. Wa-Mart Strores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003) ...............8, 20

*Freeman v. National Broadcast Co. Inc.*, 80 F.3d 78 (2d Cir. 1996) ...............................14

*Garza v. Chicago Transit. Authority*, No. 00-C-0438,
2001 WL 503036 (N.D. Ill. May 8, 2001) .................................................................23

*Haines v. Southern Retailers, Inc.*, 939 F. Supp. 441 (E.D. Va. 1996) ...........................14

*Hall v. Burk*, No. 301-2487, 2002 WL 413901 (N.D. Tex. Mar.11, 2002) .................8, 22

*Haynes v. Singer Co., Inc.*, 696 F.2d 884 (11th Cir. 1983) .................................8

*Heagney v. European American Bank,* 122 F.R.D. 125
   (E.D.N.Y. 1988) .........................................................................19

*Held v. National R.R. Passenger Corp.*, 101 F.R.D. 420 (D.D.C. 1984) ........................23

*Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208 (11th Cir. 2001) .................6

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ......................................6, 7, 19

*Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265 (M.D. Ala. 2004) ...............................13, 21

*King v. ITT Continental Baking Co.*, No. 84-C-3410,
   1986 WL 2628 (N.D. Ill. Feb. 18, 1986) ....................................................24

*King v. West Corp.*, No. 04-318, 2006 WL 118577 (D. Neb. Jan. 13, 2006) ...................21

*Levinson v. Primedia, Inc.*, No. 02-2222,
   2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ...................................7, 8, 20

*Johnson v. American Airlines, Inc.*, 531 F. Supp. 957 (D.C. Tex. 1982) ...................23, 24

*Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987) ......................................6

*Madrid v. Minolta Business Solutions, Inc.*, No. 02-2294,
   2002 WL 31190172 (S.D.N.Y. Oct. 2, 2002).............................................7

*Mike v. Safeco Insurance Co. of Am.*, 274 F. Supp. 2d 216 (D. Conn. 2003) 7, 8, 13, 14, 19

*Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995) ........................................6

*Morisky v. Public Service Electrical & Gas Co.*,
   111 F. Supp. 2d 493 (D.N.J. 2000) ...........................................7, 19, 20, 21

*Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545
   (E.D. Mich. 2004) ...................................................................2, 13

*Pfohl v. Farmers Insurance Group*, No. 03-3080,
   2004 WL 554834 (C.D. Cal. March 1, 2004) ...........................................13

*Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623 (D. Colo. 2002) .......................................24

*Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo.1990) ................................6

*Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392 (D.N.J. 1998)...................................7

*Trinh v. JPMorgan Chase & Co.*, No. 07-CV-1666,
    2008 WL 1860161 (S.D. Cal. April 22, 2008) .........................................................2, 13

*Vengulekar v. Silverline Technologies, Ltd.*, 220 F.R.D. 222 (S.D.N.Y. 2003) ................7

*Watkins v. Milliken & Co.*, 613 F. Supp. 408 (W.D.N.C. 1984) ......................................23

## STATUTES

29 C.F.R. § 541.102 ........................................................................................................14

29 C.F.R. § 541.103 ........................................................................................................15

29 C.F.R. § 541.200(a)(2)-(3) .........................................................................................15

29 C.F.R. § 541.201(c) ....................................................................................................10

29 C.F.R. § 541.202(b) ....................................................................................................15

29 C.F.R. § 541.203(b) ...............................................................................................10, 15

29 C.F.R. § 541.2...........................................................................................................21

29 C.F.R. § 541.500(a)(1)-(2) ..............................................................................9, 10, 15

29 C.F.R. § 541.500(c)......................................................................................................9

29 C.F.R. § 541.600(a) ....................................................................................................11

29 C.F.R. § 541.601(a) ...............................................................................................11, 15

29 C.F.R. § 541.700(a) ....................................................................................................15

29 C.F.R. § 541.708 ...................................................................................................11, 15

The Fair Labor Standards Act

   29 U.S.C. § 206.............................................................................................................5

   29 U.S.C. § 207 ............................................................................................................5

29 U.S.C. § 213(a)(1) ................................................................................................9, 10

29 U.S.C. § 216(b) ....................................................................................................6, 20

## I.    INTRODUCTION

Plaintiff Bienvenido Franco ("Plaintiff") is a former loan officer at Defendant Ideal Mortgage Bankers, Ltd. d/b/a Lend America's ("Lend America") headquarters in Melville, New York ("Melville Office").[1]  Plaintiff filed this minimum wage and overtime litigation against Lend America, seeking to certify this case as a collective action under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and to send notice to every current and former Loan Officer who works or has worked at the Melville Office, regardless of the positions they held or the duties they performed; how they were paid or the compensation plan that applied to them; the number of loans they routinely book; whether they were full-time or part-time; and whether they even worked overtime.[2]

The United States Department of Labor ("DOL"), the agency charged with enforcing and interpreting the FLSA and the application of minimum wage and overtime exemptions, has made clear that the question of whether mortgage loan officers are exempt necessarily involves a series of individualized inquiries because "an employee's exempt status is not determined based on job title or job classification; rather, it is determined by analyzing each particular employee's actual job duties and compensation under the applicable regulations."  U.S. Department of Labor Opinion Letter, FLSA 2006-31, Sept. 8, 2006.  Federal courts have similarly held that retail mortgage loan officers are too dissimilar to be permitted to pursue overtime claims in a class or collective action.  *Chemi v. Champion Mortgage*, No. 2:05-cv-01238-WHW-CCC, at 9 (D.N.J.

---

[1]  On March 7, 2008, Plaintiff filed a motion to amend the Complaint to, among other things, add a Rule 23 class on purported violations of New York Labor Law Articles 6 and 19 and NYCRR §138-2.1 *et seq.* and add four former and current officers of Ideal Mortgage as individual defendants.  Plaintiff's Motion to Amend the Complaint is currently pending.

[2]  In his Complaint, Plaintiff originally sought to certify a collective action on behalf of all current and former loan officers employed by Lend America.  Plaintiff's Motion for Condition Collective Certification, however, limits his request for conditional collective certification to all current and former loan officers employed by Lend America in the Melville Office.  Plaintiff's Motion, p. 2.

