## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **BIENVENIDO FRANCO, Individually and on Behalf of All Others Similarly Situated,** | ) ) ) | |
| Plaintiffs, | ) | **Civ. No.: 07 CV 3956** |
| v. | ) ) | **(JS/AKT)** |
| **IDEAL MORTGAGE BANKERS, LTD. d/b/a LEND AMERICA, INC., MICHAEL ASHLEY, TIMOTHY MAYETTE, HELENE DECILLIS, MICHAEL PRIMEAU,** | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
## FOR PARTIAL SUMMARY JUDGEMENT

Erik H. Langeland
Erik H. Langeland, P.C.
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 354-6270
elangeland@langelandlaw.com

James B. Zouras
Ryan F. Stephan
(Admitted Pro Hac Vice)
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
(312) 233-1550

Attorneys for Plaintiffs

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES………………………………………………………....i

ISSUES PRESENTED…………………………………………………………………1

BACKGROUND……………………………………………………………………2

STATEMENT OF UNDISPUTED FACTS……………………………………...............3

**I.**  **Liability Facts**…………………………………………………………………3

**II.**  **Individual Liability Facts**……………………………………………………4

    **A. Control Over Lend America's Operations**…………………………..…5

    **B. Control Over Lend America's Loan Officer Classification Under the**…………5
    **FLSA**

    **C. Control Over Lend America's Loan Officers**……………………………………6

    **D. Financial Interests and Control of Lend America**……………………………6

ARGUMENTS……..…….………………………………………………..……………7

**I.**  **Applicable Legal Standards**…………………………………………………………7

    **A. Summary Judgment Standard**…………………………………………………7

    **B. Defendants Bear the Burden of Proving Each Element of FLSA**……………7
    **Exemption Defenses**

**II.**  **Because Inside Loan Officers Indisputably Did Not Receive a Guaranteed**………8
**Salary of $455 Per Week, Defendants Cannot Satisfy the Requirements
of the Administrative, Executive, Professional, Highly Compensated, or
Combination Exemptions as a Matter of Law.**

**III.**  **All But 28 of the Opt-in Plaintiffs Were Employed in Inside Sales**……………10

**IV.**  **The Retail Sales Exemption Does Not Apply to Financial Institutions Like**……11
**Lend America.**

**V.**  **Ashley, Primeau, and DeCellis are Individually Liable as Employers Under**…..13
**the FLSA as a Matter of Law.**

    **A. The FLSA Provides for Simultaneous Individual and Corporate**…………..13

**Liability.**

**B. Ashley, Primeau and DeCillis Are Individually Liable as Employers.........14 Because They Exercised Significant Operational Control Over Lend America and Its Policies Regarding Loan Officers.**

    **1. Ashley, Primeau and DeCillis were actively involved in Lend..............16 America's operations.**

    **2. Ashley, Primeau and DeCillis determined loan officers'...................18 compensation, their classification under the FLSA, and their work schedules.**

**C. Ashley, Primeau and DeCillis Are Individually Liable as Employers.........19 Because They Exerted Financial Control Over the Company**

**VI.   Plaintiffs Are Entitled To Liquidated Damages.........................20**

**VII.   Because Defendants Willfully Violated the FLSA, A Three Year Statute.........23 Of Limitations Applies.**

**VIII.   Plaintiffs Are Entitled to an Award of Attorneys' Fees and Costs.................24**

CONCLUSION ......................................................................................24

# TABLE OF AUTHORITIES

## CASES

*Ale v. Tennessee Valley Auth.*,
    269 F.3d 680, 691 n. 4 (6th Cir. 2001)……………………………………………….……..8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 249-50 (1986)……………………………………………………………….7

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680, 687-688 (1946) …………………………………………………………4

*Arnold v. Ben Kanowsky, Inc.*,
    361 U.S. 388, 392 (1960)……………………………………………………….........8

*Ballou v. DET Distributing Co.*,
    2006 WL 2035729, at *17 (M.D.Tenn. July 17, 2006)…………………………………..9

*Brock v. Shirk*,
    833 F.2d 1326, 1330 (9th Cir. 1987)………………………………………………..21

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945)…………………………………………………………………..20

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 323-27 (1986)……………………………………………………………..7

*Chao v. A-One Medical Services, Inc.*,
    346 F.3d 908, 920 (9th Cir. 2003)…………………………………………………..20, 22, 24

*Chao v. Hotel Oasis, Inc.*,
    2007 WL 1843089 at *17 (1st Cir. 2007)……………………………………………..14

*Chimarev v. TD Waterhouse Investor Services, Inc.*
    280 F.Supp.2d 208, 225 (S.D.N.Y. 2003)……………………………………………..9

*Coke v. Long Island Care At Home, Ltd.*,
    376 F.3d 118, 123 (2nd Cir. 2004)…………………………………………………….8

*Condren v. Sovereign Chemical Co.*,
    142 F.3d 432, 1998 WL 165148, at *2 & *6 (6th Cir. 1998)……………………………..9

*Cotton v. HFS-USA, Inc.*,
    2009 WL 1396351, *4 (M.D.Fla. 2009)………………………………………………..8

*Darby v. Bratch*,
   287 F.3d 673, 681 (8th Cir. 2002)……………………………………………………..14

*Dep't of Labor v. City of Sapulpa*,
   30 F.3d 1285, 1289 (10th Cir. 1994)……………………………………………………..22

*Dole v. Elliott Travel & Tours, Inc.*,
   942 F.2d 962, 965……………………………………………………………………13, 17

*Dole v. Simpson*,
   784 F.Supp. 538, 545 (S.D.Ind. 1991)…………………………………………………...14

*Donovan v. Agnew*,
   712 F.2d at 1509, 1511 (1st Cir. 1983)………………………………………………...14

*Donovan v. Grim Hotel Co.*,
   747 F.2d 966, 972 (5th Cir. 1984)…………………………………………..14-15, 19-20

*Donovan v. Sabine Irrigation Co., Inc.*,
   695 F.2d 190, 195 (5th Cir. 1983)……………………………………………………..14

*Dybach v. State of Fla. Dep't of Corrections*,
   942 F.2d 1562, 1566 (11th Cir. 1991)………………………………………………….21

*Elwell v. Univ. Hos. Home Care Services*,
   276 F.3d 832, 840 (6th Cir. 2002)……………………………………………………..21

*Falk v. Brennan*,
   414 U.S. 190, 195 (1973)…………………………………………………………13, 15

*Glenn v. General Motors Corp.*,
   658 F.Supp. 918, 928 (N.D. Ala. 1986)………………………………………………21

*Hardrick v. Airway Freight Systems, Inc.*,
   63 F.Supp 989, 904 (N.D.Ill. 2000)……………………………………………………..23

*Herman v. RSR Security Services, Ltd.*,
   172 F.3d 132 (2nd Cir. 1999)…………………………………………..............13-17, 19-20

*Hultgren v. County of Lancaster*,
   913 F.2d 498, 509 (8th Cir. 1990)…………………………………………………...21

