Joseph A. Vogel (JV-5533)
KRAVET & VOGEL, LLP
1040 Avenue of the Americas, Suite 1101
New York, New York 10018
Tel.: 212-997-7634
Fax: 212-997-7686
Email: jvogel@kvnyc.com
*Attorneys for Defendant Helene DeCillis*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

BIENVENIDO FRANCO, Individually and on
Behalf of All Others Similarly Situated,

                         Plaintiffs,

          -against-

IDEAL MORTGAGE BANKERS, LTD, D/B/A
LEND AMERICA, INC., MICHAEL ASHLEY,
TIMOTHY MAYETTE, HELENE DECILLIS,
and MICHAEL PRIMEAU,

                        Defendants.

-------------------------------------------------------------x

WILLIAM FRASER and BRIAN McCABE,
Individually, and on Behalf of All Others
Similarly Situated,

                        Plaintiffs,

          -against-

IDEAL MORTGAGE BANKERS, LTD D/B/A
LEND AMERICA, INC., MICHAEL ASHLEY,
TIMOTHY MAYETTE, HELENE DECILLIS,
and MICHAEL PRIMEAU,

                        Defendants.

-------------------------------------------------------------x

ECF CASE

Civil Case No.:

07 CV 3956 (JS)(AKT)

---

# MEMORANDUM OF LAW ON BEHALF OF DFENDANT HELENE DECILLIS IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

KRAVET & VOGEL, LLP
1040 AVENUE OF THE AMERICAS, SUITE 1101
NEW YORK, NEW YORK 10018
212-997-7634
*Attorneys for Defendant Helene DeCillis*

## Table of Contents

|  | Page |
|---|---|
| Table of Authorities | ii |
| Preliminary Statement | 1 |
| Summary of Opposition | 2 |
| Facts Relevant to the Motion | 3 |
|     Background | 3 |
|     DeCillis Is Distinguishable From The Other Defendants | 4 |
|     DeCillis Had No Control Over Loan Officers | 5 |
|     DeCillis Had No Individual Ability to Set or Change Compensation | 7 |
|     As to DeCillis, Plaintiffs' Claims Are Not Supported By Competent Evidence | 8 |
| ARGUMENT | |
| I.   AS TO DECILLIS, PLAINTIFFS' MOTION MUST BE DENIED AS NO COMPETENT EVIDENCE SUPPORTS PLAINTFFS' CONCLUSORY ASSERTIONS OF "EMPLOYER" LIABILITY AGAINST DECILLIS | 9 |
|     A.   The Standard For Summary Judgment | 10 |
|     B.   The Standard for "Employer" Liability Under FLSA | 12 |
|     C.   DeCillis Is Not An "Employer" Under FLSA | 15 |
|         (i)   The *Herman* Factors Cannot Be Satisfied As To DeCillis | 16 |
|         (ii)  The Totality of Circumstances Confirms That, Notwithstanding Her Title, DeCillis Did Not Have the Power to Control Loan Officers. | 18 |
|     D.   Plaintiffs' Request for Liquidated Damages Raises Questions of Fact | 21 |
| II.  SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF NON-MOVANT DECILLIS AND THE CLAIMS ASSERTED AGAINST HER DISMISSED AS A MATTER OF LAW | 23 |
| CONCLUSION | 24 |

Table of Authorities

Page

Cases

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598,
    26 L.Ed.2d 142 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150 (11th Cir. 2008) . . . .   14

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505,
    91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132 (2d Cir. 2008) . . . . .   14

*Bravo v. Eastpoint Intern., Inc.,* No. 99 Civ. 9474 (WK),
    2001 WL 314622 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18, 19

*Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir.1988). . . . . . . . . . . . . . . . . . . . . .   13

*Carter v. Dutchess Community College,* 735 F.2d 8 (2d Cir.1984) . . . . . . . . . . . . . . . . .   12, 13

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548,
    91 L.Ed.2d 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 23

*Chao v. Vidtape, Inc.,* 196 F.Supp.2d 281 (E.D.N.Y. 2002)
    *modified on other grounds,* 66 Fed. Appx. 261 (2d Cir. 2003) . . . . . . . . . . . . . . .   14

*Coach Leatherware Co. Inc. v. AnnTaylor, Inc.,* 933 F.2d 162 (2d Cir.1991) . . . . . . . . . .   11, 24

*Davis v. J. P. Morgan Chase & Co.,* 587 F.3d 529 (2d Cir. 2009),
    *cert. denied* __ U.S. __, 130 S.Ct. 2416, 176 L.Ed.2d 925 (2010) . . . . . . . . . . . . . . .   22

*Derewiecka v. Zlored, Inc.,* No. 99 CIV. 3382 (WHP),
    1999 WL 767203 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Gallegos v. Equity Title Co. of America, Inc.,* 484 F.Supp.2d 589
    (W.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Goldberg v. Whitaker House Co-op., Inc.,* 366 U.S. 28, 81 S.Ct. 933,
    6 L.Ed.2d 100 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp.*
    *(In re Blackwood Assocs., L.P.),* 153 F.3d 61 (2d Cir.1998) . . . . . . . . . . . . . . . . .   10

*Henry v. Quicken Loans Inc.,* No. 04-CV-40346,
    2009 WL 3270768 (E.D.Mich. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132 (2d Cir.1999) . . . . . . . . . . 13, 16, 17, 18, 19, 20

*Kaur v. Royal Arcadia Palace, Inc.*, 643 F.Supp.2d 276 (E.D.N.Y.2007) . . . . . . . . . . . . . .   14

*McLee v. Chrysler Corp.*, 109 F.3d 130 (2d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 12

*Patel v. Wargo*, 803 F.2d 632 (11ᵗʰ Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 18

*Ramsey v. Coughlin*, 94 F.3d 71 (2d Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 23, 24

*Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58 (2d Cir.1997) . .   22

*Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473,
    91 L.Ed. 1772 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Saunders v. Ace Mortg. Funding, Inc.*, No. CIV 05-1437 (DWF/SRN),
    2007 WL 1190985 (D.Minn. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Searson v. Concord Mortg. Corp.*, No. 07-CV-3909 (DRH/ARL),
    2009 WL 3063316 (E.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Sexton v. Franklin First Financial, Ltd.*, No. 08-CV-04950 (JFB ARL),
    2009 WL 1706535 (E.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Tracy v. NVR, Inc.*, No. 04-CV-6541L,
    2009 WL 3153150 (W.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 18, 19

