UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

BIENVENIDO FRANCO, Individually and on
Behalf of All Others Similarly Situated,

                        07-cv-3956 (JS)(AKT)

                  Plaintiffs,

         -against-

IDEAL MORTGAGE BANKERS, LTD.
D/B/A LEND AMERICA,

                  Defendants.
-------------------------------------------------------------x

WILLIAM FRASER and BRIAN McCABE,
Individually, and on Behalf of All Others
Similarly Situated,

                  Plaintiffs,
         -against-

IDEAL MORTGAGE BANKERS, LTD. D/B/A
LEND AMERICA, INC., MICHAEL ASHLEY,
TIMOTHY MAYETTE, HELENE DECILLIS,
and MICHAEL PRIMEAU,

                  Defendants.

-------------------------------------------------------------x

**MEMORANDUM OF LAW OF MICHAEL ASHLEY
IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

WROBEL & SCHATZ LLP
1040 Avenue of the Americas, Suite 1101
New York, NY 10018-3703
Tel. (212) 421-8100

# Table of Contents

Table of Authorities…………………………………………………………..        iv

Preliminary Statement…………………………………………………………...        1

Summary of Facts………………………………………………………………......        2

Discussion……………………………………………………………………………        5

   A. Summary judgment is warranted only if plaintiffs establish that there exists no
      genuine dispute as to any material fact……………………………………………        5

      1. Mr. Ashley's assertion of the Fifth Amendment for reasons unrelated to the
         FLSA does not relieve plaintiffs of their burden of proof…………………...        6

      2. Determination of employer liability under the FLSA is rarely permissible
         on summary judgment……………………………………………………………        7

      3. To establish individual FLSA liability, plaintiffs must prove direct operat-
         ional control over wage and hour policies……………………………………..        8

   B. Plaintiffs have failed to establish Mr. Ashley's liability as a matter of law.
      Mr. Ashley did not have an ownership interest in Lend America, did not
      Directly supervise plaintiffs, and did not establish wage and hour practices.
      He was the motivational leader of the sales team, not the administrative
      Leader……………………………………………………………………………        10

   C. Defendants are entitled to complete their discovery before determination of
      the motion………………………………………………………………………        13

   D. Plaintiffs have not established that they are entitled to liquidated damages,
      because defendants acted with subjective good faith and had objective
      and reasonable grounds to believe that their commission structure
      did not violate the law…………………………………………………………        14

E.  Plaintiffs have not established that any FLSA violation was willful, because defendants relied upon advice of counsel and because the entire mortgage industry followed the same course as defendants.............................................   16

F.  Plaintiffs are not entitled to an interim award of attorney's fees if their motion for partial summary judgment as to liability is granted, because the statutory authorization for attorney's fees requires a final judgment..............   17

Conclusion...............................................................................................   19

## Table of Authorities

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-160 (1970) .............................................. 5

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008)
.................................................................................................................................. *passim*

*AlyeskaPipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975) ...................... 18

*Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004)...................... 6

*Ayres v. 127 Restaurant Corp.,* 12 F. Supp. 2d 305 (S.D.N.Y.1998)............................... 17

*Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132 (2d Cir. 2008)...... 8

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)..................................................................... 7

*Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668 (1st Cir. 1998)............... 9,10

*Bronx Household of Faith v. Board of Educ. of City of New York*, 492 F.3d 89 (2d Cir.
2007) ............................................................................................................................ 5

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009)..................................... 8

*Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991) ................................... 12

*Dole v. Simpson*, 784 F. Supp. 538 (S.D. Ind. 1991)................................................... 9,11

*Donovan v. Agnew,* 712 F.2d 1509 (1st Cir. 1983) ...............................................8, 11

*Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984) ............................................. 12

*Donovan v. Sabine Irrigation Co., Inc.*, 695 F. 2d 190, 195 (5th Cir. 1983)................... 11

*Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991)............ 8,15

*Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 163 (4th Cir. 1992)............... 17

*Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000)....................... 13

*Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132 (2d Cir. 1999)............................ 8,12,15

*Howard v. Port Auth. of New York,* 2010 WL 521148 (S.D.N.Y. Feb. 16, 2010) .......... 16

*In re Edmund*, 934 F.2d 1304 (4th Cir. 1991) .............................................................. 6

*Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276 (E.D.N.Y. 2007)................... 17

*Lefkowitz v. Cunningham*, 431 U.S. 801 (1977) ............................................................ 7

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)............................................... 16

*Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) .................................................... 17

*Nu-Chem Laboratories, Inc. v. Dynamic Laboratories, Inc.*, No. 96-CV-5886 (JS), 2001
WL 35981560 (E.D.N.Y. 2001)................................................................................... 7

*Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986) ........................................................... 9,13

*San Antonio Metropolitan Transit Authority v. McLaughlin*, 876 F.2d 441 (5th Cir. 1989)
.................................................................................................................................. 18