June 19, 2006) (denying conditional collective certification in mortgage loan officer case); *Trinh v. JPMorgan Chase & Co.*, No. 07-1666, 2008 WL 1860161 (S.D. Cal. April 22, 2008), at *4 (same); *Olivo v. GMAC Mortgage Corp.*, 374 F. Supp. 2d 545, 551 (E.D. Mich. 2004) (same). As the court cautioned in *Chemi*, "even at the notice stage, the Court may not blithely assume, as suggested by Plaintiffs, that satisfying the similarly situated standard can be accomplished by alleging in a conclusory fashion that all loan officers…were subject to the same 'policy of an allegedly improper exemption.'" *Chemi*, No. 2:05-cv-01238-WHW-CCC, at 3.

To meet their burden and convince this Court that notice is appropriate, Plaintiff must offer more than conclusory allegations. Plaintiff admits that it is his burden to establish:

- the extent of the similarities among the members of the proposed collective action;
- whether there is evidence that the alleged activity was an unlawful company-wide practice; and
- the extent to which members of the proposed action will rely on common evidence.

See Plaintiff's Motion, at p. 6-9. While acknowledging his burden, Plaintiff has failed to carry it.

First, Plaintiff is not similarly situated to Lend America's hundreds of other loan officers, and those loan officers are not similarly situated to each other. Plaintiff cannot succeed on this motion because the very issue that he erroneously alleges makes him "similarly situated" – that Lend America's loan officers in the Melville Office have allegedly been "misclassified" as exempt from minimum wage and overtime requirements – requires, as a matter of law, an individualized inquiry to assess each loan officer's exempt status.

Second Plaintiff has not identified any unlawful policy at Lend America, let alone one that applies to every one of its several hundred loan officers in the Melville Office regardless of job title, job duties, or compensation. Plaintiff's only argument in this regard is that Lend America's loan officers are allegedly classified as exempt and that this, in turn, constitutes some

company-wide policy. This circular theory, however, has been soundly rejected by numerous courts. In denying conditional certification of a class of loan officers, for example, the court in *Chemi* held that the decision to classify employees as exempt could not be the basis for issuing nationwide notice because otherwise "every case brought before the courts alleging improper designation as non-exempt employees would automatically qualify for conditional certification." No. 2:05-cv-01238-WHW-CCC, at 6.

Third, there is no question that "common evidence" could ever be used in this case. Any suggestion by Plaintiff that his testimony regarding his job duties could ever be used as "common" evidence with respect to any claims by loan officers who cultivated hundreds of client relationships and earned hundreds of thousands of dollars in commissions, simply defies common sense.

In short, Plaintiff has patently failed to demonstrate that Lend America's loan officers are sufficiently similarly situated. Accordingly, the Court should not allow Plaintiff to send widespread court-facilitated notice to dissimilar employees, or to require Lend America to provide information regarding hundreds of loan officers employed since 2004. Plaintiff's Motion to Proceed as a Collective Action and Facilitate Notice under the FLSA should be denied in its entirety.

## II.    STATEMENT OF RELEVANT FACTS

### A.    Structure Of The Sales Department And Loan Officer Sales Force At Lend America's Melville Office.

#### 1.    Lend America's Loan Officers.

Lend America is a mortgage banker and broker based in Melville, New York. Lend America is a direct lender in over 30 states across the United States, specializing in conventional, FHA and Alt-A residential mortgages. Declaration of Denise Tyler ("Tyler Decl.") ¶ 3. Lend

3

America currently employs approximately 180 inside and outside loan officers at the Melville Office. *Id.*

Inside loan officers and outside loan officers are paid different compensation plans. *Id.* at ¶ 4. Some loan officers have managerial and supervisory duties as team leaders in addition to their obligations to originate and close loans as loan officers and thus, are paid higher commissions. *Id.* at ¶ 5. Some inside loan officers are also team leaders of inside loan officers and thus, are paid a higher commission than other non-team leader loan officers, as their duties are more extensive. *Id.* In addition to their job duties as an inside loan officer, the team leaders are also responsible for assisting their team of loan officers with properly structuring each loan based on the client's needs and monitoring each deal submitted by their loan officers. *Id.* The team leader of inside loan officers are entitled to an override of the commission from the inside loan officers they supervise. *Id.* Furthermore, inside loan officers and outside loan officers receive different commission rates based upon their level of experience. *Id.* at ¶ 6.

**2.    Plaintiff Bienvenido Franco's Employment At Lend America.**

In August 2003, Plaintiff was hired as a junior (inside) loan officer, which meant he received leads from Lend America and made calls as a telemarketer. Declaration of Heidi Frigano ("Frigano Decl.") ¶ 3; Declaration of Brian Fried ("Fried Decl.") ¶ 3. He was assigned to one of the sales departments. Fried Decl. ¶ 3. For a period of time in 2003, Plaintiff was paid an hourly salary/wage of $10.00 per hour plus a $250 per week forgiveable draw plus commissions on deals he closed. Frigano Decl. ¶ 3; Fried Decl. ¶ 3. Brian Fried was his manager until late September 2004, at which time Heidi Frigano joined Mr. Fried as Plaintiff's co-manager. Frigano Decl. ¶¶ 3-4; Fried Decl. ¶¶ 3-4.

Around the time Plaintiff completed a training course to become an outside loan officer

on or about September 26, 2004, he was offered the opportunity to become an outside loan officer, an inside loan officer or a combination of the two. Frigano Decl. ¶ 5; Fried Decl. ¶ 5. In the outside loan officer position, Plaintiff would be soliciting clients from realtors and other sources not provided by Lend America, and paid solely on a commission basis. Frigano Decl. ¶ 5; Fried Decl. ¶ 5. On or about January 2005, Plaintiff's compensation plan was changed to a commission-only basis. Frigano Decl. ¶ 5; Fried Decl. ¶ 5.

Over the next six months or so, it became apparent that Plaintiff had chosen to become an outside loan officer. Frigano Decl. ¶ 6; Fried Decl. ¶ 6. Mr. Franco's managers, Ms. Frigano and Mr. Fried, noticed that he rarely came into the office for more than a few hours a day. Frigano Decl. ¶ 6; Fried Decl. ¶ 6. These managers also noticed that he spent work time on his separate tax consulting business (he was also an accountant) during the work day, that he rarely used the "outbound dialer" used by all inside loan officers, and rarely called prospective clients from the office. Frigano Decl. ¶ 6; Fried Decl. ¶ 6. In short, Plaintiff had become an outside loan officer, and was thus, transferred to an outside loan officer department managed by Michael Primeau. Frigano Decl. ¶ 6; Fried Decl. ¶ 6. Plaintiff's employment with Lend America was terminated on June 6, 2005. Frigano Decl. ¶ 7; Fried Decl. ¶ 7.