*Idaho Sheet Metal v. Wirtz*,
   383 U.S. 190, 202-203 (1966)…………………………………………………………...12

*In re Novartis Wage and Hour Litigation*,

    593 F.Supp.2d 637, 646 (S.D.N.Y. 2009)……………………………………………...9

*IntraComm, Inc. v. Bajaj*,
    492 F.3d 285, 295-96 (4th Cir. 2007)…………………………………………………...9

*Jin v. Pacific Buffet House, Inc.*,
    2009 WL 2601995, at *3 (E.D.N.Y. Aug. 24, 2010)……………………………………13

*Kennedy v. Critical Intervention Systems*,
    199 F.Supp.2d 1305, 1307 (M.D. Fla. 2002)……………………………………………22

*Kinney v. District of Columbia*,
    994 F.2d 6, 12 (D.C. Cir. 1993)…………………………………………………………20

*Martin v. Cooper Electric Supply Co.*,
    940 F.2d 896, 908 (3rd Cir. 1991)……………………………………………………….20

*Martin v. Malcolm Pirnie, Inc.*,
    949 F.2d 611, 614 (2nd Cir. 1991) …………………………………….……………….....8

*Martin v. Selker Bros.*,
    949 F.2d 1286, 1294-95 (3rd Cir. 1991)………………………………………………23

*Mascol v. E & L Transp., Inc.*,
    387 F.Supp.2d 87, 96 (E.D.N.Y. 2005)………………………………………………....8

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128, 133 (1988)…………………………………………………………22, 24

*Mitchell v. Kentucky Finance Company, Inc.*,
    359 U.S. 290, 296 (1959)………………………………………………………….....11

*Ramsey v. State of Alabama Public Service Commission*,
    86 F.Supp.2d 1124, 1129 (M.D. Ala. 2000)……………………………………………21

*Reeves v. Int'l Tel.& Tel., Co.*,
    616 F.2d 1342 (5th Cir. 1980)…………………………………………………...21-22

*Reich v. Waldbaum, Inc.*
    52 F.3d 35, 40 (2nd Cir. 1995)………………………………………………21-22, 24

*Rutherford Food Corp. v. McComb*,
    331 U.S. 722, 730 (1947)………………………………………………………...13

*Saunders v. Ace Mortgage Funding, Inc.*,
    2007 WL 1190985 at *2, 6-7. (D.Minn. 2007)………………………………………..12

*Snapp v. Unlimited Concepts, Inc.,*
  208 F.3d 928, 938-39 (11th Cir. 2000)………………………………………………….20

*Takacs v. A.G. Edwards & Sons, Inc.,*
  444 F.Supp.2d 1100, 1110 (S.D.Cal. 2006)………………………………………………9

*Torres v. Gristedes Operating Corp.,*
  2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)……………………………………………...10

*United States v. Rosenwasser,*
  323 U.S. 360, 362 (1945)………………………………………………………………...13

*Washington v. Miller,*
  721 F.2d at 804…………………………………………………………………………..22

**STATUTES**

29 U.S.C. §203(d)………………………………………………………………....13, 25

29 U.S.C. §206(a)…………………………………………………………………….7-8

29 U.S.C. §207(a)(1)………………………………………………………………….8

29 U.S.C. §207(i)…………………………………………………………………...13

29 U.S.C. §211(c)…………………………………………………………………..4

29 U.S.C. §213(a)(1)…………………………………………………………………9

29 U.S.C. §216(b)………………………………………………………………...…24

29 U.S.C. §255(a)…………………………………………………………………23

Fed. R. Civ. P. 56…………………………………………………………………7

Fed. R. Civ. P. 56(c)………………………………………………………………7

29 C.F.R. §516………………………………………………………………………4

29 C.F.R. §541.200(a)……………………………………………………………...9

29 C.F.R. §541.1(f)………………………………………………………………….9

29 C.F.R. §541.2(e)………………………………………………………………….9

29 C.F.R. §541.3(e)……………………………………………………………………...……9

29 C.F.R. §541.601(a)-(b)(1)…………………………………………………………………...9

29 C.F.R. §541.708…………………………………………………………………………..9

29 C.F.R. §779.317……………………………………………………………………………11

7(i)...……………………………………………………………………………………11, 12

§13(a)(2)…………………………………………………………………………………………11

## ISSUES PRESENTED

This motion presents the following issues:

**1. White Collar Exemptions.**  To qualify for the Administrative, Executive, Professional, Highly Compensated, or Combination ("White Collar") exemptions from minimum wage and overtime under the Fair Labor Standards Act ("FLSA"), an employer must prove it paid a guaranteed salary of at least $455 per week.  Here, Lend America failed to pay its loan officers *any* salary before June 27, 2008.  Are Plaintiffs entitled to summary judgment on Defendants' affirmative defenses based on any White Collar Exemption?

**2. Outside Sales Exemption.**  To qualify for the Outside Sales exemption, an employer must prove that its employees were regularly and customarily making sales away from its office.  There is no dispute that all but 28 of the opt-in Plaintiffs were inside sales loan officers who are not subject to the Outside Sales exemption.  Are opt-in Plaintiffs who were inside sales loan officers entitled to summary judgment on Defendants' Outside Sales Exemption defense?

**3.  Retail Sales Exemption.**  The Supreme Court and United States Department of Labor have found that financial organizations like mortgage lenders are not entitled to rely on the "Retail or Service" exemption as a matter of law.  There is no dispute that Lend America was a licensed direct lender of mortgage loans in several states.  Are Plaintiffs entitled to summary judgment on Defendants' Retail or Service Exemption defense?

4.  **Individual Liability**.  The FLSA imposes personal liability for wage violations on executives with operational control over a corporation.  Defendants Ashley, Primeau, and DeCillis all controlled Lend America's operations, including the decision to pay loan officers commission-only and the decision to re-classify them as non-exempt from overtime in June 2008.  Are Defendants Ashley, Primeau, and DeCillis personally liable under the FLSA as they controlled Lend America and the decision to deprive loan officers of proper wages?

5.  **Liquidated Damages.**  Liquidated damages are mandatory unless the Defendants can prove they acted in "good faith" by showing that they adequately investigated whether they correctly classified their employees under the FLSA.  Here, Defendants did nothing to determine whether their classification of loan officers as exempt from overtime complied with the FLSA and even maintained that classification for nine months after Plaintiffs brought this lawsuit.  Are Plaintiffs entitled to an award of liquidated damages?

**BACKGROUND**

Bienvenido Franco filed this case against Defendant Ideal Mortgage Bankers, Ltd. d/b/a Lend America for failing to pay overtime and minimum wages to its inside loan officers in violation of the FLSA, 29 U.S.C. §216(b).  (Dkt. #1.)   On August 13, 2008, this Court conditionally certified this case as a collective action and ordered Lend America to produce a list of putative class members for purposes of facilitating notice.  (Dkt. #56.)  Because Lend America did not consent to William Fraser or Brian McCabe joining this case after the opt-in deadline, they filed a second action.   In addition to Lend America, Fraser and McCabe named Lend America's controlling owners and executives, Michael Ashley, Helene DeCillis, Michael Primeau, and Timothy Mayette as defendants (collectively "Defendants" or "Lend America"). On September 28, 2009, this Court granted Plaintiffs leave to amend their complaint in the *Franco* action to add the same individuals as defendants.   On the same date, this Court consolidated the *Franco* and *Fraser* cases.  A total of 313 loan officers have joined to date.