*Underwood v. NMC Mortg. Corp.*, No. 07-2268-EFM,
    2009 WL 1269465 (D.Kan. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Weinstock v. Columbia University*, 224 F.3d 33 (2d Cir.2000),
    *cert. denied* 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003) . . . . . . . . . . . . .   10, 11

*Williams v. Smith*, 781 F.2d 319 (2d Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Wu v. Chang's Garden of Storrs, LLC*, No. 3:08-CV-746 (WWE),
    2010 WL 918079 (D.Conn. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 20, 21

*Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir.2003) . . . . . . . . . . . . . . . . . . . .   13, 14


<u>Statutes</u>

Fed.R.Civ.P. Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

29 U.S.C. § 203(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

29 U.S.C. § 260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

Joseph A. Vogel (JV-5533)
KRAVET & VOGEL, LLP
1040 Avenue of the Americas, Suite 1101
New York, New York 10018
Tel.: 212-997-7634
*Attorneys for Defendant Helene DeCillis*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BIENVENIDO FRANCO, Individually and on
Behalf of All Others Similarly Situated,

                                Plaintiffs,

                -against-

IDEAL MORTGAGE BANKERS, LTD, D/B/A
LEND AMERICA, INC., MICHAEL ASHLEY,
TIMOTHY MAYETTE, HELENE DECILLIS,
and MICHAEL PRIMEAU,

                                Defendants.
------------------------------------------------------------x
WILLIAM FRASER and BRIAN McCABE,
Individually, and on Behalf of All Others
Similarly Situated,

                                Plaintiffs,

                -against-

IDEAL MORTGAGE BANKERS, LTD D/B/A
LEND AMERICA, INC., MICHAEL ASHLEY,
TIMOTHY MAYETTE, HELENE DECILLIS,
and MICHAEL PRIMEAU,

                                Defendants.
------------------------------------------------------------x

ECF CASE

Civil Case No.:

07 CV 3956 (JS)(AKT)

**MEMORANDUM OF LAW ON BEHALF OF DFENDANT HELENE DECILLIS
IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Preliminary Statement**

This Memorandum is submitted on behalf of defendant HELENE DECILLIS

("DeCillis"), together with her accompanying declaration (the "DeCillis Declar."), the

accompanying declaration of Elizabeth Angebrandt ("Angebrandt Declar.") and DeCillis' Rule

56.1 Counter-Statement (the "DeCillis R. 56.1 Counter-Statement"), in opposition to the motion

for partial summary judgment (Docket # 205) filed by plaintiffs herein, and in particular

opposition to that aspect of plaintiffs' motion that seeks to hold DeCillis personally liable as an

"employer" under the Fair Labor Standards Act ("FLSA"), even though DeCillis was never an

owner or director of the corporate defendant Ideal Mortgage Bankers, Ltd., d/b/a as Lend

America, Inc. ("Lend America"), had only minimal contact with any of the plaintiff loan officers,

had no supervisory control or authority over their hiring or firing, did not set any of their work

schedules or duties and had no individual ability to set or change their compensation.

## <u>Summary of Opposition</u>

As to DeCillis, plaintiffs' motion must be denied as it is not supported by any

competent evidence and is premised solely on conclusory assertions of fact that cannot be

sustained and have already been rebutted.  Moreover, as to DeCillis, plaintiffs' motion grossly

misstates the actual facts, blatantly misrepresents DeCillis' deposition testimony and ignores the

DeCillis R 56.1 Counter-Statement.   Each of the conclusory assertions contained in plaintiffs'

Rule 56.1 Statement (Docket # 206, Attachment # 2) as to DeCillis, upon which plaintiffs now

rely in support of their motion, as if each were uncontested, has been specifically disputed and

rebutted by the responding provisions contained in the DeCillis R 56.1 Counter-Statement (*see,*

*e.g.,* DeCillis R 56 Counter-Statement, ¶¶ 1-9; 42-52) (Docket # 207).  Moreover, plaintiffs'

motion unfairly lumps DeCillis together with the other named individual defendants, Michael

Primeau ("Primeau") and Michael Ashley ("Ashley), and wrongly ascribes their conduct, powers

and/or authority to DeCillis, when in fact the record demonstrates that her duties, abilities and

authorities to act while employed by Lend America, were very different from and markedly

diminished and distinguishable from the other defendants, such that DeCillis cannot be viewed in

the same light.

Thus, Plaintiffs have no competent evidence to support the conclusory assertions that they allege against DeCillis and, as a result, the motion must be denied as to DeCillis and the claims asserted against her dismissed, as a matter of law. At the very least material questions of fact remain for trial as to her potential liability.

**Facts Relevant to the Motion**

**Background**

Lead plaintiff Franco, a former loan officer employed by Lend America from September 2003 to June 2005, commenced the initial action on September 21, 2007, individually and on behalf of all others similarly situated as a collective action under the FLSA. Initially, the action named Lend America as the only defendant and asserted claims for wage violations under FLSA contending that plaintiff's commission only compensation failed to comply with the minimum wage and overtime requirements of FLSA (Docket # 1). Lead plaintiffs Fraser and McCabe commenced a second action on February 17, 2009, bringing similar claims under FLSA, as well as additional state law claims under the New York Labor Law, but also named as defendants the individuals Michael Ashley, Timothy Mayette, Helene DeCillis and Michael Primeau, former officers of Lend America.

On September 28, 2009, this Court issued an order (Docket # 128) consolidating the two actions, and on October 1, 2009, the Franco plaintiffs filed a Second Amended Complaint (Docket # 129), adding the same individual defendants that were named in the second action to the first action. In early December 2009, corporate defendant Lend America ceased its business operations, closed its doors and laid off and terminated the employment of all of its over 600 employees, including the individual named defendants (DeCillis Declar., ¶¶ 9, 12). On

3

February 3, 2010, plaintiffs moved for entry of a default judgment against corporate defendant Lend America (Docket # 179).

After concluding their discovery,[1] plaintiffs have moved for partial summary judgment as to liability only (i) seeking to dismiss the FLSA exemptions raised by defendants, (ii) seeking to hold the individual defendants personally liable as additional "employers" under FLSA and (iii) seeking judgment as to liquidated damages (Plaintiffs' Memorandum, at 3).

**DeCillis Is Distinguishable From The Other Defendants**

Repeatedly, plaintiffs' motion unfairly lumps DeCillis together with the other named individual defendants, Primeau and Ashley, and wrongly ascribes their conduct, powers and/or authorities to DeCillis, when in fact her duties, abilities and authority to act while employed by Lend America, were very different from and markedly diminished and distinguishable from the other defendants (*see*, DeCillis Declar., ¶¶ 5-20; Angebrandt Declar., ¶¶ 4-10).