*Saunders v. Ace Mortg, Funding, Inc.*, No. 05-1437 (DWF/SRN), 2007 WL 4165294 (D.
Minn. November 16, 2007)....................................................................................... 12

*Schering Corp. v. Home Ins. Co.*, 712 F.2d 4 (2d Cir. 1983) ......................................... 13

*Sexton v. Franklin First Financial, Ltd.*, No. 08-CV-04950 (JFB), 2009 WL 1706535
(E.D.N.Y. 2009)......................................................................................................... 14

*Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 WL 3153150 (W.D.N.Y Sept. 30, 2009)... 8,9

*U.S. Dept. of Labor v. Cole Enterprises, Inc.,* 62 F.3d 775 (6th Cir. 1995)..............8,12

*U.S. S.E.C. v. Universal Exp., Inc.,* 475 F. Supp.2d 412 (S.D.N.Y. 2007) (Lynch, J.) ...... 7

*U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960) ............................ 17

*Wirtz v. Pure Ice Co.*, 322 F.2d 259 (8th Cir. 1963)................................................... 9,11

*Wu v. Chang's Garden of Storrs, LLC*, No. 3:08-cv-746 (WWE), 2010 WL 918079 (D. Conn. March 11, 2010) ........................................................................................ 8

*Young v. Cooper Cameron Corp.,* 586 F.3d 201 (2d Cir. 2009) ..................................... 16

**Statutes**

29 U.S.C. § 216(b) ...................................................................................................... 14,18

29 U.S.C. § 260 .................................................................................................................. 16

**Rules**

Fed. R. Civ. P. 56(c)(2) ...................................................................................................... 4

Fed. R. Civ. P. 56(d)(2) .................................................................................................... 18

**Treatises**

10A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2726 ........................................... 6

10A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2727 ........................................... 5

10A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2728 ........................................... 5

10B Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2736 ......................................... 18

10B Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2739 ........................................... 6

Wrobel & Schatz LLP
1040 Avenue of the Americas, Suite 1101
New York, NY 10018
Tel.:    (212) 421-8100

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

BIENVENIDO FRANCO, Individually and on
Behalf of All Others Similarly Situated,

                            Plaintiffs,

              -against-

IDEAL MORTGAGE BANKERS, LTD.
D/B/A LEND AMERICA,

                          Defendants.
-------------------------------------------------------------x

WILLIAM FRASER and BRIAN McCABE,
Individually, and on Behalf of All Others
Similarly Situated,
                          Plaintiffs,
              -against-

IDEAL MORTGAGE BANKERS, LTD. D/B/A
LEND AMERICA, INC., MICHAEL ASHLEY,
TIMOTHY MAYETTE, HELENE DECILLIS,
and MICHAEL PRIMEAU,

                          Defendants.

-------------------------------------------------------------x

07-cv-3956 (JS)(AKT)

MEMORANDUM OF LAW OF
MICHAEL ASHLEY IN
OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT

**Preliminary Statement**

     Defendant Michael Ashley, by undersigned counsel, respectfully submits this

memorandum of law in opposition to plaintiff's motion for partial summary judgment.

As to Mr. Ashley, this case presents the following question: Does a vice president in charge of strategic vision – essentially, motivating sales people and developing business ideas – qualify as an "employer" under Fair Labor Standards Act ("FLSA") – which requires operational control over the specific acts which caused the FLSA violation – when he held no ownership interest; was not involved in the day-to-day minutiae of running the business; did not sign paychecks; did not decide overtime or minimum wage policies; did not supervise individual employees or the human resources and payroll departments; was away from the company for multiple weeks at a time, throughout the year, pursuing and promoting a racing car business, and was at all times subject to the authority of the company's owners, who fired him for part of the time period in issue?

### Summary of Facts

During the time period in issue in this case, Lend America was a licensed mortgage banker and broker specializing in conventional, FHA, and Alt-A residential mortgages. Declaration of Denise Tyler dated June 12, 2008 ("Tyler Dec."; Docket No. 47-7) ¶ 3.

Initially, most of Lend America's sales department consisted of outside loan officers. Declaration of Helene DeCillis dated July 27, 2010 ("DeCillis Dec.") at ¶ 18. Outside loan officers, as the name implies, worked away from Lend America's offices, generated their own leads, and determined their own schedule. Declaration of Carl Dalencourt dated June 13, 2008 ("Dalencourt Dec."; Docket No. 47-3) ¶¶ 5, 7; Declaration of Jeffrey Blank dated June 13, 2008 ("Blank Dec."; Docket No. 47-4) ¶¶ 3, 5, 7; *see also* Declaration of Heidi Frigano dated June 12, 2008 ("Frigano Dec."; Docket

No. 47-6) at ¶¶ 5-6; Declaration of Brian Fried dated June 13, 2008 ("Fried Dec.";

Docket No. 47-5) at ¶¶ 5-6. Inside loan officers worked on premises, making calls to and

receiving calls from potential customers from telemarketing leads, collected and analyzed

financial information, worked with clients to identify appropriate mortgage products, and

assisted in preparing applications once the appropriate mortgage product was identified.