## III.   IT IS WITHIN THIS COURT'S DISCRETION TO DETERMINE IF NOTICE IS APPROPRIATE.

The FLSA requires covered employers to pay employees minimum wage and/or one and a half times their regular rate of pay for all hours worked in excess of 40 in one workweek if the employees are not exempt under several recognized exemption categories. 29 U.S.C. §§ 206-207.

### A.   The Court Has Discretion To Deny The Sending Of Notice To Potential Collective Action Members.

The FLSA establishes an "opt-in" scheme under which plaintiffs must affirmatively

notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co.*, 54 F. 3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds*. District courts have *discretionary* power to deny the sending of notice to potential class members in a collective action under 29 U.S.C. § 216(b), where the evidence before the Court fails to demonstrate that the members of the putative collective action are "similarly situated" in relevant aspects, *i.e.*, the factors considered under the applicable exemptions. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).[3] For this reason, the Supreme Court has made clear that the court's discretion to permit the sending of notice should be exercised only in appropriate cases, where the plaintiff has met his or her burden. *Hoffman-La Roche, Inc.*, 493 U.S. 165, 170 (1989); *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) ("The relevant inquiry then is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion."); *see Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1104 (M.D. Ala 2003) (stating that it would be ridiculous to assume that "any time an employer had two or more employees who allegedly were not being paid the overtime they claimed they were due, the employees would be similarly situated and be allowed to proceed with a collective

---

[3] Lend America has not located any decisions by the Second Circuit Court of Appeals regarding the proper procedure for determining when appropriate circumstances exist to allow a plaintiff to proceed as a collective action. Other courts that have confronted these issues have used one of two tests aptly described by the Fifth Circuit Court of Appeals in *Mooney*, 54 F.3d at 1213-14. First, there is the two-part *ad hoc* test set out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987). *See Mooney*, 54 F.3d at 1213-14. Applying the two-part test, the court first uses a more lenient standard than the traditional class certification analysis to determine whether similarly situated persons exist, and if appropriate, the class is conditionally certified. *See Mooney*, 54 F.3d at 1213-14. The second step occurs after notice, time for opting-in, and discovery have taken place. Applying a stricter standard, the court makes a factual determination on the similarly situated question. The second inquiry is usually conducted upon a defendant's motion for decertification. *Id.* at 1214. The alternative to the two-part test is to resort to the analysis applicable to Rule 23 class action certification described as the spurious class action test in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo.1990), in which the court looks at numerosity, commonality, typicality, and adequacy of representation. *Mooney*, 54 F.3d at 1214. It appears that the majority of courts in this Circuit have adopted the *ad hoc* test, which is applied by Plaintiff in his opening brief. Plaintiff's Motion, p. 7-8. Thus, Lend America will also employ the same test in their analysis. As explained herein, however, even the more lenient standard requires more of a showing than what Plaintiff has offered here.

action"). To obtain notice and conditional certification, plaintiff has the burden of demonstrating

that he or she is "similarly situated" to members of the proposed class. *See, e.g., Vengulekar v.

Silverline Techs., Ltd.*, 220 F.R.D. 222, 229 (S.D.N.Y. 2003); *Levinson v. Primedia, Inc.*, No. 02-

2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003) (same). Although the FLSA does not

expressly define "similarly situated," courts in this Circuit have repeatedly held that a plaintiff

must show that the putative members of the collective action "were victims of a common policy

or plan that violated the law." *See, e.g., Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220

(D. Conn. 2003); *Madrid v. Minolta Bus. Solutions, Inc.*, No. 02-2294, 2002 WL 31190172, at

**1, 3 (S.D.N.Y. Oct. 2, 2002), *withdrawn pursuant to settlement* (denying notice where plaintiff

failed to show a "nationwide or otherwise widespread policy of the defendant").

Although a court generally uses a more lenient standard to determine whether potential

collective action members are similarly situated at the notice stage because it usually only has

minimal evidence before it, certification at the notice stage is ***not automatic***. *Morisky v. Pub.*

*Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000). "A court may deny plaintiffs'

right to proceed collectively if the action arises from circumstances purely personal to the

plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New*

*Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see Barron* 242 F. Supp. 2d at

1104 (holding that "the mere fact that violations occurred cannot be enough to establish

similarity, as that would not ultimately be sufficient to establish a pattern and practice without a

showing that the violations were more than sporadic occurrences."). "[S]ubstantial allegations

that the putative class members were together the victims of a single decision, policy, or plan"

are required. *Morisky*, 111 F. Supp. 2d at 497 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118

F.R.D. 392, 407 (D.N.J. 1988). "Unsupported assertions of widespread violations are not

sufficient." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983); *see Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006) (citing *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003)); *see also Hall v. Burk*, No. 301-2487, 2002 WL 413901, at *3 (N.D. Tex. Mar.11, 2002) (citing *Haynes)*.

Moreover, courts in this Circuit have required that there be a factual basis to conclude that questions common to a potential group of plaintiffs would predominate in a determination of the merits in the case. *Mike*, 274 F. Supp. 2d at 220; *Levinson*, 2003 WL 22533428, at *2. A plaintiff must show a factual nexus between his or her situation and the situation of other current and former employees sufficient to determine that they are similarly situated. *Aquilino v. Home Depot, Inc.*, No. 04-4100, 2006 WL 2583563, at *2 (D. N.J. Sept. 7, 2006); *Barron*, 242 F. Supp. 2d at 1103; *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 WL 1497709, *5 (E.D. La. July 2, 2004).

**B.      FLSA Exemptions Applicable To Lend America's Loan Officers.**

With respect to Lend America's loan officers, any one or more of up to four potentially applicable exemptions under the FLSA may apply to each individual loan officer: the administrative exemption, the outside sales exemption, the highly compensated employee exemption, and the combination exemption. As a result, collective treatment of loan officers' claims is inappropriate because an individualized inquiry is required to determine whether ***each*** loan officer qualifies for an exemption (or, in many cases, multiple exemptions) under the FLSA based on particular job duties and how and where those duties are performed. By way of background, each of these potentially available exemptions is summarized below.