Until its FHA license was revoked in December 2009, Lend America was a nationwide mortgage lender.  Lend America has since ceased operations and it is currently unrepresented.[1] Lend America's success depended heavily on a massive television advertising campaign which directed potential customers to contact its call center in Melville, New York, which was staffed by the inside sales loan officer Plaintiffs in this case.  Their primary duty was to sell residential mortgage loans to consumers across the United States.

Under the FLSA, Lend America carries the heavy burden of proving that Plaintiffs are not entitled to minimum wage or overtime compensation by proving they are subject to a narrowly-construed "exemption."  In its Amended Answer, Lend America vaguely asserted all of the exemptions under Sections 7 and 13 of the FLSA as affirmative defenses. (*See* Dkt. #19.)

Defendants' pleadings indicate they are relying on the Administrative, Outside Sales, Retail Sales, Highly-Compensated Employee and Combination exemptions.

Plaintiffs bring this motion for summary judgment on liability with respect to the FLSA's exemptions because: 1) Lend America was a financial institution and clearly not entitled to assert the retail sales exemption; 2) Defendants failed to pay a guaranteed salary of at least $455 per week before June 27, 2008 and, therefore, did not satisfy the most basic necessary prerequisite to the Administrative, Executive, Highly Compensated, or Combination (the "White Collar" exemptions); and, 3) there is no dispute that the overwhelming majority of the loan officers participating in this case are inside sales employees who are not subject to the Outside Sales exemption. Plaintiffs also seek summary judgment on the individual liability of Defendants Ashley, DeCillis and Primeau because there is no genuine issue of material fact that they are "employers" under the broad definition set forth under the FLSA. Finally, Plaintiffs seek summary judgment on their entitlement to liquidated damages. Summary judgment on these issues will limit the scope of trial to the number of unpaid regular and overtime hours worked by Plaintiffs during the statutory period.

<u>**STATEMENT OF UNDISPUTED FACTS**</u>

**I.**     <u>**Liability Facts**</u>

The material facts are simple, straightforward, and not in dispute. There is no dispute that at least until June 27, 2008, Lend America failed to pay a guaranteed salary of $455 or more per week to all but 12 of the 313 opt-ins who have joined this case. (*See* Plaintiffs' Rule 56.1 Statement, hereinafter "PR 56" at ¶1). Instead, Defendants paid these loan officers on a commission-only basis during this entire timeframe. PR 56, Mayette Dep., p. 35. In other words, if inside sales loan officers did not sell or "close" a loan, they were paid nothing. *Id.*

---

[1] Plaintiffs have moved to default Lend America. That motion is pending.

In response to this lawsuit, Defendants reclassified its loan officers as non-exempt on June, 27, 2008 and instituted a plan calling for payment to loan officers of a recoverable draw equivalent to the minimum wage.  PR 56 at ¶10.  Under this new plan, if a loan officer made a sale Defendants recouped the minimum wage draw from any commission the loan officer later earned.  PR 56, Exh. A, Defs' Answer To Interrogatory No. 11.  At this time, Defendants also instituted a stated policy to pay its loan officers overtime for hours worked over 40 per week. PR 56 at ¶10; Exhibit A to Affidavit of Erik H. Langeland ("Langeland Aff.") attached hereto.

Accordingly, the only remaining genuine issue of material fact is whether Plaintiffs worked more than 40 hours per week and the amount of those unpaid overtime hours.  While the precise amount of damages is not yet ripe for determination, there is no dispute that until June 27, 2008, Defendants failed to make or maintain any records of the time their loan officers worked, an independent violation of the FLSA.  29 U.S.C. §§206(a), 207(a)(1) & 211(c); 29 C.F.R. §516; PR 56, ¶4.  Thus, damages for unpaid regular and overtime wages must be based on Plaintiffs' reasonable estimate of the amount of time worked.  *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 (1946).

## II.   <u>Individual Liability Facts</u>

Three executives ran Lend America: Michael Ashley, (Chief Business Strategist), Michael Primeau (CEO), and Helene DeCillis (Chief Operating Officer).  PR 56 at ¶¶14-72. Although Primeau formally held the title of CEO, Ashley was the "boss", the main decision-maker and the one with primary operational and financial control over the company.  *Id.* at ¶¶14-41 & 53.  Because Ashley had a felony conviction for wire fraud in 1993, he was not permitted to hold the title of CEO under the applicable banking regulations.  PR 56 at 14, 16, 32.  To circumvent these rules, Ashley gave himself the title of "Chief Business Strategist."  PR 56, Exh.

C, DeCillis Dep., p. 30.  Nevertheless, because all employees—including the President and Chief Operating Officer—took direction from Ashley, he was the final authority at Lend America and functioned as the CEO.  PR 56 at ¶¶14-18.  Although Primeau held the majority ownership interest in Lend America, Ashley was the highest-paid employee.  *Id*. at ¶¶15, 55.

### A.  Control Over Lend America's Operations

Throughout the statutory period, Ashley, Primeau and DeCillis personally managed Lend America's payroll, human resources, marketing and contracts.  PR 56 at ¶¶19-72.  Ashley handled production (loan origination) himself and devised Lend America's policies.  *Id*. at ¶¶19, 21, 32-34, 38 & 41.  He was involved in Lend America's daily operations and made decisions concerning the company's advertising and nationwide marketing campaigns.  *Id*. at ¶¶19-21, 28 & 35-41.  All three executives routinely communicated with Lend America's employees, including loan officers, during periodic in-person meetings, conferences and emails.  *Id*. at ¶¶19-20, 28, 51, 59 & 62.

Ashley directly controlled and supervised Lend America's loan officer sales force consisting of several hundred individuals, all of whom ultimately answered to him.  *Id*. at ¶¶1-9, 19 & 23.  Lend America's Human Resources and Payroll Departments reported directly to Ashley and Primeau, and Ashley made all decisions concerning capital expenditures on behalf of Lend America.  *Id*. at ¶¶32, 40 & 71.  These expenditures included financing Ashley's racing team, luxury automobiles and private jets.  *Id*. at ¶32.  Ashley, Primeau and DeCillis all signed checks drawn on Lend America's bank accounts, including payroll accounts, and were closely tied to all of Lend America's business operations.  *Id*. at ¶¶29, 46 & 63.