Unlike Primeau, who was President, founder, CEO, sole director and 91% shareholder of Lend America and Joseph Forgione ("Forgione"), the original equity investor and 9% shareholder, DeCillis was never a shareholder, owner or equity investor in Lend America (*see*, DeCillis Declar., ¶ 6. Unlike the other defendants, DeCillis never had any responsibility for, control over or authority to direct the functions, actions or compensation of Lend America's Sales Department in which the plaintiff loan officers were employed (*see*, DeCillis Declar., ¶¶ 9-20; Angebrandt Declar., ¶¶ 4, 9)). Rather, DeCillis was a salaried employee only. Although she held the title of chief operating officer during the last period of her employment, her duties and

---

[1]  The Court has permitted the individual defendants to seek additional deposition and interrogatory discovery from plaintiffs, which discovery is still on-going. To date, plaintiffs have produced lead plaintiff Franco for deposition and have provided a partial production of interrogatory responses from certain of the plaintiffs in these consolidated actions. Other depositions have been noticed by defendant Ashley but not yet concluded.

responsibilities were limited to running the "back office" functions of Lend America's mortgage lending business; she had no authority, control or responsibility with respect to the "front office" functions of the Sales Department (*see* DeCillis Declar., ¶¶ 7, 10, 14; Angebrandt Declar., ¶¶ 4-7). Primeau and Forgione, the founders of Lend America, were its only shareholders, and Primeau (CEO, president, sole director and 91% shareholder) and Forgione (the sole capital investor and 9% shareholder), were the only individuals who had absolute control (DeCillis Declar., ¶ 11). DeCillis reported directly up to Primeau, Forgione and Ashley, who were her superiors, and she took her instructions from each of them (DeCillis Declar., ¶ 10).

Unlike the other defendants, DeCillis had no reporting responsibilities with or supervisory control over either the Sales Department (run by Primeau, Forgione, Ashley, and their sales managers Heidi Frigano, Brian Fried and Alan Breecker), or the Human Resources/Payroll Department (run by Denise Tyler), or the Accounting Department (run by CFO Timothy Mayette through June 2005, and Aaron Bhatia, thereafter), all of which departments reported directly to Primeau and Forgione, and for certain matters Ashley (*see,* DeCillis Declar., ¶¶ 7, 10, 12-13; Angebrandt Declar., ¶¶ 5-6). DeCillis' duties were limited to supervising the "back office" functions of Lend America's mortgage business, which included the documentation of closed mortgage loans that were sold by the Sales Department and the re-selling of such closed loans to investors and banks in the secondary mortgage markets. Significantly, all of the employees that DeCillis supervised and controlled were salaried and/or hourly paid employees, and it was only with respect to those employees that she supervised that DeCillis had any ability to hire and fire (DeCillis Declar., ¶¶ 7, 14, 16).

**DeCillis Had No Control Over Loan Officers**

Lend America's Sales Department was the engine that drove Lend America's

5

business.  As such it was run exclusively by Lend America's founders Primeau and Forgione,

and as to motivation and business development, Ashley, its chief business strategist (DeCillis

Declar., ¶¶ 9-10; Angebrandt Declar., ¶ 5).  Together with their subordinate sales department

managers, they made all day to day decisions for the "front office" Sales Department and its 100-

300 loan officer sales force.  In sharp contrast, DeCillis, despite her title, had no control over or

supervisory responsibility for the Sales Department, as her duties were limited to running the

"back office" functions of the business.   DeCillis did not supervise, control or monitor the Sales

Department or any of its managers, nor did she make any decisions concerning the hiring or

firing of loan officers and made no decisions as to promotions or discipline (DeCillis Declar., ¶

14; Angebrandt Declar., ¶¶ 6-7).  DeCillis did not appoint any of the sales department managers,

nor did she supervise any of their work.  DeCillis did not schedule the work or the hours to be

worked of loan officers, nor was she responsible for approving overtime for loan officers

(DeCillis Declar., ¶ 14; Angebrandt Declar., ¶¶ 9-10).  As confirmed by plaintiffs' own exhibits,

only the Director of Human Resources, Denise Tyler, had the authority to approve loan officer

overtime (*see* Langeland Affid., Exh. A).  All day-to-day decisions regarding loan officers were

handled by the Sales Department's managers, who reported directly to the Department heads,

Primeau, Forgione and for certain matters, Ashley (*see* DeCillis Declar., ¶¶ 5-20; Plaintiffs R.

56.1 Statement, Exh. C, Deposition of Helene DeCillis at 68-76, 120, 123, 127-128, 149, 160).

Similarly, as to loan officers, DeCillis did not have interaction with or supervisory control over

Lend America's Human Resources/Payroll Department or Lend America's Accounting

Department which reported directly to lend America's owners, Primeau and Forgione, and for

certain matters, Ashley (DeCillis Declar., ¶ 7; Angebrandt Declar., ¶¶ 6-7).

 Although the Sales Department had weekly meetings run by its department

managers, DeCillis rarely attended any of those meetings (approximately 5 in 6 years), and when

she did, it was only to provide information about commission calculation and/or to help explain

new loan products that Lend America was considering selling through the Sales Department

(DeCillis Declar., ¶ 15).   Nor did DeCillis have regular communications with any of the Sales

Department's individual loan officers, outside the exchange of social pleasantries or occasionally

responding to a direct inquiry they may have had regarding industry issues, company procedures,

or new loan product or commission calculation details (DeCillis Declar., ¶¶ 16-17).

**DeCillis Had No Individual Ability to Set or Change Compensation**

When DeCillis first joined Lend America in 2003, she was hired as a vice

president of secondary marketing, and was responsible for re-selling to secondary market

investors the various mortgage loans that Lend America had already closed.   In that function,

DeCillis had no involvement with Lend America's Sales Department, which in 2003, consisted

primarily of outside loan officers and was run by Primeau, Forgione, and, for certain matters,

Ashley (DeCillis Declar., ¶ 18).  The compensation arrangements paid to loan officers in 2003

were fixed exclusively by the Sales Department's managers and supervisors and as vice

president of secondary marketing, DeCillis had no responsibility for or ability to change that

compensation policy, which included a variety of payment alternatives, all of which were

periodically reviewed and approved by outside counsel (Id.).  Some loan officers were paid

salaries or draws, some were paid commissions and some were paid minimum wages (*see also*

prior declarations in this case, Docket #'s 47-5 to 47-8).  All decisions as to specific loan officer

compensation were handled by the managers of the Sales Department and their immediate

supervisors (*see,* DeCillis Declar., ¶ 18; DeCillis R 56.1 Counter-Statement, ¶ 1).