Dalencourt Dec. ¶¶ 3-4.

As the business developed, Lend America's inside sales force grew substantially;

by 2008, Lend America employed approximately 180 loan officers in the Melville, New

York office alone. Tyler Dec. ¶ 3. At its zenith, Lend America employed around 300 loan

officers nationwide, DeCillis Dec. ¶ 12, approximately 28 of whom were outside loan

officers. Defendant Ideal Mortgage Bankers Ltd. d/b/a Lend America's Responses to

Plaintiff Bienvenido Franco's Second Set of Interrogatories, verified March 17, 2009

("Lend America Interrog. Resp.") p. 6-7.

All loan officer compensation, whether for inside or outside loan officers, was

reviewed and approved by outside legal counsel and outside auditors, and was found to

be consistent with prevailing practices in the mortgage industry. DeCillis Dec. ¶¶ 18, 22.

Lend America compensated loan officers through a variety of ways: Some were paid

salaries or draws; some were paid pure commissions; and some were paid minimum

wages. DeCillis Dec. ¶ 18; Tyler Dec. ¶¶ 4, 6, 7. At all times pertinent to this action, the

prevailing practice in the mortgage industry was to compensate mortgage loan officers by

commissions only. DeCillis Dec. ¶ 23. At no time did any of Lend America's outside

professionals warn Lend America's management that its compensation policies violated

any applicable law. DeCillis Dec. ¶ 22. In June 2008, after this lawsuit was filed, on

advice of counsel, Lend America changed its loan officer compensation to require payment of minimum wages and overtime. DeCillis Dec. ¶ 19; Angebrandt Dec. ¶8.

The only persons who could individually control the operations of Lend America were its owners, defendant Michael Primeau and Joseph Forgione. DeCillis Dec. ¶ 11. Mr. Primeau was a founder, Chief Executive Officer, President, and sole Director of Lend America. DeCillis Dec. ¶ 11. Mr. Primeau signed all company paychecks, DeCillis Dec. ¶ 28; Angebrandt Dec. ¶ 6, and was in charge of the sales force.  Deposition of Bienvenido Franco dated May 31, 2010 ("Franco Dep.") at 190:3-19. Forgione was the other founder, and was the sole capital investor of Lend America. DeCillis Dec. ¶ 11; *see also* Franco Dep. 94:3-9 (Mr. Forgione was a "big honcho" and owner).

At the time it ceased operations in December 2009, Lend America had over 600 employees, including approximately 300 inside and outside loan officers. DeCillis Dec. ¶ 12; Angebrandt Dec. ¶ 6, Lend America had a separate Human Resources Department, run by Denise Tyler, that handled all hiring, firing, and employee compensation issues. DeCillis Dec. ¶ 12; Angebrandt Dec. ¶ 6. Lend America had a separate Payroll and Accounting Department, run by Lend America's Chief Financial Officer (defendant Timothy Mayette through June 2005, and consultant Aaron Bhatia thereafter), that handled all payroll issues, including compensation disputes. DeCillis Dec. ¶ 12; Angebrandt Dec. ¶ 6.

Defendant Michael Ashley was not an owner or director of Lend America. DeCillis Dec. ¶ 8. Consistent with his title of Chief Business Strategist, his duties were to motivate the sales force and generate ideas for marketing and growth of the company. DeCillis Dec.  ¶ 9. He was not involved in the day-to-day minutiae of running the Sales

Department. DeCillis Dec. ¶ 8. He did not sign paychecks, he did not decide overtime or minimum wage policies, and the human resources and payroll departments did not regularly report to him. DeCillis Dec. ¶ 8. Indeed, he was away from Lend America for multiple weeks at a time, throughout the year, pursuing and promoting his racing car business (sponsored in part by Lend America) as part of Lend America's advertising program. DeCillis Dec. ¶ 8; *see also* Franco Dep. 82:14-83:2 (Mr. Ashley was gone from the premises for extended periods doing auto racing). And, he was at all times subject to the authority of Lend America's owners, Mr. Primeau and Mr. Forgione, who fired him for several months in 2005. DeCillis Dec. ¶ 8.

## Discussion

**A. *Summary judgment is warranted only if plaintiffs establish that there exists no genuine dispute as to any material fact.***

Summary judgment is appropriate only if the evidentiary facts submitted by plaintiffs demonstrate, by a preponderance of the evidence, that "there is no genuine issue as to any material fact and that [plaintiffs are] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Bronx Household of Faith v. Board of Educ. of City of New York*, 492 F.3d 89, 96 (2d Cir. 2007); *see also* 10A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2728 (3d ed.). The burden does not shift to defendants to present countervailing evidence under Rule 56(e) unless plaintiffs' proofs meet this standard. 10A Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2727; 10B Fed. Prac. & Proc. Civ. § 2739. Unless plaintiffs meet this burden, summary judgment should be denied, even if no opposing evidentiary matter is presented. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-160 (1970) (quoting Advisory Committee Note to 1963 Amendment to subdivision

(e) of Rule 56 ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented")).