**1.      Outside Sales Exemption**

The FLSA exempts from overtime pay requirements anyone employed "in the capacity of outside salesmen." 29 U.S.C. § 213(a)(1). To meet the outside salesman exemption, the DOL regulations provide that the employee's primary duty is: "(i) making sales within the meaning of...the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer;" and "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a)(1)-(2). No minimum guaranteed salary is required for the outside sales exemption to apply. 29 C.F.R. § 541.500(c).

With respect to the application of the outside sales exemption to loan officers, the DOL has again promulgated a recent opinion letter concluding that, depending on the individual duties performed, mortgage loan officers can qualify as exempt outside salespersons. U.S. Department of Labor Opinion Letter, FLSA 2006-11, Mar. 31, 2006. "It is the position of the Wage and Hour Division that employees of finance companies who obtain and solicit mortgages may be exempt outside sales employees if they are 'customarily and regularly engaged away from the employer's place of business in obtaining mortgages from brokers and individuals.'" *Id.* at 2. Moreover, work that is incidental "to the employee's obtaining the mortgage, such as obtaining credit information from the mortgagor, before and after the sale would qualify as exempt work if done with respect to [the employee's] own sales." *Id.* Significantly, with respect to Plaintiff's Motion, the DOL again expressly emphasized that "each 'sales force' loan officer must be *evaluated on an individual basis* to determine whether he or she qualifies for the outside sales exemption." *Id.* at 3. This individualized inquiry turns on the nature of the duties each loan officer performs, the amount of time the loan officer spends performing those tasks, the

relationship of the other duties each loan officer performs to their sales duties, and the amount of time the loan officer spends performing those duties.  *Id.*

### 2.    Administrative Exemption

The FLSA exempts from overtime pay requirements "[a]ny employee employed in a bona fide…administrative…capacity."  29 U.S.C. § 213(a)(1).  To meet the administrative exemption, the U.S. DOL regulations provide that the employee's primary duty: (i) "is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (ii) includes work requiring the exercise of judgment and discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(2)-(3).  This includes "employees acting as advisers or consultants to their employer's clients or customers."  29 C.F.R. § 541.201(c).  Specifically addressing the exemption status of employees in the financial services industry, like loan officers, the FLSA regulations make clear that:

> Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products.

29 C.F.R. § 541.203(b).  A minimum guaranteed salary of $455 per week is required for the administrative exemption to apply.  29 C.F.R. § 541.500(a).

The DOL has issued a recent opinion letter expressly concluding that mortgage loan officers who perform particular duties are exempt under the administrative exemption.  U.S. Department of Labor Opinion Letter, FLSA 2006-31, Sept. 8, 2006.  The administrative exemption applies even if the mortgage loan officer is "involved in some selling to consumers."  *Id.* at 4.  Most significantly for purposes of Plaintiff's Motion, the DOL expressly advises that an

individualized inquiry is necessary in determining whether a mortgage loan officer is exempt because "an employee's exempt status is not determined based on job title or job classification; rather, it is determined *by analyzing each particular employee's actual job duties and compensation* under the applicable regulations." *Id.* at 1 (emphasis added); *see also Chemi*, No. 2:05-cv-01238-WHW-CCC, at 9 (denying collective action notice in mortgage loan officer case because "any determination of whether an employee is properly exempted under the FLSA involves a fact-intensive inquiry into each putative members' employment circumstances").

### 3.    Highly Compensated Employee Exemption

The FLSA also exempts from overtime pay requirements any "employee with total annual compensation of at least $100,000" as long as the "employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an . . . administrative . . . employee." 29 C.F.R. § 541.601(a).  The reason for this is obvious:  "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(c).  Determining if the highly compensated employee exemption applies would require a determine of whether each loan officer made over $100,000 in compensation and, if so, if each regularly performed a single exempt duty on a regular and consistent basis.

### 4.    Combination Exemption

Employees "who perform a combination of exempt duties" such as "executive, administrative, professional, outside sales and computer employees" are also exempt from the FLSA's exemption requirements. 29 C.F.R. § 541.708.  The regulations permit the tacking of exempt work under one section of the regulations to exempt work under another section of those regulations. *See* 29 C.F.R. § 541.600(a).  Thus, if a loan officer is engaged in outside sales and administrative duties, but neither set of duties considered separately would constitute the loan

11

officer's "primary duty," the loan officer could be covered under the combination exemption. As with the administrative and outside sales exemption, determining if the combination exemption applies would require a determination regarding the particularized job duties performed by the employee, the relationship of those job duties, how much time the employee works outside the office, and whether the duties constitute the employee's primary duty.

These particularized inquiries prevent the conditional collective certification sought here.

## IV.    PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING THAT ALL FORMER AND CURRENT LEND AMERICA LOAN OFFICERS IN THE MELVILLE OFFICE ARE SIMILARLY SITUATED TO HIM AND TO EACH OTHER.

Although it is not Lend America's burden to show that the purported class of hundreds of loan officers are not similarly situated, the evidence now before the Court demonstrates just that, *i.e.*, that the hundreds of current and former Lend America loan officers Plaintiff wants to lump together are not similarly situated in any way that is relevant to their FLSA claims or to the applicable exemptions.

### A.    Plaintiff Cannot Be Deemed Similarly Situated To Other Loan Officers Because Determining Plaintiff's (And Putative Class Members') Exempt Status Necessarily Involves Highly Individualized Inquiries.

Determining Plaintiff's exempt status – as well as the exempt status of the hundreds of loan officers he purports to represent – involves an analysis of each individual loan officer's daily job duties, the time spent performing those duties, and where the job duties were performed under the administrative, outside salesperson, highly compensated employee, and combination exemption tests of the FLSA. As discussed above, the DOL has concluded that an individualized inquiry is necessary in determining whether a mortgage loan officer is exempt because "an employee's exempt status is not determined based on job title or classification; rather it is determined by ***analyzing each particular employee's actual job duties and compensation*** under

the applicable regulations." U.S. Department of Labor Opinion Letter, FLSA 2006-31, Sept. 8, 2006 (emphasis added).  Other courts have denied conditional certification to putative collective classes of mortgage loan officers because an individualized inquiry into each loan officer's exempt status is required.  *See, e.g., Trinh*, 2008 WL 1860161, at *4 (denying conditional certification because "whether JPMorgan loan officers are 'exempt' necessarily involves a fact-by-fact inquiry into the circumstances of each employee to see if he or she falls within an administrative, outside sales, highly compensated, combination, or any other exemption"); *Chemi*, No. 2:05-cv-01238-WHW-CCC, at 9 (denying collective action notice in mortgage loan officer case, holding that "any determination of whether an employee is properly exempted under the FLSA involves a fact-intensive inquiry into each putative class member's employment circumstances"); *Olivo*, 374 F. Supp. 2d at 551 (denying collective action notice due to presence of outside sales exemption).