### B.  Control Over Lend America's Loan Officer Classification Under the FLSA

All decisions concerning Lend America's policies and practices were applied

5

companywide and made at the very top of the corporate hierarchy, which was spearheaded by Ashley, Primeau and DeCillis.  *Id*. at ¶¶14, 18-19, 23, 28, 33-42, 49-50, 52-58, 60-62 & 66-72. Ashley personally determined the pay plans for Lend America's loan officers and made the decision to pay them on a commission-only basis.  *Id*. at ¶33.  There is no evidence that Ashley sought advice from the federal or state Department of Labor or counsel on how to structure a pay plan which was legally compliant.  After Lend America was sued in this action, Ashley, along with Primeau and DeCillis, held meetings in which they decided to change the loan officer pay plan.  *Id*. at ¶¶10, 34, 50 & 67.  In June 2008, the three executives formally instituted the new plan, which reclassified loan officers as non-exempt from the minimum wage and overtime requirements.  *Id*. at ¶10.  Loan officers with questions about the new plan, or anything else regarding Lend America's policies and practices, could contact Ashley or DeCillis directly.  *Id*. at ¶¶20, 51 & 59.  Ashley was responsible for Lend America's compliance and enforcement of wage and hour policy.  *Id*. at ¶38-39.

### C.  Control Over Lend America's Loan Officers

Ashley, Primeau and DeCillis collectively had the final say on all of Lend America's employment policies and procedures, which were conveyed companywide.  *Id*. at ¶¶14-72. These individuals hired and fired loan officers, evaluated their performance, determined their pay, disciplined them, and chose the company which processed payroll.  *Id*. at ¶¶19, 22, 24, 26, 28, 33-34, 45, 49, 58, 60, 62, 66-67 & 73.  Although loan officers ultimately answered to Ashley, both he and Primeau determined the hours they worked, trained them, scheduled them, established their job duties, and determined loan officer compensation.  *Id*. at ¶¶23, 25, 27, 34 - 37, 61 & 68-70.

### D.  Financial Interests and Control of Lend America

While Primeau held the controlling ownership in Lend America, all three officers had a financial stake in the company apart from any equity interests. *Id.* at ¶55. In 2009, Lend America obtained a $3,650,000.00 loan secured by the personal guarantees of Ashley, Primeau and DeCillis. *Id.* at ¶¶31, 48, 65 & 66; Langeland Aff., Exhibit B.

## ARGUMENTS

### I. Applicable Legal Standards

#### A. Summary Judgment Standard

Summary judgment is designed to promote the just, speedy, and inexpensive resolution of actions. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-27 (1986). An example of allowing for a just and speedy determination of an issue is found under Rule 56(c): "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Fed. R. Civ. P. 56(c). The movant may thus isolate and dispose of unsupported liability defenses although the parties have yet to agree on the amount of damages. *See Celotex,* 477 U.S. at 323-24.

Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment should be granted unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Evidence that is "merely colorable, or is not significantly probative," is insufficient to avoid summary judgment. *Id.* at 250.

#### B. Defendants Bear the Burden of Proving Each Element of FLSA Exemption Defenses

The FLSA requires employers to pay their employees minimum wage and one and one half times their "regular rate" for each hour worked in excess of forty hours per week. 29 U.S.C.

7

§206(a); 29 U.S.C. §207(a)(1).  There are certain exemptions to this rule, and if an employer fails to compensate its employees for overtime hours worked, it bears the burden of showing the employee falls under one of the exemptions.  *E.g., Coke v. Long Island Care At Home, Ltd.,* 376 F.3d 118, 123 (2nd Cir. 2004); *Mascol v. E & L Transp.,* 387 F.Supp.2d 87, 96 (E.D.N.Y. 2005).

The scope of the exemptions is interpreted narrowly against the employer.  "[B]ecause the FLSA is a remedial act, its exemptions ... are to be narrowly construed."  *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2nd Cir. 1991); *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960).  The employer bears not only the burden of proof, but also the burden on *each element* of the claimed exemption.  *Ale v. Tennessee Valley Auth.,* 269 F.3d 680, 691 n. 4 (6th Cir. 2001) (emphasis added); *Arnold* v. *Kanowsky, Inc.,* 361 U.S. 388, 392 (1960).  According to the Supreme Court, "these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments *plainly and unmistakably* within their terms and spirit."  *Arnold,* 361 U.S. at 392 (emphasis added).

**II.** **Because Inside Loan Officers Indisputably Did Not Receive a Guaranteed Salary of $455 Per Week, Defendants Cannot Satisfy the Requirements of the Administrative, Executive, Professional, Highly-Compensated, or Combination Exemptions as a Matter of Law**

Defendants cannot meet their burden of proving applicability of the Administrative, Executive or Professional exemptions because loan officers indisputably were not paid a guaranteed salary of at least $455 per week.  The FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  *Cotton v. HFS-USA, Inc.,* 2009 WL 1396351, *4 (M.D.Fla. 2009); 29 U.S.C. §207(a)(1).  An employer is exempt from FLSA's overtime requirement if the employee is "employed in a bona fide executive,

administrative, or professional capacity." *Id.* (citing 29 U.S.C. §213(a)(1)).  Under the federal regulations implementing the FLSA, an employee must be paid at least $455 per week for the employer to qualify for these exemptions.  *Id.* at *5 (citing 29 C.F.R. §541.200(a); *Chimarev v. TD Waterhouse Investor Services, Inc*. 280 F.Supp.2d 208, 225 (S.D.N.Y. 2003) (citing 29 C.F.R. §§541.1(f), 541.2(e) & 541.3(e).

Defendants fare no better under the Highly-Compensated Employee or Combination exemptions because they both require the same $455 weekly guaranteed salary for the exemption to apply.  *E.g., In re Novartis Wage and Hour Litigation*, 593 F.Supp.2d 637, 646 (S.D.N.Y. 2009) (employee must earn a weekly salary of at least $455 a week to qualify for Highly-Compensated Employee exemption (citing 29 C.F.R. §541.601(a)-(b)(1)); *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 295-96 (4th Cir. 2007) (employee performing executive and outside-sales duties must meet the salary test for executive employees in order to be exempt as a combination executive/outside-sales employee under 29 C.F.R. §541.708); *Condren v. Sovereign Chemical Co.*, 142 F.3d 432, 1998 WL 165148, at *2 & *6 (6th Cir. 1998) (same); *Ballou v. DET Distributing Co.*, 2006 WL 2035729, at *17 (M.D.Tenn. July 17, 2006) (employees not paid on a salary basis cannot qualify for a combination executive-outside sales exemption).

There is no dispute that until June 27, 2008, Lend America failed to pay a guaranteed salary of at least $455 per week to all but 12 of the loan officers who have joined this case.  PR 56 at ¶1.  Additionally, there is no dispute that after June 27, 2008, Defendants instituted a "recoverable draw" compensation plan.  *Id.* at ¶10.  This type of "recoverable draw" does not meet the salary basis test.  *See Takacs v. A.G. Edwards & Sons, Inc.*, 444 F.Supp.2d 1100, 1110 (S.D.Cal. 2006) (finding that a "deduction of Plaintiffs' draw salary from a subsequent [commission] paycheck is an impermissible offset" and "Defendants have not met their initial

9

burden of showing that Plaintiffs' salary basis comes within the administrative exemption of the FLSA."); *Torres v. Gristede's Operating Corp.,* 2006 WL 2819730, *3-4 (S.D.N.Y. Sept. 28, 2006) (citations omitted).  Therefore, Defendants cannot take refuge behind the pay plan it instituted in June 2008 because it still did not comply with the salary basis test and Defendants' wage and hour violations continued until Lend America was forced to cease operations in December of 2009.  Even if it could, Defendants would not qualify for these exemptions as Plaintiffs' primary duty was sales of residential mortgages from Defendants' call center. Langeland Aff., Exhibit C, U.S. Department of Labor, Administrator's Interpretation 2010-1, March 24, 2010.