When DeCillis subsequently became chief operating officer she still had no

control or authority to change loan officer compensation as that was not within her "back office" duties or responsibilities (DeCillis Declar., ¶ 19). In June 2008, Lend America effected a change to loan officer compensation to require payment of minimum wages and overtime. That decision, however, was a group management decision made with the advice of outside employment law counsel at the time (DeCillis Declar., ¶¶ 9-10; Angebrandt Declar., ¶ 8). Although DeCillis participated in the group discussions that lead to this change along with Primeau, (President, CEO, Director and 91% shareholder), Ashley (Chief Business Strategist), Denise Tyler (Director of Human Resources/Payroll), Heidi Frigano (Sales Department co-manager) and Alan Breecker (Sales Department co-manager), and members of the Weiner Brodsky Sidman Kider PC law firm (DeCillis Declar., ¶¶ 19-20), she had but a single vote and no individual ability to control the outcome of the decision.

Individually, DeCillis had no personal ability to change any loan officer's compensation even if she wanted to – she was not an owner, investor or director; she was not CEO, President or CFO; she was not even a manager of the Sales Department. At most she had one vote in the process, a vote that could be overruled or ignored by her superiors. Alone DeCillis could not implement or change any compensation policy (DeCillis Declar., ¶¶ 19-20).

**As to DeCillis, Plaintiffs' Claims Are Not Supported By Competent Evidence**

DeCillis' duties, functions and responsibilities while employed at Lend America were in fact markedly different and distinguishable from the other named individual defendants in this case and their conduct cannot be ascribed to her. Plaintiffs' motion relies almost exclusively on the conclusory assertions set forth in plaintiffs' Rule 56.1 Statement; however, as they relate to DeCillis, each has been rebutted and disputed by the corresponding provisions of the DeCillis R. 56.1 Counter-Statement (DeCillis Declar., ¶¶ 26-36). Plaintiffs' attachment of a

single loan guaranty signed by DeCillis and others is singularly non-dispositive, as it is wholly

unrelated to the issue of loan officer control (Langeland Affid., Exh. B).

Significantly, although plaintiffs have completed their discovery, no competent

evidence supports plaintiffs' single paragraph of conclusory assertions made against DeCillis in

the amended complaint (Docket # 129, ¶ 10) or on this motion – not even the deposition

testimony of the lead plaintiff or the sworn interrogatory responses received to date from several

of the plaintiffs, which if anything confirm DeCillis' non-involvement with and lack of control

over loan officers (*see* DeCillis Declar. ¶¶ 16-17).

## ARGUMENT

### I.

### AS TO DECILLIS, PLAINTIFFS' MOTION MUST BE DENIED AS NO COMPETENT EVIDENCE SUPPORTS PLAINTFFS' CONCLUSORY ASSERTIONS OF "EMPLOYER" LIABILITY AGAINST DECILLIS

Plaintiffs' motion unfairly lumps DeCillis together with the other named

individual defendants, Primeau and Ashley, and wrongly ascribes their conduct, powers and/or

authority to DeCillis, when in fact her duties, abilities and authorities to act while employed by

Lend America, were very different from and markedly diminished and distinguishable from the

other defendants.  When viewed individually as to DeCillis, plaintiffs' motion is not supported

by any competent evidence.  As to DeCillis, each of the conclusory assertions of the Plaintiffs'

Rule 56.1 Statement (Docket # 206, Attach. # 2), upon which plaintiffs' rely for support on this

motion has been disputed by contrary deposition testimony as indicated in the corresponding

provisions of the DeCillis Rule 56.1 Counter-Statement (Docket # 207), and the accompanying

DeCillis declaration.  Thus, despite concluding their discovery, plaintiffs proffer no competent

evidence to support the claims of "employer" liability as to DeCillis. Accordingly, the motion must be denied as to DeCillis and the claims as to DeCillis dismissed, as a matter of law.

## A.   <u>The Standard For Summary Judgment</u>

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.),* 153 F.3d 61, 67 (2d Cir.1998) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a mater of law." Fed.R.Civ.P. Rule 56(c). "The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir. 1997); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee,* 109 F.3d at 134. Although the moving party bears the initial burden, "once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.' " *Weinstock v. Columbia University,* 224 F.3d 33, 41 (2d Cir.2000), *cert. denied* 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003). "Mere conclusory allegations or denials will not suffice."

*Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986). Similarly, "unsupported allegations do not create a material issue of fact." *Weinstock,* 224 F.3d at 41.

The law in this Circuit is equally clear that when the movant has not met its burden, summary judgment may be granted instead to the non-moving party if the circumstances are appropriate, as such summary resolution is "an accepted method of expediting litigation." *Ramsey v. Coughlin,* 94 F.3d 71, 74 (2d Cir. 1996), *citing Coach Leatherware Co. Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir. 1991).

Here, as to defendant DeCillis, plaintiffs proffer no competent evidence to support their motion. Plaintiffs rely on the conclusory assertions of their Rule 56.1 Statement, while ignoring the corresponding provisions of the DeCillis 56.1 Counter-Statement that refute each of the assertions as to DeCillis, and ignore and/or misstate the prior deposition testimony as to DeCillis (DeCillis Declar., ¶¶ 26-36). In their rush to judgment, plaintiffs' unfairly lump DeCillis with the other named defendants, Primeau and Ashley, and attempt to ascribe their powers, duties and involvement upon DeCillis, when in fact her duties, responsibilities and powers were substantially less and factually distinguishable. Plaintiffs also attempt to elevate form over substance by pointing solely to DeCillis' title during the last period of her employment at Lend America – chief operating officer – standing alone, without revealing the factual substance of the position, which as she testified to, and reiterates in her accompanying declaration, limited her involvement to supervising the "back office" functions of the business without any powers or authorities over the "front office" Sales Department – run by others (DeCillis Declar., ¶¶ 10-14; Angebrandt Declar., ¶¶ 4-5). The only affidavit submitted by plaintiffs in support, is that of counsel, which merely identifies 3 exhibits, only one of which even mentions DeCillis – a single personal guaranty – about which plaintiffs speculate and again

draw incorrect, unsupported conclusions (Plaintiffs' Memorandum, at 7).