Even if plaintiffs meet their initial burden, the Court has discretion to deny summary judgment if resolution of a factual issue requires evaluation of witness credibility or demeanor, Advisory Committee Note to 1963 Amendment; *see also* 10B Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2739 n.25 and accompanying text and 10A Fed. Prac. & Proc. Civ. § 2726 nn. 2-3 and accompanying text; where a party is unable to present countervailing evidence without discovery, 10B Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2739 nn. 26-27 and accompanying text; where "movant's evidence, although admissible and relevant, is too scanty to justify rendering judgment in the movant's favor in a complicated factual situation," *Id*. at n.30 and accompanying text; and where motive, intent, or subjective feelings are in issue. *Id*. at n.31 and accompanying text.

In determining whether there exists a material question of fact, evidence is not weighed or evaluated, but is viewed "in the light most favorable to the party opposing summary judgment," drawing "all reasonable inferences in favor" of that party, and "eschew[ing] credibility assessments." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal citations omitted).

### 1. Mr. Ashley's assertion of the Fifth Amendment for reasons unrelated to the FLSA does not relieve plaintiffs of their burden of proof.

In his deposition, Mr. Ashley asserted his Fifth Amendment privilege against self incrimination at the advice his attorney in matters unrelated to this FLSA action, for

reasons unrelated to this FLSA action. This assertion, of course, prevents Mr. Ashley from submitting any affidavit in opposition to plaintiffs' motion, *e.g., In re Edmund*, 934 F.2d 1304, 1308 (4th Cir. 1991), and also permits – but does not require – an adverse inference against Mr. Ashley, where such an inference is warranted. *Baxter v. Palmigiano*, 425 U.S. 308, 335 (1976).

It does not, however, relieve plaintiffs of their burden of proof. "A defendant's silence is 'only one of a number of factors to be considered by the finder of fact in assessing a penalty, and [is to be] given no more probative value than the facts of the case warrant [ ].'" *Nu-Chem Laboratories, Inc. v. Dynamic Laboratories, Inc.*, No. 96-CV-5886 (JS), 2001 WL 35981560 *19 (E.D.N.Y. 2001) (quoting *Lefkowitz v. Cunningham,* 431 U.S. 801, 808 fn. 5 (1977)). An adverse inference "is not *required* ....., even at trial" and "what inferences the factfinder may ultimately draw is a question of fact for trial." *U.S. S.E.C.  v. Universal Exp., Inc.,* 475 F. Supp.2d 412, 439 n. 20 (S.D.N.Y. 2007) (Lynch, J.) (emphasis in original).

### 2. Determination of employer liability under the FLSA is rarely permissible on summary judgment.

The principal issue before the Court in plaintiffs' motion for partial summary judgment is whether the individual defendants – Mr. Primeau (who has defaulted), Mr. Ashley, and Ms. DeCillis[1] – are "employers" under the FLSA and, therefore, personally

---

[1] Plaintiffs have not sought summary judgment as to defendant Timothy Mayette, but have made his deposition testimony the prime evidence in support of their motion against the other defendants. Defendants did not subject Mr. Mayette to any rigorous cross-examination at his deposition because he was, at the time, part of the group of defendants subject to a joint defense agreement and because it was assumed that most of his testimony was incompetent due to his having left Lend America in 2005. It now appears that Mr. Mayette was intentionally shielding his boss, Joseph Forgione, and that he has

liable for Lend America's asserted failure to pay overtime and minimum wage to plaintiffs. Although employer status is ultimately a question of law for the Court, its determination involves a "fact specific inquiry" and "it is rare that an employer determination can be made on summary judgment." *Wu v. Chang's Garden of Storrs, LLC*, No. 3:08-cv-746 (WWE), 2010 WL 918079 *3 (D. Conn. March 11, 2010) (citing *Barfield v. New York City Health and Hospitals. Corp.,* 537 F.3d 132, 144 (2d Cir. 2008)).[2]

### 3. To establish individual FLSA liability, plaintiffs must prove direct operational control over wage and hour policies.

To establish personal liability against the individual defendants, officers who are non-owners (only Mr. Primeau, the chief executive officer, held an ownership interest in the company), plaintiffs must establish that the individuals qualify as "employers" under the FSLA under a totality of the circumstances using the "economic realities test.*" See, e.g. Herman v. RSR Sec. Services Ltd*., 172 F.3d 132, 139 (2d Cir. 1999).

Generally, to be personally liable, officers must have exercised direct operational control over the employees, "such as personally supervising the employee's work,

some sort of agreement with plaintiffs, whether or not that agreement has been reduced to writing.