Indeed, courts both within and outside of this Circuit have observed: "[T]he 'similarly situated' inquiry . . . must be analyzed in terms of the nature of the job duties performed by each putative plaintiff, because the ultimate issue to be determined is whether each employee was properly classified as exempt." *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1272 (M.D. Ala. 2004) (denying collective notice to store managers and assistant store managers where duties of each employee needed to be individually evaluated); *see also Pfohl v. Farmers Ins. Group*, No. 03-3080, 2004 WL 554834, at *9 (C.D. Cal. March 1, 2004) ("[D]iffering job duties and [an] individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action in this case."); *Mike*, 274 F. Supp. 2d at 220 (describing the exemption inquiry as "extremely individual and fact-intensive"); *Clausman v. Nortel Networks, Inc.*, No. 02-0400, 2003 WL 21314065, at *4 (S.D. Ind. May 1, 2003) (holding that a

determination as to whether plaintiff was correctly classified requires "the Court...to make a fact-intensive inquiry into each potential plaintiff's employment situation"); *Dean v. Priceline.com, Inc.*, No. 00-1273, 2001 WL 35961086, at *2 (D. Conn. June 6, 2001) (denying motion for collective treatment of FLSA action and stating that "[d]etermining whether an employee is exempt is extremely individual and fact-intensive, requiring a 'detailed analysis of the time spent performing administrative duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities'" (internal citations omitted)).

Here, the individualized inquiries required demonstrate that the loan officers Plaintiff seeks to represent are not "similarly situated" to him. Applying well-settled law under the FLSA, this Court will need to make the following determinations, among others, to adjudicate Plaintiff's claims and the claims of every other current and former loan officer he purports to represent:

- The job duties actually performed by each loan officer on a daily basis, *see Freeman v. Nat'l Broad. Co. Inc.*, 80 F.3d 78, 82-83 (2d Cir. 1996) (recognizing that "factual findings as to the nature of the plaintiffs' employment" is the heart of the overtime exemption inquiry); *see Haines v. Southern Retailers, Inc.*, 939 F. Supp. 441, 447 (E.D. Va. 1996) (in determining whether an employee is exempt from overtime, the "focus necessarily must be on what 'activities or duties the employee *actually* performs'" (internal citations omitted);

- The time the loan officer spent performing each of his or her day-to-day tasks, *see, e.g.,* U.S. Department of Labor Opinion Letter, FLSA 2006-11, Mar. 31, 2006; *Mike*, 274 F. Supp. 2d at 220-21;

- Whether each duty, as performed by the loan officer, is managerial in nature, *see* 29 C.F.R. § 541.102;

- If the loan officer performed non-exempt tasks, whether the performance of management tasks were performed concurrently with non-managerial tasks, *see Donovan v. Burger King Corp. II*, 675 F.2d 516, 521 (2d Cir. 1982) (finding assistant managers exempt where "much of the oversight of the operation can be carried out simultaneously with the performance of non-exempt work, [therefore] the principal or most important work of these employees is managerial");

- Whether the loan officer customarily directed the work of two or more employees,

14

*see* 29 C.F.R. § 541.103;

- The importance of each duty performed by the loan officer, *see* 29 C.F.R. § 541.700(a);

- Whether and to what extent the loan officer's job duties involved the exercise of discretion and independent judgment, *see* 29 C.F.R. § 541.202(b) ("The phrase 'discretion and independent judgment' must be applied in light of all the facts involved in the particular employment situation in which the question arises."); *see* 29 C.F.R. § 541.200(a)(2)-(3);

- Whether the loan officer's job duties involved the performance of work directly related to the management or general business operations of Lend America or Lend America's customers, *see* 29 C.F.R. § 541.200(a)(2)-(3);

- Whether the loan officer collected and analyzed information regarding the customers' income, assets, investments or debts and, if so, what amount of their time was spent performing this function, *see* 29 C.F.R. § 541.203(b);

- Whether the loan officer determined which financial products best met the customer's needs and financial circumstances and, if so, what amount of their time was spent performing this function, *see* 29 C.F.R. § 541.203(b);

- Whether the loan officer advised customers regarding the advantages and disadvantages of financial products and, if so, what amount of their time was spent performing this function, *see* 29 C.F.R. § 541.203(b);

- Whether the loan officer was engaged in marketing, servicing or promoting Chase's financial products and, if so, what amount of their time was spent performing this function, *see* 29 C.F.R. § 541.203(b);

- The extent to which the loan officer engaged in sales duties, *see* 29 C.F.R. § 541.500(a)(1)-(2);

- The extent to which the loan officer engaged in duties that are ancillary to exempt sales duties, U.S. Department of Labor Opinion Letter, FLSA 2006-11, Mar. 31, 2006;

- The amount of time the loan officer worked outside of the office, *see* 29 C.F.R. § 541.500(a)(1)-(2);

- Whether the loan officer made over $100,000 in compensation and, if so, if they regularly performed a single exempt duty on a regular and consistent basis, *see* 29 C.F.R. § 541.601(a); and

- Whether the loan officer performed a sufficient mix of different types of exempt duties to qualify for the combination exemption, *see* 29 C.F.R. § 541.708.

15

**B.      Plaintiff Is Not Similarly Situated To Other Loan Officers, And Those Other Loan Officers Are Not Similarly Situated To Each Other.**

What duties a loan officer performs, how much time he or she devotes to each, how much time he or she spends outside the office engaged in sales, and how many hours each loan officer works will necessarily vary based on a host of factors, including each loan officer's specific job duties, compensation, exercise of discretion and customer base.

**1.      The Job Duties Of Lend America's Loan Officers Vary With Respect To How They Generate Business.**

How each loan officer generates his or her business significantly affects each loan officer's day-to-day duties.  Loan officers whose clients are primarily "self-sourced" -- meaning they spend most, or a significant amount, of their time cultivating personal relationships with realtors and other potential contacts – generally spend significantly more time on identifying and generating potential client relationships than their counterparts who receive the bulk of their business referrals from leads provided by Lend America.  Declaration of Jeffrey Blank ("Blank Decl.") ¶¶ 3-5; Declaration of Carl Dalencourt ("Dalencourt Decl.") ¶¶ 4-7; Declaration of Vlajemy Francoise ("Francoise Decl.") ¶¶3-54; Declaration of Jason Monshine ("Monshine Decl.") ¶¶ 3-5.