Defendants conceded that their inside loan officers were entitled to overtime.  In response to Plaintiffs' lawsuit, Defendants enacted, for the first time, a stated policy to pay loan officers overtime for hours worked over 40 per week.  PR 56, Exh. A, Defs' Answer To Interrogatory No. 11.  Defendants' written policy is not only an admission that their inside loan officers ***are not exempt*** from the minimum wage and overtime requirements of the FLSA, but an acknowledgement that they failed to pay these persons in accordance with the law.  Plaintiffs are therefore entitled to judgment on the inapplicability of any White Collar exemption defense to liability.

III.   **All But 28 of the Opt-in Plaintiffs Were Employed in Inside Sales**

While Defendants could avoid their obligations to pay overtime and minimum wage if they could prove that the opt-in Plaintiffs were subject to the Outside Sales exemption, there is no dispute that all but 28 of the opt-ins were employed in inside sales.  PR 56 at ¶6.  Thus, even assuming that Defendants could point to the existence of a genuine issue of material fact over whether all 28 of these persons regularly and customarily made sales away from the call center,

none of the remaining opt in Plaintiffs are subject to the Outside Sales exemption.  Thus, 285

opt-in Plaintiffs were indisputably employed in inside sales and are plainly entitled to summary

judgment.

## IV.     The Retail Sales Exemption Does Not Apply to Financial Institutions Like Lend America

Defendants cannot rely on the Retail Sales Exemption because it is well-established that

financial institutions do not qualify for this exemption.  In the seminal case addressing the issue,

the United States Supreme Court 60 years ago found that Congress specifically intended to

exclude finance companies from the 7(i) exemption:

> In the light of the abundant pointed evidence that Congress did not intend that
> business like those of respondents be exempted from the overtime and
> recordkeeping provisions of the statute by §13(a)(2), we would not be justified
> in straining to bring respondents' activities within the literal words of the
> exemption.

*Mitchell v. Kentucky Finance Company, Inc.,* 359 U.S. 290, 296 (1959).

The employer in *Mitchell* was a finance company, making personal loans directly to

individual consumers.  *Id.* at 290.  The Supreme Court rejected the claim that lending money to a

consumer was "retail."  *Id.* at 292.  The *Mitchell* Court found that "enterprises in the financial

field, none of which had previously been considered to qualify for the exemption regardless of

the class of persons with which they dealt,…" because they have no concept of retail selling or

serving and were intentionally excluded from enjoying the 7(i) exemption.  *Id.* at 294-295.

Consistent with *Mitchell*, the U.S. Department of Labor ("DOL") includes finance

companies on its list of businesses that lack the retail concept necessary to qualify for the retail

exemption.   Indeed, the DOL includes credit companies, small loan and personal loan

companies, loan offices, and finance companies as establishments "to which the retail concept

does not apply."  29 C.F.R. §779.317.

In *Idaho Sheet Metal vs. Wirtz,* 383 U.S. 190, 202-203 (1966), the Supreme Court again held that finance companies are non-retail as a matter of law:

> We agree with the Secretary that it is generally helpful to ask first whether the sale of a particular type of goods or services can ever qualify as retail whatever the terms of sale; if and only if the answer is affirmative is it then necessary to determine the terms or circumstances that make a sale of those goods or services a retail sale.

The Court provided the financial business in *Mitchell* as an example of a business that could never qualify as retail. *Id.* Thus, if Lend America is a financial company the 7(i) exemption cannot apply and the Plaintiffs are entitled to summary judgment.

There is no dispute that Lend America was a direct lender and a licensed mortgage banker in several states. PR 56 at ¶11 & 12. It lent money to consumers to purchase or refinance houses. PR 56 at ¶13. Defendants' CFO testified these were financial transactions. PR 56, at ¶11 & 12.

In 2007, the Eighth Circuit Court of Appeals rejected the argument that mortgage lenders like Lend America could properly raise the retail sales exemption as a means to avoid summary judgment on liability. *Saunders v. Ace Mortgage Funding, Inc.,* 2007 WL 1190985 at *2, 6-7. (D.Minn. 2007). In *Saunders,* the District Court granted summary judgment for the Plaintiff loan officers who, as in this case, were paid only a commission and received no salary. *Id.* at *2 & 6-7. The defendant, a residential mortgage lender, asserted that its loan officers were exempt based on the retail sales exemption. *Id.* at *6. The District Court held that the defendant could not assert this exemption because it engaged in direct lending and was licensed to lend mortgage funds in 13 states. *Id.* at *6-7. The District Court concluded, therefore, that the defendant was a "part of the financial industry and, as such, cannot qualify as a retail or service establishment as a matter of law." *Id.* at *7. The trial court certified the following question to the Eighth Circuit:

12

Can a mortgage broker be considered a retail or service establishment, pursuant to 29 U.S.C. §207(i), even if it engages in a minimal amount of direct lending and is licensed to lend in some states?

The Eighth Circuit upheld the District Court's decision granting summary judgment to the plaintiffs. As a mortgage banker engaged in direct lending and licensed to lend in many states, Lend America is a financial company and cannot qualify as a retail or services establishment as a matter of law.

## V. Ashley, Primeau, and DeCillis[2] are Individually Liable as Employers Under the FLSA as a Matter of Law

### A. The FLSA Provides for Simultaneous Individual and Corporate Liability

The FLSA broadly defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). The Supreme Court has stated that, "[a] broader or more comprehensive coverage of employees . . . would be difficult to frame." *United States v. Rosenwasser*, 323 U.S. 360, 362 (1945). The FLSA also recognizes that an individual may have more than one employer, or "joint employers." *Falk v. Brennan*, 414 U.S. 190, 195 (1973); 29 C.F.R. §791.2. The "expansive" language of the FLSA's definition of employer leaves no question that more than one employer may be simultaneously responsible for violations of the Act. *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *see also Herman v. RSR Sec. Services, Ltd.,* 172 F.3d 132, 139 (2nd Cir. 1999) (same); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (same).

The question of whether a party is an employer is a legal determination. *E.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). Numerous decisions recognize that an individual may be considered to be an employer, thus personally responsible for compliance under the FLSA. *Herman,* 172 F.3d at 139-40; *Jin v. Pacific Buffet House, Inc.*, 2009 WL

2601995, at \*3 (E.D.N.Y. Aug. 24, 2010); *Saunders v. Ace Mortgage Funding, Inc.,* 2007 WL 4165294, at \*4-5 (D.Minn. Nov. 16, 2007); *Dole v. Simpson*, 784 F.Supp. 538, 545 (S.D.Ind. 1991); *see Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002).  "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (collecting cases); *quoted in Chao v. Hotel Oasis, Inc.*, 2007 WL 1843089 at \*17 (1st Cir. 2007); *Elliott Travel*, 942 F.2d at 965; *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984); *Novak v. Mackintosh*, 919 F.Supp. 870, 877 (D.S.D. 1996). Moreover, individual liability is often found in cases involving large-scale underpayment of employees including the mortgage brokerage industry.  *Patel*, 803 F.2d at 638; *Simpson*, 784 F.Supp. at 546; *Saunders,* 2007 WL 4165294, at \*4-5.