Accordingly, as to DeCillis, plaintiffs have not met their "burden of showing the absence of any genuine dispute as to a material fact." *McLee,* 109 F.3d at 134.  Even if this Court were to conclude that plaintiffs' initial burden on this motion has been satisfied, DeCillis has at the very least demonstrated by compelling evidence that material issues of fact remain for trial as to her potential liability.

**B.**     **The Standard for "Employer" Liability Under FLSA**

The FLSA defines "employer" in broad terms as "any person acting directly or indirectly in the interest of an employer in relation an employee..." 29 U.S.C. § 203(d).  Thus, the statute offers little guidance on whether or not, in addition to a corporate employer, a given individual qualifies as a putative employer for purposes of assessing additional liability personally to that individual.  In assessing the issue, it has been held that the overarching concern for a reviewing court is whether the alleged employer possessed "the power to control" the workers in question. *See, Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984).

Whether an individual defendant has sufficient power to control the workers in question, such that that individual defendant will be held liable as an additional "employer" under FLSA, will be governed by the unique facts of the given case, as whether sufficient power to control exits to find an individual defendant liable as an "employer" will be a matter of "economic reality." *Goldberg v. Whitaker House Co-op. Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961).  Four factors have been held to be relevant to a reviewing court's determination of whether an individual defendant is a joint employer under the "economic reality" test, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of

12

employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999), *quoting Carter,* 735 F.2d at 12.

No single factor standing alone is dispositive one way or the other. *See Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1059 (2d Cir.1988). Instead, "economic reality is determined based upon all the circumstances, [and] any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman,* 172 F.3d at 139; *see also Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (holding that whether an employer-employee relationship exists does not depend on isolated factors but rather "upon the circumstances of the whole activity").

It has been held that the power to control workers sufficient to qualify as an "employer" for the purposes of the FLSA, "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Herman,* 172 F.3d at 139 (2d Cir.1999). "Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do[ ] not diminish the significance of its existence." *Id.* (internal quotations and citations omitted). "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question," and the court must evaluate the "totality of the circumstances" to determine whether a defendant had "operational control." *Id.* at 139-40. Conversely, in order to grant summary judgment in favor of a defendant, a district court need not decide that every factor of the "economic reality" test weighs against a finding of employer status. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 77 (2d Cir. 2003).

Accordingly, joint liability under FLSA as an "employer" will not be found

13

simply because the individual defendant possesses a particular title or position within the corporate structure, as control must also be shown. *See, e.g., Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008) (majority shareholder holding position of managing agent was not an "employer" under FLSA as, despite title and equity ownership, under the circumstances of the whole activity, he did not have day to day operational control and/or responsibilities for supervision over the employees at issue); *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986) (president and principal stockholder held not an "employer" under FLSA as individual did not have operational control or direct responsibility for the supervision of the subject employee); *Wu v. Chang's Garden of Storrs, LLC*, No. 3:08-CV-746 (WWE), 2010 WL 918079 (D. Conn. 2010) (restaurant hostess who had no ownership interest in restaurant held not to be an employer under FLSA because she was not integral in setting work polices, schedules or conditions of employment and had no hiring or firing authority over the subject employees, even though she regularly assigned work, reprimanded mistakes, distributed tips and occasionally signed checks); *Chao v. Vidtape, Inc.*, 196 F.Supp.2d 281, 291 (E.D.N.Y. 2002) *modified on other grounds*, 66 Fed. Appx. 261 (2d Cir. 2003) (individual thought by most employees to be a "boss" even though he was not a shareholder or officer, but who occasionally gave employees orders and who attended employee meetings, held not to be an employer under FLSA).

Although the economic reality test involves a fact specific inquiry, the ultimate decision as to whether a party is an employer is a question of law. *Zheng*, 355 F.3d at 76. However, the Second Circuit has also cautioned that given the specific fact intensive nature of the inquiry, it is rare that a finding of liability against a putative individual employer can be made on summary judgment. *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 144 (2d Cir. 2008); *accord, Kaur v. Royal Arcadia Palace, Inc.*, 643 F.Supp.2d 276 (E.D.N.Y.

2007).

**C.     DeCillis Is Not An "Employer" Under FLSA**

Here, discovery has confirmed that DeCillis did not have the power to control

Lend America's loan officers, despite having the title of chief operating officer.  Plaintiffs'

motion attempts to elevate form over substance, by focusing solely on her title without revealing

the "economic reality" of her position or the totality of her circumstances vis-à-vis the plaintiff

loan officers, and by ignoring the factual distinctions that existed between DeCillis and the other

named defendants. *See Tracy v. NVR, Inc.*, No. 04-CV-6541L, 2009 WL 3153150, *5

(W.D.N.Y. 2009) (relying on officer title alone, insufficient to satisfy *Herman* factors for

purposes of pleading a claim against President and Chairman, as "this would license suit under

the FLSA against every high level officer and board member of large public companies simply

because of the position the individual holds").  Plaintiffs' effort to hold DeCillis liable also

ignores both her prior deposition testimony and the DeCillis Rule 56.1 Counter-Statement (*see*

DeCillis Rule 56.1 Counter-Statement, ¶¶ 1-9, 42-52).

The actual facts show that DeCillis was not an owner, shareholder, investor or

director, was not involved in hiring, firing, discipline, promotion, compensation or scheduling,

and was personally unable to singularly affect any of Lend America's pre-existing or future wage

and hour polices vis-à-vis loan officers (DeCillis Delcar., ¶¶ 5-20; Angebrandt Declar., ¶¶ 4-10).

Indeed, plaintiffs' exhibits confirm that DeCillis was not involved in overtime decisions for loan

officers – all overtime needed to be approved by the Director of Human Resources, Denise Tyler

(*see*, Langeland Affid., Exh. A; *see also* Angebrandt Declar., ¶ 10).  Moreover, plaintiffs' motion

papers ignore the several specific factual distinctions between DeCillis' diminished abilities and

powers at Lend America and the abilities and powers of her superiors, when plaintiffs repeatedly

and unfairly lump DeCillis together with the other individual defendants and wrongly ascribe to DeCillis powers and abilities that she did not have, as confirmed in her prior deposition testimony, her accompanying declaration and the DeCillis Rule 56.1 Counter-Statement (DeCillis Declar., ¶¶ 26-36). Here, the totality of circumstances shows that plaintiffs cannot satisfy the "economic reality" test as to DeCillis sufficient to hold her liable as an "employer" under FLSA.