[2] So, for example, the district court's determination in the leading Second Circuit case, *Herman v. RSR Services, Ltd*., 172 F.3d 132 (2d Cir. 1999), that the Chairman of the Board and 50% owner, who controlled all aspects of operation including employment, was subject to employer liability under FLSA, was made only after a bench trial. *See also Donovan v. Agnew,* 712 F.2d 1509 (1st Cir. 1983)  (determination made on cross motions for summary judgment, but only after evidentiary hearing); *U.S. Dept. of Labor v. Cole Enterprises, Inc*., 62 F.3d 775 (6th Cir. 1995)  (bench trial); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991)  (jury trial); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008) (jury trial); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009) (cross motions for summary judgment).

including determining the employee's day-to-day work schedule or tasks, signing the employee's paycheck or directly hiring the employee." *Tracy  v. NVR, Inc.*, No. 04-cv-6541L, 2009 WL 3153150 at \*4 (W.D.N.Y Sept. 30, 2009) (citing cases). "At bottom, [the] economic reality analysis focuse[s] on the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits." *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998).

The theoretical ability to exercise such control is not sufficient; to be personally liable the proof must establish that the defendant actually exercised such control. *Tracy* at 2009 WL 3153150 \*5. "[U]nexercised authority is insufficient to establish liability as an employer." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008); *see also Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) (finding that, although corporation's president "might have played a greater role" he was not personally liable because he "did not have operational control of significant aspects of [the corporation's] day-to-day functions, including compensation of employees or other matters 'in relation to employee.'"); *Wirtz v. Pure Ice Co*., 322 F.2d 259, 262 (8th Cir. 1963) (finding that corporation's president was not an "employer" under FLSA where he "had nothing to do with the hiring of the employees or fixing their wages or hours," and the fact that he had the authority to do so is "beside the point as long as he did not do so."). "The fact that high-level officers and board members may know [of potential FLSA violations] does not lead to the logical inference that they had operational control over that group of employees." *Tracy,*  2009 WL 3153150 \*6. The fundamental question in

FLSA cases is whether the individual defendant "had control over the alleged violation of the Act." *Dole v. Simpson*, 784 F. Supp. 538, 545 (S. D. Ind. 1991).

**B.** ***Plaintiffs have failed to establish Mr. Ashley's liability as a matter of law. Mr. Ashley did not have an ownership interest in Lend America, did not directly supervise plaintiffs, and did not establish wage and hour practices. He was the motivational leader of the sales team, not the administrative leader.***

Plaintiffs contend that Ashley "was the 'boss', the main decision-maker and the one with primary operational and financial control over the company." Plaintiffs' Brief at 4, citing Plaintiffs' Rule 56.1 Statement ¶¶ 14-41 & 53. Plaintiffs further contend that all employees "took direction from Ashley" and that he "was the final authority at Lend America and functioned as the CEO." Plaintiffs' Brief at 5, citing Plaintiffs' Rule 56.1 Statement ¶¶ 14-18. A closer examination of these unparticularized blanket statements, however, reveals that they are not supportable. The only source for any of the assertions is Timothy Mayette, who left Lend America in 2005 and who sought during his deposition to divert blame from himself and from his boss, owner Joseph Forgione.[3] Moreover, substantial contrary evidence appears in the record: As indicated above, Mr. Ashley did not have an ownership interest in Lend America, was not a director of Lend

---

[3] Even plaintiffs' own interrogatory responses are not determinative. Although a few of the responses claim that Mr. Ashley had the power to hire and fire or directly assigned work, most of them do not. All of them contend that Mr. Ashley's primary role was to discuss the direction of the company and "administer motivational speeches" at sales meetings. Lead plaintiff Mr. Franco testified that he did not know if Mr. Ashley had the power to hire or fire. Franco Dep. 278:15-280:3. Mr. Franco also testified that his only interaction with Mr. Ashley was in "impromptu meetings" (Franco Dep. 52:5-10) where Mr. Ashley gave advice on salesmanship (*Id.* at 44:3-18) and admonished the sales force to work hard (*Id.* at 278:15-280:3). Mr. Franco says he never spoke to Mr. Ashley outside these impromptu meetings (*Id.*).

America, did not control or direct Lend America's wage policies, and did not directly supervise plaintiffs. To the extent that plaintiffs argue otherwise, they are mistaken, and their proofs are incompetent or self-interested. The plain fact is that Michael Ashley did not cause Lend America "to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits," *Baystate Alternative Staffing, Inc.*, 163 F.3d at 678 , as required to establish "employer" liability under FLSA. Ashley's sphere of influence was motivational and promotional; he motivated the work force and generated new business ideas, and he was the public face of Lend America in interviews, infomercials, and as part of his sponsored racing team. He did not set schedules, and he did not determine the payment policies of which plaintiffs complain. In short, he did not "have significant control over the employment relationship" such that his decisions "determine[d] whether a violation occur[ed]." *Dole v. Simpson*, 784 F. Supp. 538, 544 (S.D. Ind. 1991). In other words, he did not have "control over the alleged violation of the Act." *Id.* at 545.