Some Lend America loan officers are 100% "self-sourced."  Blank Decl. ¶ 4; Dalencourt Decl. ¶ 5.  In these cases, the loan officers often spend a large amount of their time, in some instances up to 95%, outside of the office.  Blank Decl. ¶ 5; Dalencourt Decl. ¶ 7.  In contrast, other loan officers receive extensive referrals from leads provided by Lend America.  Francoise Decl. ¶ 3; Dalencourt Decl. ¶ 3; Monshine Decl. ¶ 3.

**2.      The Job Duties Of Loan Officers Vary Depending On Whether They Are Also In Managerial Positions.**

Aside from originating and closing their loans, some loan officers have managerial duties

in addition to their duties as a loan officer. Monshine Decl. ¶¶ 2, 4-5.

For example, Jason Monshine, an inside loan officer in the Melville Office who took on the additional role of inside loan officer team leader approximately one year after joining Lend America, is responsible for supervising thirteen full-time inside loan officers in addition to originating and closing his own loans. Monshine Decl. ¶¶ 2, 4-5. As an inside loan officer, Mr. Monshine spends his work day in the Melville Office awaiting and taking incoming calls from prospective clients, making outbound calls to prospective clients, collecting and analyzing clients financial information, assessing their financial circumstances, working with clients to identify mortgage products that are appropriate for their individual financing needs and circumstances, advising clients about the risks and benefits of mortgage products and their alternatives, and taking clients applications over the phone or in person in the office. *Id.* at ¶ 4. As a team leader, Mr. Monshine has the following additional responsibilities with respect to the inside loan officers supervised by him: assisting them in the structuring of their loans; implementing systems for them to do their job from the initial call to closing; verifying the commissions due to each loan officer for their closed deals; and acting as a liaison between the loan officers and underwriters. *Id.* at ¶ 5. Mr. Monshine spends approximately 25% of his day fulfilling his duties and obligations as an inside loan officer and 75% fulfilling his duties and responsibilities as a team leader. *Id.*

Like Mr. Monshine, Fred Norris, was hired as an inside loan officer who later added team leader responsibilities to his loan officer responsibilities. Declaration of Fred Norris ("Norris Decl.") ¶¶ 2-4. He supervises nine full-time loan officers. *Id.* at ¶ 4. Mr. Norris spends approximately 80% fulfilling my duties and responsibilities as a team leader and approximately 20% of his day fulfilling his duties and obligations as an inside loan officer. *Id.* Other loan

officers, in contrast, do not have any loan officer team leader responsibilities in addition to their duties to originate and close loans. *See* Blank Decl. ¶ 3, 5; Dalencourt Decl. ¶4-5, 7; Francoise Decl. ¶ 4.

### 3.    The Compensation Of Loan Officers Vary.

Job duties are not the only significant differences among Lend America's loan officers. Loan officers' compensation varies widely as well. For part of his employment with Lend America, Plaintiff was paid an hourly salary/wage of $10.00 per hour plus a $250 per week forgiveable draw plus commissions on deals he closed. Frigano Decl. ¶ 3; Fried Decl. ¶ 3. However, all of the opt-in plaintiffs who submitted affidavits in support of Plaintiff's Motion admit that they were paid on a commission-only basis for their entire employment with Lend America. Declaration of Desiree Vaughan Decl. ("Vaughan Decl.") ¶ 17; Declaration of Debra Ferrer ("Ferrer Decl.") ¶ 18; Declaration of Hanokya Millings ("Millings Decl.") ¶ 18; Declaration of Jean Oriol ("Oriol Decl.") ¶ 18. Unlike either Plaintiff or any of the opt-in plaintiffs, some loan officers at Lend America are paid on a salary basis. For example, Fred Norris, an inside loan officer and team leader in the Melville Office, was paid a weekly salary of $576.92 plus commissions on all of the loans he closed when he held the position of inside loan officer. Norris Decl. ¶ 3. His compensation was changed to a commission-only basis when he became a team leader in approximately October 2006. *Id.*

Moreover, loan officers with managerial and supervisory duties are paid a higher commission than other non-team leader loan officers, the team leader of inside loan officers are entitled to an override of the commission from the inside loan officers they supervise, and the commission rates for loan officers in general is commensurate with their level of experience. Tyler Decl. at ¶¶ 4-6.

18

As these widespread differences in duties and compensation demonstrate, Plaintiff simply is not similarly situated to the hundreds of loan officers to whom he seeks to send notice in this case, and those loan officers are not even similarly situated to each other. The premise underlying the policy of the efficient resolution of claims in "one" proceeding is that those issues would otherwise be litigated in a multiplicity of cases. *Hoffman La-Roche*, 493 U.S. at 170. Here, there are no judicial efficiencies to be gained by inviting hundreds of workers to file claims that need to be litigated individually.

Consequently, Plaintiff's Motion should be denied.

## V. PLAINTIFF HAS NOT, AND CANNOT, SHOW AN UNLAWFUL POLICY RELATING TO LOAN OFFICERS TO JUSTIFY HIS REQUEST FOR NOTICE.

Consistent with the judicial efficiency considerations underlying a collective action, courts have required plaintiffs to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated that law, or that there is a sufficient factual nexus to permit the adjudication of the claims on a common basis. *Morisky,* 111 F. Supp. 2d at 497; *Aquilino*, 2006 WL 2583563, at *2; *Barron*, 242 F. Supp. 2d at 1103 (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D. Or. 2002) (holding that "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency.")); *Basco*, 2004 WL 1497709 at *5 (citing *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (stating that certification is only appropriate when "some [] factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged [policy or practice]"); *Mike*, 274 F. Supp. 2d at 220 ("[T]he court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case."). Plaintiff has not identified any policy or nexus that would permit the Court to adjudicate overtime claims of Lend America's loan officers on a

collective basis.