### B. Ashley, Primeau and DeCillis Are Individually Liable as Employers Because They Exercised Significant Operational Control Over Lend America and Its Policies Regarding Loan Officers.

Courts consider several factors to determine whether or not an individual may be held individually liable as an employer under the FLSA.  No one factor is dispositive; rather, the court must "transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case." *Donovan v. Sabine Irrigation Co., Inc.,* 695 F.2d 190, 195 (5th Cir. 1983); *Herman,* 172 F.3d at 139; *Ansoumana v. Gristede's Operating Corp.*, 255 F.Supp.2d 184, 193 (S.D.N.Y. 2003).

Of particular significance is whether the individual takes an active role in the operation of the company.  *Id.* at 139-40*; Ling Nan Zheng v. Liberty Apparel Co., Inc.*, 556 F.Supp.2d 284, 298 (S.D.N.Y. 2008); *Elliott Travel*, 942 F.2d at 966.  The Supreme Court

---

[2] Plaintiffs are not seeking summary judgment on the issue of Defendant Timothy Mayette's individual liability.

and Second Circuit have both found individual employer status where the defendant exercised substantial control of the terms and conditions of the employees' work. *Falk*, 414 U.S. at 195. Exclusive control is not required—the question is whether the individual exercises control over significant aspects of the corporation's day-to-day functions. *Herman,* 172 F.3d at 139-40; *Elliott Travel*, 942 F.2d at 966. Individuals without exclusive control over the company may nonetheless be found liable if they had control over the alleged violation of the FLSA. *Id.*; *Ansoumana*, 255 F.Supp.2d at 193; *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *12-13 (S.D.N.Y. Feb. 1, 2007); *Hotel Oasis*, 2007 WL 1843089 at * 19- 20; *Freeman v. Foley*, 911 F.Supp. 326, 331 (N.D.Ill. 1995). For example, individual liability has been found where an individual defendant alone could authorize corporate compliance with the Fair Labor Standards Act. *Donovan*, 747 F.2d at 972.

When making its determination on whether an individual is an employer, the Second Circuit holds that the "overarching concern is whether the [individual] possessed the power to control the workers in question." *Herman,* 172 F.3d at 139 (citation omitted). Relevant factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citation omitted). In *Herman*, an officer with the authority to hire supervisory personnel over the employees in question, occasionally controlled work schedules, participated in the method of payment, and exercised financial control over the company was found liable. *Id.* at 140.

Other Circuits are in accord. *Patel*, 803 F.2d at 638 (officer must be involved in the company's daily operations or have some direct responsibility for the supervision of the employee); *U.S. Dept. of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995) (corporate officer who

has operational control of the corporation's covered enterprise, including hiring, firing and payroll decisions, is an "employer" under the FLSA). *Elliot Travel*, 942 F.2d at 966 (control over "significant aspects of the corporation's day-to-day functions, including determining employee salaries" sufficient to find individual liability as an employer). *Hotel Oasis*, 2007 WL 1843089 at *19-20 (corporation's president liable as an employer where he directed employment practices).

In a remarkably similar case, the two chief executives of a mortgage brokerage company were found personally liable as a matter of law. *Saunders,* 2007 WL 4165294, at *4-5. The Court made its decision because it was undisputed that these individuals implemented a 100% commission pay plan as well as a revised plan, directly or indirectly hired and fired employees, controlled the company's employment practices and had a significant financial stake in the company. *Id.* The fact that they did not exercise "continuous" or "absolute" control over every employee did not preclude summary judgment. *Id.* at *5.

### 1. Ashley, Primeau and DeCillis were actively involved in Lend America's operations

Ashley, Primeau and DeCillis were the founders, top executives, and guiding forces behind Lend America. While Ashley was considered the "boss" and gave direction to the other two, all three executives built the company and remained intimately involved in its operations. PR 56 at ¶¶16, 18, 41-48 & 56-66. Like the corporate officers in *Herman, Cole* and *Saunders*, they ran the company and determined its employment practices. *See Herman,* 172 F.3d at 136-38 & 140; *Cole*, 62 F.3d at 778; *Saunders,* 2007 WL 4165294, at *4-5. As DeCillis testified, she, Primeau and Ashley controlled Lend America's employees including the loan officer Plaintiffs in this case.

All three executives had their hands in all aspects of the business, from the corporate level to the individual loan officers. PR 56 at ¶¶19-73. The three interacted with

the loan officers on a routine basis.  *Id.* at ¶¶20-28, 44, 45, 51, 59 & 60-62.  They held regular conferences and in-person meetings with the loan officers.  *Id.* at ¶¶20, 59.  In addition, Ashley communicated with loan officers to assess their productivity and other issues involving them. Ashley was the "gatekeeper" for branch spending and in charge of production and sales, while DeCillis determined loan officer commissions and Primeau oversaw the entire operation.  PR 56 at ¶¶32, 49, 56.

Ashley, Primeau and DeCillis personally managed Lend America's business.  The three of them oversaw staffing and were intimately involved in hiring, firing, training, scheduling, promoting and disciplining Lend America's several hundred loan officer sales force.  *Id.* at ¶¶24-27, 36, 44-45, 49 & 58-62.  Ashley and Primeau personally supervised the loan officers, met and otherwise communicated with them, and determined their specific job duties.  *Id.* at ¶¶28, 36, 62 & 70.

Testimony from DeCillis plainly demonstrates her involvement in the details of Lend America's functions.  She testified that she—along with Ashley and Primeau—had the final say on Lend America's personnel policies, including wage and hour policies.  PR 56 at ¶¶49-50.  And these three executives set company policies that are directly applicable to the loan officers.  They controlled human resources and even chose the payroll company.  PR 56 at 52.

Control over significant aspects of the corporation's day-to-day functions is a persuasive factor in determining liability.  *Herman,* 172 F.3d at 140; *Dole*, 942 F.2d at 966; *Saunders,* 2007 WL 4165294, at *4-5.  As the owners, founders and highest officers at Lend America, Ashley, Primeau and DeCillis remained involved in all aspects of the company's operations.  The three individuals were Lend America's decision-makers, and as such should be held individually liable as employers alongside the company.