      **(i)    The *Herman* Factors Cannot Be Satisfied As To DeCillis**

Specifically, the four factors identified by the Second Circuit in *Herman* (172 F.3d at 139), as evidencing "economic reality" sufficient to hold an individual defendant personally liable as an additional "employer" under FLSA, when applied to DeCillis, cannot be satisfied. The facts at bar confirm that despite her title, the "economic reality" in this case is that DeCillis did not have the power to control the plaintiff loan officers, and thus cannot be held personally liable under FLSA.

As to the first criteria, that the putative employer have "the power to hire and fire" loan officers (172 F.3d at 139), the facts confirm that DeCillis did not have the power to hire and fire loan officers, nor did she have the power to discipline or promote anyone in the Sales Department, as such functions were handled exclusively by Primeau, Forgione and for certain matters Ashley and their immediate subordinate department managers – none of whom were hired or appointed by DeCillis (*see*, DeCillis Declar., ¶¶ 9-10, 12-17; Angebrandt Declar., ¶¶ 5-7; DeCillis Rule 56.1 Counter-Statement, ¶¶ 1-9, 42-52). This fact is confirmed by the responses to interrogatories received to date from the responding plaintiffs (*see* DeCillis Declar., ¶ 16; Exh. 1, responses to No. 24).

As to the second criteria, that the putative employer have the "power to supervise

and control work schedules and conditions of employment" (172 F.3d at 139), the facts confirm that DeCillis did not have the power to supervise or control loan officer work schedules and conditions of employment, as such functions were handled exclusively by Primeau, Forgione and in certain respects by Ashley and their immediate subordinate department managers – none of whom were hired or appointed by DeCillis (*see*, DeCillis Declar., ¶¶ 12-17; Angebrandt Declar., ¶¶ 5, 9-10; DeCillis Rule 56.1 Counter-Statement, ¶¶ 1-9, 42-52). Even lead plaintiff Franco, despite confusing DeCillis with chief underwriter Ilene Dobbs, admitted that DeCillis had no control over his hours, working schedule or compensation (*see* DeCillis Declar., ¶ 17; Exh. 2 at 269-273; Angebrandt Declar., ¶ 11).

Likewise, as to the third criteria, that the putative employer have the "power to determine the rate and method of payment" (172 F.3d at 139), the facts again confirm that DeCillis did not have the power to determine loan officer compensation or rate or method of payment, as such functions were handled exclusively by Primeau, Forgione and in some respects Ashley and their immediate subordinate department managers – none of whom were hired or appointed by DeCillis (*see*, DeCillis Declar., ¶¶ 18-20; Angebrandt Declar., ¶¶ 6-7; DeCillis Rule 56.1 Counter-Statement, ¶¶ 1-9, 42-52). DeCillis did not sign payroll checks, nor did she set the compensation policy with respect to loan officers, either before or after she joined Lend America. Nor did DeCillis have the individual authority to effect any change in compensation methodology (*see* DeCillis Declar., ¶¶ 19-20; Angebrandt Declar., ¶¶ 6-8).

As to the fourth criteria, that the putative employer be "responsible to maintain employment records" (172 F.3d at 139), the facts confirm that DeCillis did not have the responsibility to maintain loan officer employment records, as such functions were handled exclusively by the individual Sales Department managers, and the Human Resources/Payroll and

17

Accounting Departments at Lend America, all of which reported directly to Lend America's

owners, Primeau and Forgione; such departments did not report to DeCillis as to loan officers,

nor did she have any supervisory responsibilities over such departments as to loan officers (*see,*

DeCillis Declar., ¶¶ 13-14; Angebrandt Declar., ¶¶ 6, 9-10; DeCillis Rule 56.1 Counter-

Statement, ¶¶ 1-9, 42-52).

        Thus, the *Herman* factors cannot be satisfied as to DeCillis.

**(ii)     The Totality of Circumstances Confirms That, Notwithstanding
Her Title, DeCillis Did Not Have The Power to Control Loan Officers.**

        The totality of the circumstances of this case confirms that, despite her title,

DeCillis did not have sufficient operational control over the plaintiff loan officers necessary for a

finding of "employer" liability under FLSA. *See, Bravo v. Eastpoint Intern., Inc.,* No. 99 Civ.

9474 (WK), 2001 WL 314622 at *2 (S.D.N.Y. 2001) (plaintiff must show chairperson and owner

possessed "the power to control the workers in question"); *accord, Tracy,* 2009 WL 3153150 at

*5 (allegation of corporate officer status alone insufficient to plead a claim for individual liability

under FLSA); and *Patel,* 803 F.2d at 638 (plaintiffs must show corporate officer had operational

control).

        Unlike the relatively small business operation at issue in *Herman,* Lend America

was an over 600 employee corporation when it closed, with multiple departments and department

heads having specific delegated responsibilities (Angebrandt Declar., ¶ 6). Although during the

last several years of her employment DeCillis held the title chief operating officer, her duties and

responsibilities were restricted to running the "back office" functions of Lend America's

mortgage loan business, and in that capacity had nothing to do with, nor did she have any

supervisory or operational control over the "front office" Sales Department of Lend America in

which all of the plaintiff loan officers were employed (DeCillis Declar., ¶¶ 12-17; Angebrandt

Declar., ¶ 4). As at bar, "[w]here the relationship between the putative employer and the plaintiff employee is more attenuated and the size of the corporation larger, employer liability may not be found" unless plaintiffs prove actual power of control. *Tracy*, 2009 WL 3153150 at *4. Here, plaintiffs must show by competent evidence that, in addition to her title, DeCillis had "the power to control" Lend America's loan officers. *Bravo*, 2001 WL 314622 at *2. Yet, they have not done so (nor can they do so). Plaintiffs' single evidentiary submission as to DeCillis – a single unrelated guaranty signed by DeCillis and others (Langeland Affid., Exh. B) – is of itself wholly insufficient to establish that she had operational control over loan officers. *See Derewiecka v. Zlored, Inc.*, No. 99 CIV. 3382 (WHP), 1999 WL 767203, *2 (S.D.N.Y. 1999) (putative employer's signature on a waiver-of-lien form held insufficient to establish operational control of the subject employees). As a result, DeCillis is clearly distinguishable from the other named defendants and cannot be lumped together with them in conclusory fashion, simply because of her title, as plaintiffs repeatedly have tried to do in their moving papers (*see* DeCillis Declar., ¶¶ 26-36).