Mr. Ashley's lack of any ownership interest in the company is significant. Although an ownership interest is not an absolute requirement for an officer to be an "employer" under FLSA, *Dole*, 784 F. Supp. at 545; *see also Donovan v. Sabine Irrigation Co., Inc.*, 695 F. 2d 190, 195 (5th Cir. 1983), an ownership interest is a significant factor because it helps establish the officer's "involve[ment] in the day-to-day operation" of the company or the officer's "direct responsibility for the supervision of the employee" and the employee's compensation, which are required for liability. *See, e.g., Alvarez Perez*, 515 F.3d at 1160. A principal case relied upon by plaintiffs, *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983) (Plaintiffs' Brief at 14), affirmed under the abuse-

of-discretion standard the finding of the district court (made only after a *full evidentiary hearing* on cross-motions for summary judgment) that a corporate officer with operational control of day-to-day functions, including compensation, was an employer, but noted "[o]ur holding is narrow" and possible because the corporate officer defendant had "a significant ownership interest" with "operational control of significant aspects of the corporation's day to day functions" who "personally made decisions" that directly caused the FLSA violation. 712 F.2d at 1514.[4]

Plaintiffs seek to argue that Mr. Ashley "effectively dominated" Lend America, but that assertion is plainly false. First, the owners of Lend America, Mr. Primeau and Mr. Forgione, actually fired Mr. Ashley from the company for a period of time in 2005. DeCillis Dec. ¶ 8. Second, only Mr. Primeau and Mr. Forgione had the authority to make decisions on behalf of the company. DeCillis Dec. ¶ 11. Third, the compensation and scheduling of the affected loan officers was directed, not by Mr. Ashley, but by the human resources and payroll departments at Lend America, which reported to Mr. Primeau and Mr. Forgione. DeCillis Dec. ¶ 12; Angebrandt Dec. ¶ 6. The human

---

[4] The cases imposing FLSA liability on officers generally involve both a significant ownership interest and a degree of operational control that is lacking here. *See, e.g., Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983) (defendants had "significant ownership interest" and made wage determinations); *Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984) (defendant was majority shareholder who "held [corporations'] purse strings and guided their policies"); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (defendant was majority owner who "controlled the purse strings"); *U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775 (1995) (defendant was president and 50% owner and determined employment practices); *Herman*, 172 F.3d 132 (defendant was chairman of the board and 50% owner, had special FLSA expertise, and controlled the company financially); *Saunders v. Ace Mortg. Funding, Inc.*, No. 05-1437 (DWF/SRN), 2007 WL 4165294 (D. Minn. November 16, 2007) (defendants, originally 100% owners, each had a 20% interest and personally made "final decisions" regarding compensation).

resources and accounting departments did not regularly report to him. DeCillis Dec. ¶ 8. Fourth, Mr. Ashley was not involved in the day-to-day minutiae of running the company or its sales department; he was primarily the "big-picture idea man" responsible for motivation and business development. DeCillis Dec. ¶¶ 8-9. And he did not have direct responsibility for supervising any of the employees of the sales department. *Id.* Thus, like the defendant in *Patel*, 803 F.3d 632, Mr. Ashley is not a FLSA employer because he was not either involved in the day-to-day operation of the company and did not have direct responsibility for supervision of the plaintiff employees.

**C.** ***Defendants are entitled to complete their discovery before determination of the motion.***

A motion for "summary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information." *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir. 1983); *see also Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000)(nonmoving party must be afforded the opportunity to discover information that is essential to his opposition to the motion). Rule 56(f) provides that "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition" the Court may deny the motion or permit the requested additional discovery. An affidavit submitted in bad faith or solely for delay could result in sanctions. Rule 56(g).

Here, although the case against Lend America has been proceeding for some time, the case against the individual defendants, and the specter of personal liability for corporate obligations in the millions of dollars, is of only recent vintage. The individual

defendants were not required to answer in this case until December 2009,[5] as Lend America was imploding, and did not receive copies of the substantial discovery exchanged prior the their joinder until January 5, 2010. *See* Affirmation of Philip R. Schatz dated July 28, 2010 ("Schatz Aff.") at ¶ 7.

In the limited period of time available, consistent with their limited resources, defendants have diligently sought discovery that is not yet complete due to circumstances beyond their control. Plaintiffs have not yet completed responding to defendants' interrogatories, served February 18, 2010, Schatz Aff. ¶ 8, and depositions that have been noticed have been adjourned, at the request of the deponents, and are still being rescheduled. Schatz Aff. ¶¶ 10, 11.  Under these circumstances, denial of summary judgment is appropriate pursuant to 56(f).  *See, e.g. Sexton v. Franklin First Financial, Ltd.*, No. 08-CV-04950 (JFB), 2009 WL 1706535 *15-*16 (E.D.N.Y. 2009) (denying motion for partial summary judgment where no discovery had been conducted on the issues and nonmoving party had been unable to depose movants' representatives who submitted affidavits in support of their motion).