**A.    The Purported Misclassification Of Loan Officers Alone Is Insufficient To Show That The Putative Collective Action Members Are Similarly Situated.**

The gravamen of Plaintiff's FLSA claim is that he was purportedly misclassified as an exempt employee and denied minimum wage and overtime compensation. Plaintiff's Motion, p. 5-6.  Plaintiff alleges that he is similarly situated to other loan officers by virtue of their purported misclassification as exempt employees.  *Id.*  Plaintiff's position, however, has been soundly rejected by courts nationwide.  An employer's classification (or alleged misclassification) of employees is not a "policy" or "practice" that can support a motion for FLSA notice.  *See Chemi*, No. 2:05-cv-01238-WHW-CCC, at 8 (denying conditional certification of a class of "loan officers" where the "plan or scheme as alleged by plaintiffs is that defendants improperly categorized them as exempt under the FLSA" because if that were true "every case brought before the courts alleging improper designation as non-exempt employees would automatically qualify for conditional certification"); *Freeman*, 256 F. Supp. 2d at 945 ("Plaintiff's view seems to be that all salaried Wal-Mart employees below officer level are similarly situated no matter what the nature of their duties: the employees are similarly situated simply because they claim violations of the law by the same employer.  Adopting Plaintiffs' position would require us to conclude that if an employer has two or more non-officer, salaried employees who allegedly are not being paid overtime as required by the Act, then a collective action would be appropriate under 216(b) … We do not agree."); *Morisky*, 111 F. Supp. 2d at 498 (denying plaintiffs' motion to certify the putative class because the "'common'…'plan' or 'scheme'" alleged by plaintiffs was nothing more than defendant's "determination that they are exempt under the FLSA"); *Diaz v. Electronic Boutique Holding Corp.*, No. 04-0840, 2005 WL 2654270, at *3 (Oct. 17, 2005) (quoting *Morisky*, 111 F. Supp. 2d at 498-499); *Levinson*, 2003

20

WL 22533428, at *2 (finding that plaintiff's allegations that guides were misclassified company-wide was not sufficient to warrant notice); *Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265, 1270-71 (M.D. Ala. 2004) (rejecting plaintiffs' argument that the decision to classify store managers as exempt was not in itself a "policy" sufficient to meet the "similarly situated inquiry" where "a fact-intensive determination" was still required); *Dean*, 2001 WL 35961086, at *2 (rejecting the claim that "the putative class members are similarly situated because all were denied overtime pay as a result of being misclassified as exempt"); *King v. West Corp.*, No. 04-318, 2006 WL 118577, at *14 (D. Neb. Jan. 13, 2006).  An employee's subjective belief that he or she is non-exempt, even coupled with the fact that there are other employees in the same job title, is simply insufficient to warrant notice. *See, e.g., Morisky*, 111 F. Supp. 2d at 498 (refusing to authorize a collective action, holding that "[e]ven employees who hold the same job title do not necessarily perform the same work"); 29 C.F.R. § 541.2 (observing that "job title alone is insufficient" for an FLSA exemption determination and that exempt status must be determined based on an employee's duties).

Accordingly, Plaintiff's Motion fails on this ground alone.

### B.   Premature Notice Could Severely And Irreparably Damage Lend America's Relationships With Its Employees And Customers.

Conditionally certifying a collective action and ordering notice in this case should also be denied because doing so would cause substantial prejudice to Lend America.  Indeed, doing so where, as here, Plaintiff's evidence is so thin, would force Lend America to spend tens of thousands, if not hundreds of thousands, of dollars in litigation fees and expenses; would distract personnel in the Company from their jobs; and could adversely affect Lend America's relationship with its employees, to the detriment of Lend America's business operations.

Providing notice to all current and former loan officers will present Lend America's

employees and customers with a distorted and unfair image that could have a deleterious effect on Lend America's business and severely damage its relationships with its employees. This would be particularly egregious in this case, where it is clear that Plaintiff has not met his burden and failed to address the critical issues that are necessary to determine whether he is similarly situated to the class of loan officers that he purports to represent.

On the other hand, denying Plaintiff's Motion would cause him no prejudice. Whether notice is granted or not, Plaintiff could proceed with an individual FLSA claim and, indeed, could pursue the claim much more quickly and efficiently than if he were joined with the claims of other loan officers. The use of notice without a commonality of violations is simply a solicitation device, and courts must guard against the use of notice as an advertising campaign to stir up litigation. *See Hall*, 2002 WL 413901, at *3 (refusing to grant notice where plaintiff presented only conclusory allegations, as "[t]his Court has a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation" (internal quotation marks and citations omitted)). Accordingly, Plaintiff's Motion should be denied for this additional reason.

## VI.   PLAINTIFF'S PROPOSED NOTICE IS BIASED AND MISLEADING, AND IN THE EVENT THAT THE COURT AUTHORIZES ISSUANCE OF ANY NOTICE, THE NOTICE SHOULD BE ONE THAT IS JOINTLY DRAFTED BY BOTH PARTIES.

If the Court were to order notice, which for the reasons set forth above, Lend America respectfully maintains is not appropriate, the Court should order the parties to meet and confer to devise a fair and accurate notice agreeable to the parties. Plaintiff's currently proposed notice is improper in a number of ways, including:

- Plaintiff's proposed ninety day opt-in period (from the date of mailing) is unnecessarily long. Should the Court authorize notice, thirty days from the date of mailing is a sufficient amount of time for potential claimants to return their notice, particularly if Plaintiff is concerned about the statute of limitations continuing to run prior to a potential claimant filing an opt-in consent form. The

majority of reported opinions afford opt-ins 30 days or even less from the date of the notice. *See Johnson*, 531 F. Supp. at 962 ("The Court believes that a 21-day response time from the date of transmittal of the notice is the most reasonable, simple to administer, and appropriate in light of Plaintiff's own delay in filing the present motion."); *Held v. Nat'l R.R. Passenger Corp.*, 101 F.R.D. 420, 426 (D.D.C. 1984) ("no later than thirty days from the entry of this order"); *King*, 1986 WL 2628, at *7 (thirty days from date of mailing); *Watkins v. Milliken & Co.*, 613 F. Supp. 408, 421 (W.D.N.C. 1984) (ordering that all consent forms be filed within thirty days of the order).

- The title of the Notice as a "NOTICE OF CLASS ACTION LAWSUIT" is misleading because it implies that a class action has already been certified when only a collective action is at issue here.

- Plaintiff's title of the Notice as "RE: UNPAID OVERTIME OR MINIMUM WAGES" is misleading in that it implies that all potential claimants are entitled to overtime compensation or minimum wages when exempt employees may not be entitled to either overtime compensation or minimum wages.