17

### 2. Ashley, Primeau and DeCillis determined loan officers' compensation, their classification under the FLSA, and their work schedules

Regardless of the degree of control one asserts over a company, employer liability will attach to individuals if they had control over the alleged violation of the FLSA. *Hotel Oasis*, 2007 WL 1843089 at *19-20; *Freeman*, 911 F.Supp. at 331. Ashley, Primeau and DeCillis were responsible for Lend America's compensation plans applicable to loan officers. Decisions affecting loan officer compensation at Lend America were made at the top of the corporate ladder. They implemented the loan officers' original commission-only compensation plan and set the plan's commission percentages. DeCillis was the person most knowledgeable at Lend America on the decision to classify loan officers as exempt, and Ashley, Primeau and DeCillis consulted with no outside parties before implementing the original loan officer compensation plan. They, alone, are responsible for devising it.

Later, Ashley, Primeau and DeCillis played an active role in deciding to reclassify the loan officers as non-exempt. In response to this lawsuit, the three of them met to develop a new loan officer compensation plan. Ultimately, they chose to replace the commission-only plan with a plan which provided for a recoverable draw equal to the minimum wage and an ostensible policy to begin paying overtime for hours in excess of 40 in any workweek. PR at 56 ¶10. This plan was subsequently introduced to loan officers on June 27, 2008. *Id.* at ¶10. Ashley, Primeau and DeCillis controlled the implementation of both loan officer compensation plans, whose legality is now disputed. *Id.* at ¶¶34, 50 & 68. Their extensive and lengthy involvement in loan officer compensation provides further support for a finding of individual liability.

Ashley personally exercised control over loan officer work hours and played an instrumental role in establishing Lend America's loan officer schedules. *Id.* at ¶25. Like the

corporate executives who were found individually liable in *Herman*, 172 F.3d at 140, *Hotel Oasis*, 2007 WL 1843089 at *19-20 and *Saunders,* 2007 WL 4165294, at *4-5, Ashley, Primeau and DeCillis directed Lend America's employment policies.  Here, the same grounds exist for holding Ashley, Primeau and DeCillis individually liable for Lend America's FLSA violations.

  **C.     Ashley, Primeau and DeCillis Are Individually Liable as Employers Because They Exerted Financial Control Over the Company**

  A third important factor in determining employer status is whether the individual exerts financial control over the company.  *Herman*, 172 F.3d at 140 (individual defendant controlled the company financially); *Saunders,* 2007 WL 4165294, at *5 (corporate executives with 20% ownership interest individually liable); *Simpson*, 784 F.Supp. at 545-46 (individual defendant personally financed corporate employer); *Cole*, 62 F.3d at 778 (chief executive and fifty percent owner individually liable); *Elliot Travel*, 942 F.2d at 966 (chief corporate officer and majority owner "controlled the purse strings"); *Donovan*, 747 F.2d at 972 (owner of corporations "held their purse-strings and guided their policies").  "Personal liability may arise from a significant ownership interest in the corporation coupled with operational control of significant aspects of the corporation's day-to-day functions." *Simpson*, 784 F.Supp. at 545.  Moreover, financial control becomes almost conclusive when it involves keeping a business operating.  *Id*. at 545-46.

  Ashley's, Primeau's and DeCillis' financial ties to Lend America were substantial.  Primeau was the majority owner.  PR 56 at ¶55.  Ashley was the highest paid employee and primary decision-maker.  But each of these executives exerted financial control over the company's operations.  In addition to retaining personal authority to sign on Lend America's bank accounts, including payroll accounts, they personally put in place the first commission-only compensation plan for loan officers, established loan officers' pay, and

implemented a new pay plan after the onset of this litigation.  PR 56 at ¶50.  Ashley was the "gatekeeper" for Lend America's expenses.  PR 56 at ¶32.

Even more telling are Ashley's, Primeau's and DeCillis' personal guarantees on the company's loan agreements, without which Lend America plainly could not have operated.  *Id.* at ¶31, 48 & 66.  The three personally guaranteed all of this $3,650,000.00 of this debt.  Ashley, Primeau and DeCillis are no different from other corporate officers who were found individually liable as employers because they held the corporation's "purse strings."  *See Herman*, 172 F.3d at 140; *Elliot Travel*, 942 F.2d at 966; *Donovan*, 747 F.2d at 972.  The three were financially wed to Lend America's fortunes and liabilities.  This fact, in combination with their control over Lend America's operations and its employment policies affecting loan officers, leaves no dispute that Ashley, Primeau and DeCillis should be deemed employers simultaneously with Lend America and held individually liable for the company's violations of the FLSA.

## VI.  Plaintiffs Are Entitled To Liquidated Damages

Liquidated damages are a standard element of damages in FLSA cases.  They are the norm rather than the exception.  *Herman v. RSR Security Services LTD.*, 172 F.3d 132, 142 (2nd Cir. 1999); *Bankston v. State of Illinois*, 60 F.3d 1259, 1254 (7th Cir. 1995); *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 920 (9th Cir. 2003); *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 908 (3rd Cir. 1991); *Kinney v. District of Columbia*, 994 F.2d 6, 12 (D.C. Cir. 1993).  Liquidated damages represent compensation to the employees, and are not designed as a penalty to the employer.  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945); *Snapp v. 69 Whigham Dep.*, at 78: 19-79:25; *Unlimited Concepts, Inc.*, 208 F.3d 928, 938-39 (11th Cir. 2000).  An employer seeking to avoid liability for liquidated damages must demonstrate: 1) subjective good faith; and 2) objective and reasonable grounds for believing that the failure to pay overtime

did not violate the FLSA. *See Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990); *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 199l) (citing 29 C.F.R. §§790.13 et seq.).

To show subjective good faith, the employer bears a substantial burden of proving that it had "an honest intention to ascertain what [the Act] require[d] and to act in accordance with it." *Dybach,* 942 F.2d at 1566 (quoting *Brock v. Shirk*, 833 F.2d 1326, 1330 (9th Cir. 1987); *Elwell v. Univ. Hos. Home Care Services*, 276 F.3d 832, 840 (6th Cir. 2002); *Ramsey v. State of Alabama Public Service Commission*, 86 F.Supp.2d 1124, 1129 (M.D. Ala. 2000). An employer who fails to investigate compliance with the FLSA does not act in good faith within the meaning of the Act. *Spikes*, 980 F.2d at 690; *Ramsey*, 86 F.Supp.2d at 1130. Even if the employer can show subjective good faith, it cannot avoid liability for liquidated damages unless it demonstrates a reasonable ground for believing the conduct complied with the FLSA. *Dybach*, 942 F.2d at 1567. Absence of complaints or conformance with industry-wide practice are not sufficient. *Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 71 (2nd Cir. 1997). Ignorance, moreover, cannot form the basis for a reasonable belief. *See, Reeves v. Int'l Tel.& Tel., Co.,* 616 F.2d 1342 (5th Cir. 1980). *Glenn v. General Motors Corp*., 658 F.Supp. 918, 928 (N.D. Ala. 1986).