Indeed, DeCillis' situation at Lend America vis-à-vis loan officers was very different from the individual defendant in *Herman* who was found to be liable under FLSA as an additional "employer." *Herman*, 172 F.3d at 141. In that case, the individual defendant, Murray Portnoy, was found to be an individual employer under FLSA even thought he did not have day to day supervisory duties over the subject employee security guards, because he was one of the founders of, a 50% owner in and was chairman of the board of the security guard company that employed the security guards at issue in that case. Portnoy was also an attorney in a private law firm that specialized in labor law and was a self-proclaimed expert in minimum wage and overtime issues who described FLSA as his "passion." *Id.* at 136-137. In addition, the court in

19

*Herman* found that Portnoy, despite not being involved in day to day supervision, at times

participated in hiring and recruiting security guards for the company, on occasion assigned

specific guards to specific clients, sometimes set the rates to be charged, signed paychecks,

changed the employment status of guards from independent contractor status and represented to

potential clients that he controlled the company's business. *Id.* at 137-138.

        Unlike the defendant in *Herman*, DeCillis was not an owner of the business, nor

was she a director or chairperson, nor was she a self-proclaimed FLSA expert, nor did she sign

payroll checks, nor did she ever hire or fire loan officers, nor did she make loan officer

assignments or direct their work, nor did she ever represent to others that she controlled Lend

America's Sales Department, as it is undisputed that she never did.

        Rather, DeCillis' situation at Lend America is more analogous to the case of the

individual defendant found not to be an employer under FLSA in *Wu v. Chang's Garden of*

*Storrs, LLC*, No. 3:08-CV-746 (WWE), 2010 WL 918079 (D.Conn. 2010).   *Wu* involved a

salaried restaurant hostess who was the daughter of the owner and sister of the restaurant

manager, but who herself was not an owner, and whose responsibilities included greeting and

seating customers, processing payments, taking orders, ordering supplies, making drinks, and

keeping records of the amount of money received for food and beverages each day.  In addition

to her regular duties, however, evidence was presented in *Wu* that the hostess distributed tips,

occasionally signed payroll checks as well as other checks to creditors, and regularly interacted

with and gave instruction to the wait staff, the delivery staff and the kitchen staff as to order

preparation and work assignments, and would routinely reprimand the staff if mistakes were

made and occasionally refuse to pay them as a result.  Despite this, the Court found the hostess

not to be an "employer" under FLSA. *Id.* at \*2-\*4.  In doing so, the Court in *Wu* concluded:

> " In light of Wei Wei Chang's [the hostess] <u>lack of ownership</u>
> <u>interest or position as a decision maker, and her limited</u>
> <u>supervision and instruction to the plaintiff employees</u>, the Court
> finds that Wei Wei Chang did not have a meaningful role to justify
> imposing FLSA liability upon her for the alleged violations of
> plaintiffs' rights.  Summary judgment will be granted in Wei Wei
> Chang's favor as to the FLSA claims."

*Id.*, at *6 (emphasis added).

Like the individual defendant in *Wu*, DeCillis was never an owner, investor or
director of Lend America.  However, DeCillis presents an even more compelling case for a
finding of no liability as, unlike the defendant in *Wu*, DeCillis did not ever hire, fire, promote,
discipline, schedule, supervise or manage any of the loan officers in Lend America's Sales
Department, nor did she believe that she had the power to do so; nor did she individually have
the authority or power to change compensation policies or practices with respect to loan officers
at Lend America (DeCillis Declar., ¶¶ 18-20).  Additionally, unlike the hostess in *Wu*, DeCillis
never signed paychecks (DeCillis Declar., ¶ 22; Angebrandt Declar., ¶ 6).

Accordingly, as to DeCillis, a finding of "employer" status cannot be made based
on the record before this Court; at the very least, material issues of fact remain as to her liability.

**D.      <u>Plaintiffs' Request for Liquidated Damages Raises Questions of Fact</u>**

Plaintiffs' request for liquidated damages cannot be determined on this motion as
numerous issues of material fact remain for trial as to defendants' good faith.

The award or denial of liquidated damages under FLSA is within the sound
discretion of the reviewing Court, as the Court has discretion to reduce or deny a liquidated
damages award "if the employer shows to the satisfaction of the court that the act or omission
giving rise" to the plaintiffs' action under FLSA "was in good faith and that [the employer] had
reasonable grounds for believing that [the employer's] act or omission was not a violation of the

21

[FLSA]." 19 U.S.C. § 260; *see Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). To avoid liquidated damages, an employer must show that its subjective good faith was objectively reasonable. *Reich*, 121 F.3d at 71.

Here, as confirmed in the accompanying DeCillis Declaration, prior to the time that loan officer compensation was changed in June 2008 to include payment of minimum wage and approved overtime, there was never any understanding that the prior loan officer compensation system that was in place since 2003 when DeCillis joined Lend America, and which periodically had been reviewed and vetted by outside legal counsel, might in any way violate the FLSA (*see* DeCillis Declar., ¶¶ 21-23). Likewise, after joining Lend America, DeCillis was not aware of any complaint concerning the existing compensation system prior to the time that this lawsuit was filed. Lend America routinely had its outside legal counsel, its auditors and its payroll company vet its various programs and policies, including those related to compensation (Id.). This was not a case of an unscrupulous employer attempting to take unfair advantage of undocumented or uneducated immigrant workers, as generally loan officers were eager to work on a commission basis because it gave them the opportunity to make significantly more income (and several did) than if they were paid a straight salary or minimum hourly wage (DeCillis Declar., ¶ 23).

Yet at no time prior to the commencement of this law suit in September 2007 did any of the professionals with which Lend America worked ever indicate that Lend America's compensation programs were not appropriate, as it was not uncommon in the mortgage loan industry, but rather was the routine, to pay loan salesmen on a commission basis (Id.). Indeed, several mortgage lenders throughout the country have found themselves to be the subject of unexpected similar wage and hour suits under FLSA. *See, e.g. Davis v. J. P. Morgan Chase &*

*Co.*, 587 F.3d 529 (2d Cir. 2009), *cert. denied* __ U.S. __, 130 S.Ct. 2416, 176 L.Ed.2d 925

(2010); *Searson v. Concord Mortg. Corp.*, No. 07-CV-3909 (DRH/ARL), 2009 WL 3063316

(E.D.N.Y. 2009); *Sexton v. Franklin First Financial, Ltd.*, No. 08-CV-04950 (JFB ARL), 2009

WL 1706535 (E.D.N.Y. 2009); *Underwood v. NMC Mortg. Corp.*, No. 07-2268-EFM, 2009 WL

1269465 (D.Kan. 2009); *Saunders v. Ace Mortg. Funding, Inc.*, No. CIV 05-1437 (DWF/SRN),

2007 WL 1190985 (D. Minn. 2007); *Henry v. Quicken Loans Inc.*, No. 04-CV-40346, 2009 WL

3270768 (E.D.Mich. 2009); *Gallegos v. Equity Title Co. of America, Inc.*, 484 F.Supp.2d 589

(W.D. Tex. 2007).