**D.** *Plaintiffs have not established that they are entitled to liquidated damages, because defendants acted with subjective good faith and had objective and reasonable grounds to believe their commission structure did not violate the law.*

---

[5] Plaintiffs were granted leave to add the individual defendants by the September 28, 2009 Order of the Honorable A. Kathleen Tomlinson [Docket No. 128] affirmed November 3, 2009 [Docket No. 149], and defendants did not interpose answers to the amended complaint until December 2009 [Docket Nos. 153, 156, and 160].

Plaintiffs seek a determination that they are entitled to liquidated damages pursuant to 29 U.S.C. § 216(b).[6] Whether liquidated damages are appropriate is a mixed question of law and fact for the court. *Alvarez Perez*, 515 F.3d at 1163; *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1566-67 (11th Cir. 1991).[7] Liquidated damages are the norm unless the defendant establishes that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260. "Good faith" is therefore measured both subjectively and objectively. *Id.*; *see also Alvarez Perez*, 515 F.3d at 1163; *Herman*, 172 F.3d at 142; *Dybach*, 942 F.2d at 1566-67.

---

[6] 29 U.S.C. § 216(b) provides, in pertinent part, that:

> (b) Damages; right of action; attorney's fees and costs; termination of right of action
>
> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in *an additional equal amount as liquidated damages*. … The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action….

(emphasis added).

[7] There is potential for conflicting rulings on the related questions of good faith for liquidated damages purposes, which is decided by the Court, and willfulness for statute-of-limitations purposes, which is a question of fact for the jury. *See Alvarez Perez* at 1162-63. The Eleventh Circuit has attempted to avoid such conflicting rulings by requiring the Court to accept the jury determination of "willfulness" as conclusive in determining "good faith." *Alvarez Perez*, 515 F.3d at 1166 ("We conclude … that in an FLSA case a jury's finding in deciding the limitations period question that the employer acted willfully precludes the court from finding that the employer acted in good faith when it decides the liquidated damages question"). This salutary rule would suggest that the Court should defer any finding concerning liquidated damages until the jury has ruled on willfulness.

A subjectively honest intention to ascertain what the law requires and act in accordance with the law presents a fact question for the jury, if that subjective intention is objectively reasonable. *Dybach*, 942 F.2d at 1567 n.6.

Here, competent admissible evidence establishes that Lend America had subjective and objective good faith to believe that its compensation practices did not violate the law. First, Lend America's compensation practices were consistent with the preferences of its loan officer employees, who preferred to be paid by commissions because of the increased potential for higher earnings. DeCillis Dec. ¶¶ 21, 23. Second, Lend America's compensation practices were consistent with prevailing industry practices. DeCillis Dec. ¶¶ 18, 22. Finally, Lend America's compensation practices were regularly reviewed and approved by outside attorneys and auditors, who never alerted Lend America that the practices violated any applicable law, including FLSA. DeCillis Dec. ¶ 22.

**E.  *Plaintiffs have not established that any FLSA violation was "willful," because defendants relied upon advice of counsel and because the entire mortgage industry followed the same course as defendants.***

Plaintiffs seek a determination that defendants' asserted failure to comply with FLSA was "willful," thereby adding a year to the two-year statute of limitations pursuant to 29 U.S.C. § 255(a).[8] Plaintiffs' Brief at 23-24. Plaintiffs bear the burden of demonstrating by a preponderance of the evidence that the employer "either knew that its

---

[8] 29 U.S.C. § 255(a) provides, in pertinent part, that FLSA claims "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez*, 515 F.3d at 1162-63 (citing *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988)); *Howard v. Port Auth. of New York,* 2010 WL 521148 at *5 (S.D.N.Y. Feb. 16, 2010); *Young v. Cooper Cameron Corp.,* 586 F.3d 201, 207 (2d Cir. 2009). Mere negligence is insufficient. *Young,* 586 F.3d at 207. If an employer acts reasonably in determining its legal obligation, its actions cannot be deemed willful. *Id.; see also McLaughlin,* 486 U.S. at 135 n. 13.[9] An honest mistake of law, after diligent inquiry, is a valid defense to a finding of willfulness. *E.g., U.S. v. Klinghoffer Bros. Realty Corp*., 285 F.2d 487, 492 (2d Cir. 1960).

The determination of willfulness is for the jury. *Alvarez Perez*, 515 F.3d at 1163 (citing *Fowler v. Land Management. Groupe, Inc*., 978 F.2d 158, 163 (4th Cir. 1992); *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276 (E.D.N.Y. 2007).