- The first sentence in the "INTRODUCTION" section is deceptive and inflammatory in that it fails to note the fact that loan officers who are exempt under the FLSA are not entitled to overtime compensation and/or minimum wages, and implies that a class action has been certified when only a collective action is at issue here.  Similarly, the third sentence in the "INTRODUCTION" is inflammatory because it references "rights" and implies that a potential claimant is giving up a right when s/he may be exempt under the FLSA and thus, not entitled to overtime compensation and/or minimum wages.

- Plaintiff's "Description Of The Lawsuit" is misleading because it implies that overtime compensation and/or minimum wages are required for all employees under the law.  Plaintiff fails to take account for the fact that employees who are exempt under the FLSA may not be entitled to overtime compensation and/or minimum wages.

- Lend America should be permitted to expand on its position with regard to Plaintiff's allegations, particularly when Plaintiff has misstated the extent to which a potential claimant may be entitled to compensation. *See Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 253 (M.D. Tenn. 1996) (Section 2 of the Notice describes the defendant's affirmative defenses); *Garza v. Chicago Transit. Auth.*, No. 00-C-0438, 2001 WL 503036, at *4 (N.D. Ill. May 8, 2001).

- The title of Section IV of the Notice entitled "Your Right To Participate In This Lawsuit" is inflammatory and fails to consider the fact that some employees may not be entitled to overtime compensation due to their exempt status under the FLSA.  The Notice should reflect that all potential claimants are entitled to represented by counsel of their own choice. The last sentence in the same section is deceptive in that it states that a potential claimant is barred from participating in

23

the lawsuit if they do not return an Opt-In Consent Form to Plaintiff's counsel when potential claimants may participate in the lawsuit without being represented by Plaintiff's counsel. *See King v. ITT Continental Baking Co.*, No. 84-C-3410, 1986 WL 2628, at *6 (N.D. Ill. Feb. 18, 1986); *Allen v. Marshall Field & Co.*, 93 F.R.D 438, 449 (N.D. Ill. 1982); *Johnson v. American Airlines, Inc.*, 531 F. Supp. 957, 966 (D.C. Tex. 1982).

- Instead of relegating a potential claimant's obligations should they decide to participate to one sentence buried in the "Effect Of Joining This Suit" section of the Notice, a potential claimant's obligations to affirmative participate in discovery and/or trial should be clearly stated and set off in a separate paragraph. *See Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002).

- Plaintiff's counsel essentially elects themselves as counsel for all opt-in plaintiffs. As with the section entitled "Your Right To Participate In This Lawsuit", the section entitled "Your Legal Representation If You Join" implies that the only law firm allowed to represent opt-in plaintiffs in this matters is Erik H. Langeland, P.C. and Stephan Zouras LLP. Section VIII starts with the sentence, "If you wish to join this suit, your interests will be represented by the named Plaintiffs through their attorneys, as counsel for the class." Erik H. Langeland, P.C. and Stephan Zouras LLP are the only firms listed and only their contact information is provided. This deceptively suggests that the only way that a potential claimant may participate in this action is if they are represented by Erik H. Langeland, P.C. and Stephan Zouras LLP, and that these two firms are the only plaintiff's firms that may be involved in this matter. Along the same lines, the Opt-In Consent Form attached to the Notice explicitly states that the opt-in plaintiff, "agree[s] to designate the law firm of Erik H. Langeland, P.C. ("Plaintiffs' Counsel") to represent me for all purposes of this action." No other firm is listed. Conspicuously absent from the Notice drafted by Plaintiff is any clear statement that advises individuals who wish to opt in of their right to be represented by other counsel. *See, e.g., King*, 1986 WL 2628, at *7; *Allen*, 93 F.R.D at 449 (same); *Johnson*, 531 F. Supp. at 966.

- Multiple references to the statute of limitations, particularly in the paragraph located below the signature line set off by "**PLEASE NOTE**" and the warning that the potential claimant the Notice so that "[Plaintiff's counsel] may file it as soon as possible with the Court and preserve your rights" should be omitted. The aforementioned section combined with multiple references to the statute of limitations is unduly alarmist and again, implies that the only way that a potential claimant may be participate in the lawsuit is through Plaintiff's counsel.

In sum, Plaintiff's proposed notice is unabashedly unbalanced and inappropriate. If the Court orders notice of any kind, Lend America respectfully requests that the Court direct the parties to submit a mutually agreeable notice within 30 days of the Court's Order. If the parties

24

cannot agree, they should submit their separate proposals for the Court's decision.  If the Court does not order the parties to make a joint submission of a proposed notice, Lend America respectfully requests the opportunity to address in more detail the issues regarding the content, procedures for, and timing of any such notice.

## VII.   CONCLUSION

For all the foregoing reasons, Lend America respectfully requests that the Court deny Plaintiff's Motion for Conditional Collective Certification and the Facilitation of Notice, and order that Plaintiff's claim proceed on an individual basis.

Alternatively, should the Court be inclined to grant certification and authorize notice, Lend America requests that notice be appropriately limited in scope and time, and that the parties be required to jointly submit a proposed notice for the Court's consideration.

F:\99021\002\lvtl.brf (Opp. To Motion for Conditional Collective Cert.).v3.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

-------------------------------------------------------------X

BIENVENIDO FRANCO, Individually, and
on Behalf of All Others Similarly Situated,

                        Plaintiffs,           Civil Case No. CV 07-3956 (JS) (AKT)

         -against-

LEND AMERICA, INC.,

                        Defendant.
-------------------------------------------------------------X

### CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2008, I served Defendant Ideal Mortgage Bankers, Ltd.

d/b/a Lend America's Opposition to Plaintiff Bienvenido Franco's Motion to Proceed as a

Collective Action and Facilitate Notice Under 29 U.S.C. §216(b) on the following by filing it

electronically with the Clerk of the above-captioned Court using its CM/EMF systems:

        Erik H. Langeland
        Erik H. Langeland, P.C.
        500 Fifth Avenue, Suite 1610
        New York, NY  10110

        Ryan F. Stephan
        James B. Zouras
        Stephan Zouras LLP
        205 N. Michigan Ave, Suite 2560
        Chicago, IL  60601

Dated: June 16, 2008            /s/_____
                        Mitchel H. Kider
                        Weiner Brodsky Sidman Kider PC
                        1300 Nineteenth Street NW, Fifth Floor
                        Washington, D.C.  20036