Before June 2008, Defendants failed to pay their loan officers any salary. As a result, they cannot qualify for most of the exemptions to the FLSA. See, 29 C.F.R. §541.600. Defendants did not investigate or research whether their commission-only payment plan violated the FLSA. PR 56, Exh. C, DeCillis Dep. 96-97; 101-104. Nor did they contact any representatives from the Department of Labor. *Id.* Defendants made no effort to determine if a financial institution could qualify for the Retail or Service exemption. *Id.* Therefore, Defendant

will not be able to meet its burden to show an objective basis for claiming that the loan officers were exempt from the overtime or minimum wage requirements of the FLSA.  *See*, *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 40 (2nd Cir. 1995) (liquidated damages are proper as a matter of law where employees were not paid on a salaried basis); *Elwell v. University Hospitals Home Care Serv.*, 276 F.3d 832, 840-42 (6th Cir. 2002) (nurses are entitled to liquidated damages when they were not paid on a salaried basis); *Kennedy v. Critical Intervention Systems*, 199 F.Supp.2d 1305, 1307 (M.D. Fla. 2002), (liquidated damages awarded because "defendants' belief that it was in compliance with FLSA overtime pay provisions was not objectively reasonable" when it failed to pay the minimum wage).  A simple internet search would have disclosed that Defendants' commission-only plan for inside sales loan officers violated the FLSA.

Defendants, moreover, cannot rely on ignorance as reasonable grounds for believing its actions were in violation of the FLSA.  *Reeves v. Int'l Tel. & Tel. Co.*, 616 F.2d 1342, 1352-53 (5th Cir. 1980) ("It is not enough, for instance, to plead and prove ignorance of the wage requirements.  Knowledge will generally be imputed to the offending employer...").  Negligent actions do not satisfy the objective standards of reasonableness required to demonstrate good faith.  *Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994).  The good faith defense requires a duty on part of the employer to investigate potential liability.  *Washington v. Miller*, 721 F.2d at 804; *Reeves*, 616 F.2d at 1353.  For example, in *EEOC v. White and Son Enterprises*, the Eleventh Circuit affirmed an award of liquidated damages where an employer made no effort to investigate its legal obligations with respect to employment matters.  881 F.2d at 1012; *see Chao v. A-One Medical*, 346 F.3d 908, 920 (9th Cir. 2003) (failure to secure objective authority or legal advice on issue of overtime compensation precluded reliance on good

faith defense); *see Elwell*, 276 F.3d at 841 (failure to seek a legal opinion regarding employer's compensation plan is objective evidence that employer is not acting in good faith).

Here, Defendants' Chief Operating Officer—the person admittedly most knowledgeable about the classification of loan officers as exempt—did not investigate whether their payment plan violated the FLSA and did not know anything about how the decision was made to classify loan officers in a particular way. PR 56, Exh. C, DeCillis Dep. 96-97; 101-104. Even after this lawsuit was filed, Defendants did not change their commission-only pay plan for nine months.

## VII.  Because Defendants Willfully Violated the FLSA, A Three Year Statute Of Limitations Applies

If a Defendant willfully violates the FLSA, a three-year limitations period applies. 29 U.S.C. §255(a). A violation is willful if the defendant either knew his conduct violated the FLSA or showed reckless disregard for whether his conduct complied with the act. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

An employer's failure to investigate whether its policies violate the law supports a finding that its actions were willful. *Martin v. Selker Bros.,* 949 F.2d 1286, 1294-95 (3rd Cir. 1991) (employer failed to investigate potential FLSA violation); *Hardrick v. Airway Freight Systems, Inc.*, 63 F.Supp 989, 904 (N.D.Ill. 2000) (willful violation where employer took no action to determine if policies violated law). An employer's conduct is "in reckless disregard of the requirements of the Act if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry." 29 C.F.R. §578.3(c)(3). Here, Defendants made no effort to learn if their payment plan violated the law. They did not investigate whether their classification of loan officers was correct, determine whether their pay plan comported with the law, and did not consult with the Department of Labor.

23

Reckless disregard or guilty knowledge is also shown by attempts to circumvent the law. *See e.g., Chao v. A-One Medical*, 346 F.3d 908, 918-919 (9th Cir. 2003) (former violations, even if different and not willful, are evidence of an employer's willful violation); *McLaughlin v. Stineco, Inc*., 679 F.Supp. 436, 449 (M.D. Fla. 1988) (employer knew that business practices violated FLSA).   It is well-settled that an employer who fails to pay employees on a salaried basis is required to pay overtime compensation for hours worked in excess of 40 per workweek. *See, e.g., Waldbaum, Inc.,* 52 F.3d at 40.   In this case, Defendants disregarded this law by failing to pay their loan officers anything for hours worked over 40 and continued their unlawful policy nine months after they learned their pay plan violated the FLSA through this lawsuit.   Because Defendants relied on exemptions they could not possibly qualify for, they recklessly disregarded the FLSA.   Plaintiffs are, therefore, entitled to a three year statute of limitations.

**VIII.**   **Plaintiffs Are Entitled to an Award of Attorneys' Fees and Costs**

The FLSA provides that in an action for unpaid minimum wage or overtime wages, "The court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."   29 U.S.C. §216(b).   Here, as discussed above, all but 28 members of this collective action are entitled to judgment as a matter of law.   Therefore, Lend America is liable for all attorneys' fees and costs incurred to date in the prosecution of this action.

**CONCLUSION**

Because Defendants failed to pay their inside sales loan officers a guaranteed minimum salary of $455 per week before June 27, 2008, Defendants cannot satisfy a necessary prerequisite of the Administrative, Executive, Professional, Highly-Compensated, or Combination exemptions as a matter of law.   Defendants fail the Retail Sales exemption as a matter of law

because Lend America—a mortgage bank—is a financial institution.  Lend America, therefore, cannot raise a genuine issue of material fact as to the applicability of any exemption.  Thus, Plaintiffs are entitled to summary judgment on Defendant's defenses to liability.  Moreover, because there are no genuine issues of material fact as to whether Ashley, Primeau and DeCillis were "acting directly or indirectly in the interest of an employer in relation to an employee" 29 U.S.C. §203(d), Plaintiffs are entitled to summary judgment against them along with the company. Finally, Plaintiffs are entitled to liquidated damages and a three year statute of limitations as a matter of law because Defendants willfully violated the FLSA.

   Plaintiffs, therefore, respectfully move this Honorable Court for an Order:

1.   Granting judgment in favor of Plaintiff and all opt-in Plaintiffs who worked as inside sales loan officers and were not paid a guaranteed salary of at least $455 per week against Ideal Mortgage Bankers, Ltd. d/b/a Lend America, Michael Ashley, Helene DeCillis and Michael Primeau;

2.   Finding that Defendants willfully violated the FLSA and that Plaintiffs are entitled to liquidated damages as a matter of law; and,

3.   Awarding attorneys' fees and costs to Plaintiffs in an amount to be determined on motion.

May 27, 2010                              Respectfully submitted,

                                          Erik H. Langeland
                                          ERIK H. LANGELAND, P.C.
                                          500 Fifth Avenue, Suite 1610
                                          New York, NY 10110
                                          (212) 354-6270

                                          James B. Zouras
                                          (Admitted Pro Hac Vice)
                                          STEPHAN ZOURAS, LLP
                                          205 North Michigan Avenue, Suite 2560
                                          Chicago, IL 60601
                                          (312) 233-1550