   When viewed objectively, Lend America's good faith belief that its wage policies

were appropriate and consistent with the industry must be deemed reasonable as it certainly was

not alone in its belief that its compensation structure was proper and not a violation of FLSA.  At

the very least, material issues of fact remain for trial on this issue.

**II.**

**SUMMARY JUDGMENT SHOULD BE GRANTED**
**IN FAVOR OF NON-MOVANT DECILLIS**
**AND THE CLAIMS ASSERTED AGAINST HER**
**DISMISSED AS A MATTER OF LAW**

   As demonstrated above, because plaintiffs have not met their burden as to

DeCillis on this motion, the motion as to DeCillis must be denied.  Moreover, under the

circumstances, the Court should grant summary judgment in favor of DeCillis dismissing the

claims that have been asserted against her, as a matter of law.  "[D]istrict courts are widely

acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the

losing party was on notice that [they] had to come forward with all of [their] evidence." *Celotex*

*Corp. v. Catrett,* 477 U.S.317, 326, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986).  A District Court's

independent raising and granting of summary judgment in favor of the nonmoving party is " 'an

accepted method of expediting litigation'." *Ramsey v. Coughlin,* 94 F.3d 71, 74 (2d Cir. 1996),

*citing Coach Leatherware Co. Inc.  v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991).  This is

especially the case where, as here, plaintiffs have completed their discovery and thus "the party

against whom summary judgment is rendered has had a full and fair opportunity to meet the

proposition that there is no genuine issue of material fact to be tried." *Ramsey,* 94 F.3d at 73-74.

Under such circumstances, a court need not give notice of its intention to enter summary

judgment against the moving party. *Coach,* 933 F.2d at 167.

　　　　Here, Plaintiffs have completed their discovery yet are unable to proffer any

competent evidence to support their claims of liability against DeCillis. That DeCillis had very

little, if any regular contact with and certainly no operational control over plaintiffs is born out

and confirmed by the discovery that has been taken in this case (*see,* DeCillis Declar., ¶¶ 16-17).

Under such circumstances, summary judgment may be granted in favor of DeCillis, the non-

moving party, and the claims alleged against her dismissed as a matter of law. *Ramsey,* 94 F.3d

at 74.

## CONCLUSION

　　　　For the reasons set forth above, and in the accompanying declarations of Helene

DeCillis and Elizabeth Angebrandt, plaintiffs' motion for partial summary judgment should be

denied as to DeCillis, as the economic reality of the circumstances at bar do not establish

employer liability against DeCillis.  If summary judgment should be granted to anyone, it should

be in favor of DeCillis and the claims alleged against her dismissed as a matter of law.  Plaintiffs

have concluded their discovery, yet are unable to present any competent proof to support their

claims against DeCillis.   At the very least, material questions of fact remain for trial as to

DeCillis' potential liability and whether liquidated damages are appropriate in this case.

Dated:      New York, York, New York
               July 28, 2010


**KRAVET & VOGEL, LLP**


By:   /s/ Joseph A. Vogel_____
        Joseph A. Vogel (JV-5533)
1040 Avenue of the Americas, Suite 1101
New York, New York 10018-3703
Tel. 212-997-7634
*Attorneys for Defendant Helene DeCillis*


TO:

Erik H. Langeland
Erik H. Langeland, P.C.
500 Fifth Avenue, Suite 1610
New York, New York 10110
Tel.: 212-354-6270
Fax: 212-898-9086
elangeland@langelandlaw.com
*Attorneys for Plaintiffs*

James B. Zouras
Stephan Zouras, LLP
205 North Michigan Avenue, Suite 2560
Chicago, IL 60601
Tel.: 312-233-1550
Fax: 312-233-1560
jzouras@stephanzouras.com
*Attorneys for Plaintiffs*

Jeffrey H. Weinberger, Esq.
Law Offices of Jeffrey H. Weinberger
475 Park Avenue South, 33rd Floor
New York, New York 10016
Tel. 212-686-0900
jhwlegal@gmail.com
*Attorney for Defendant Timothy Mayette*

Philip R. Schatz., Esq.
Wrobel & Schatz, LLP
1040 Avenue of the Americas, 11th Floor
New York, New York 10018
Tel. 212-421-8131
Fax: 212-421-8170
Schatz@wandslaw.com
*Attorney for Defendant Michael Ashley*

CERTIFICATION OF SERVICE

      I, Joseph A. Vogel, certify that I am over eighteen (18) years of age, am not a party to this action, am an attorney in good standing licensed by the State Bar of New York and admitted to practice in this Court, and that on July 28, 2010, I caused a true and correct copy of the annexed Memorandum of Law on Behalf of Defendant Helene DeCillis In Opposition to Plaintiffs' Motion for Summary Judgment, to be served by email and/or Federal Express next day delivery to counsel for the parties herein, as follows:

> Erik H. Langeland, P.C.  (via email and FedEx)
> 500 Fifth Avenue, Suite 1610
> New York, New York 10110
> Tel. 212-354-6270
> Fax: 212-898-9086
> elangeland@langelandlaw.com
> *Attorney for Plaintiffs*
>
> James B. Zouras (via email and FedEx)
> Ryan F. Stephan
> Stephen Zouras, LLP
> 205 North Michigan Avenue, Suite 2560
> Chicago, IL 60601
> Tel.: 312-233-1550
> Fax:  312-233-1560
> jzouras@stephanzouras.com
> *Attorneys for Plaintiffs*
>
> Jeffrey H. Weinberger (via email and mail)
> Law Offices of Jeffrey H. Weinberger
> 475 Park Avenue South, 33rd Floor
> New York, New York 10016
> Tel.  212-686-0900
> jhwlegal@gmail.com
> *Attorney for Defendant Timothy Mayette*
>
> Philip R. Schatz (via email and by hand)
> Wrobel & Schatz, LLP
> 1040 Avenue of the Americas, 11th Floor
> New York, New York 10018
> Tel. 212-421-8131
> Fax:  212-421-8170
> Schatz@wandslaw.com
> *Attorney for Defendant Michael Ashley*

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and

correct.

Dated:  New York, New York
     July 28, 2010

             /s/ Joseph A. Vogel
             Joseph A. Vogel (JV-5533)