Here, again, competent admissible evidence establishes that any violation of FLSA by Lend America was not willful but was, instead, the product of an honest mistake of law. First, Lend America's compensation practices were consistent with the preferences of its loan officer employees, who preferred to be paid by commissions because of the increased potential for higher earnings. DeCillis Dec. ¶¶ 21, 23. Second, Lend America's compensation practices were consistent with prevailing industry practices. DeCillis Dec. ¶¶ 18, 22. Finally, Lend America's compensation practices were

---

[9] The standard under New York's Labor Law is essentially identical. *Moon v. Kwon,* 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002). Under the Labor Law, "an employer acts 'willfully' if it 'knowingly, deliberately, or voluntarily disregards its obligation to pay wages.' " *Id.* (quoting *Ayres v. 127 Restaurant Corp.,* 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998)).

regularly reviewed and approved by outside attorneys and auditors, who never alerted

Lend America that the practices violated any applicable law, including FLSA. DeCillis

Dec. ¶ 22. Certainly, plaintiffs have not established, and will not be able to establish, that

any violation of FLSA by Lend America was reckless.


**F.** ***Plaintiffs are not entitled to an interim award of attorney's fees if their motion as to liability is granted, because the statutory authorization for the award of attorney's fees requires a final judgment.***

Plaintiffs request an interim award of attorney's fees pursuant to 29 U.S.C.

§ 216(b). Plaintiffs' Brief at 24. That statute, however, authorizes attorney's fees awards

only upon final judgment.[10] A partial summary judgment as to liability only is an

interlocutory order. Fed. R. Civ. P. 56(d)(2); *see also* Advisory Committee Note to 1946

Amendment Subdivision (c) of Rule 56 ("If the case is not fully adjudicated it may be

dealt with as provided in subdivision (d) of Rule 56, and the right to summary recovery

determined by a preliminary order, interlocutory in character, and the precise amount of

recovery left for trial"). "Thus, there is no final judgment to be entered and no appeal lies

from a Rule 56 decision establishing or refusing to establish the liability of the

---

[10] 29 U.S.C. § 216(b) provides, in pertinent part, that:

> (b) Damages; right of action; attorney's fees and costs; termination of right of action
>
> … The court in such action shall, *in addition to any judgment awarded* to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action….

(emphasis added).

nonmoving party." 10B Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2736 (3d ed.).

A litigant generally may not recover attorney's fees except pursuant to a specific

statutory authorization. *E.g., San Antonio Metropolitan Transit Authority v. McLaughlin*,

876 F.2d 441, 446 (5th Cir. 1989) (citing *Alyeska Pipeline Service Co. v. Wilderness

Society*, 421 U.S. 240, 257 (1975)). Accordingly, plaintiffs would not be entitled to an

award of attorney's fees until final judgment.

**Conclusion**

Defendant Michael Ashley was not an owner or director of Lend America; he was not involved in the day-to-day minutiae of running the Sales Department; he did not sign paychecks; he did not decide overtime or minimum wage policies; and the human resources and payroll departments did not regularly report to him. He was away from Lend America for multiple weeks at a time, throughout the year, pursuing and promoting his racing car business (sponsored in part by Lend America) as part of Lend America's advertising program. And, he was at all times subject to the authority of Lend America's owners, Mr. Primeau and Mr. Forgione, who fired him for part of time period in issue. Accordingly, Mr. Ashley is not a statutory "employee" under FLSA, and plaintiffs' poorly-supported motion for summary judgment should be denied.

Dated:  New York, New York
　　　　July 28, 2010

　　　　　　　　　　　WROBEL & SCHATZ LLP


　　　　　　　　　　　By: _____/s_____
　　　　　　　　　　　　　Philip R. Schatz (PS 6158)
　　　　　　　　　　　1040 Avenue of the Americas, Suite 1101
　　　　　　　　　　　New York, NY 10018-3703
　　　　　　　　　　　Tel.: (212) 421-8100 x 313
　　　　　　　　　　　*Attorneys for Michael Ashley*

CC Via ECF:

　　　　Erik H. Langeland, Esq.
　　　　Erik H. Langeland, PC
　　　　500 Fifth Avenue, Suite 1610
　　　　New York, NY 10110
　　　　Tel.:   (212) 354-6270
　　　　*Attorneys for Plaintiffs*

Joseph A. Vogel, Esq.
Kravet & Vogel, LLP
1040 Avenue of the Americas, 11th Fl.
New York, NY 10018
Tel.:    (212) 997-7634
*Attorneys for Helene DeCillis*

Jeffrey H. Weinberger, Esq.
Law Offices of Jeffrey H. Weinberger
475 Park Avenue South, 33rd Floor
New York, NY 10016
Tel.:    (212) 686-0900
*Attorneys for Timothy Mayette*

CC By US Mail:

Michael Primeau (*Pro Se*)
P.O. Box 740
Lynbrook, NY 11563

Ideal Mortgage Bankers, Ltd. (*Pro Se*)
c/o Helene DeCillis (Chief Operating Officer)
6 Norris Lane
East Setauket, NY 11733