IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BIENVENIDO FRANCO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>IDEAL MORTGAGE BANKERS, LTD. d/b/a LEND AMERICA, INC., MICHAEL ASHLEY, TIMOTHY MAYETTE, HELENE DECILLIS, MICHAEL PRIMEAU,<br><br>Defendants. | Civ. No.: 07 CV 3956<br>(JS/AKT) |

# PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
## FOR PARTIAL SUMMARY JUDGEMENT

Erik H. Langeland
Erik H. Langeland, P.C.
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 354-6270
elangeland@langelandlaw.com

James B. Zouras
Ryan F. Stephan
(Admitted Pro Hac Vice)
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
(312) 233-1550

Attorneys for Plaintiffs

## TABLE OF CONTENTS

                                                                                                                                                                   <u>Page</u>

**ISSUES PRESENTED**……………………………………………………………………..…1

**I.**      Lend America and Michael Primeau have not opposed plaintiffs' motion. Therefore, the facts establishing summary judgment against them are undisputed…………….1

**II.**     Defendants have not disputed the overwhelming evidence proving that no exemptions from the FLSA's minimum wage and overtime requirements apply to this case. ..….2

**III.**     Defendants' Opposition Rests on an Incorrect Legal Standard……………………2

         **A.**   The Facts Establishing Michael Ashley's Operational Control Over Lend America Are Undisputed…………………………………………………………………..3

         **B.**   Helene DeCillis indisputably controlled day-to-day operations and was intimately involved in establishing Defendants' illegal compensation policies……………5

**IV.**    Defendants have failed to meet their burden of proving the good faith and reasonableness of their conduct in implementing their compensation policy………..6

**CONCLUSION** …..……………….…………………………………..………………….....8

**ISSUES PRESENTED**

Because Lend America and Michael Primeau do not oppose Plaintiffs' motion for summary judgment and because Michael Ashley and Helene DeCillis concede that no exemptions under the FLSA apply to plaintiffs, the present motion boils down to two issues:

**Ashley's Individual Liability.** The FLSA imposes personal liability for wage violations on executives with operational control over a corporation. Defendant Ashley controlled Lend America's sales force, was the de facto boss, had the power to hire and fire plaintiffs, made critical decisions affecting plaintiffs' compensation—including the decision to reclassify them as non-exempt from overtime –and personally signed checks from Lend America's payroll accounts. Is Ashley personally liable for Lend America's violations of the FLSA?

**DeCillis' Individual Liability.** Regardless of the extent of his or her control, a corporate executive cannot escape individual liability if he or she participated in the conduct that led to the FLSA violation. Here, Chief Operating Officer DeCillis controlled plaintiffs' compensation by determining their commissions and made the decision, with other executives, to reclassify plaintiffs as non-exempt from overtime nine months after this case was filed. Is DeCillis personally liable for Lend America's violations of the FLSA?

# I. Lend America and Michael Primeau have not opposed plaintiffs' motion. Therefore, the facts establishing summary judgment against them are undisputed.

Under Rule 56, if a non-moving party fails to oppose a summary judgment motion, then "summary judgment should, if appropriate, be entered against that party." Fed.R.Civ.P. 56(e)(2). Provided the evidence submitted meets the movant's threshold burden of production, the Court should grant the motion. *Washington v. City of New York,* 2009 WL 1585947, at *16 (S.D.N.Y. June 5, 2009). Both Lend America and Primeau failed to respond to plaintiffs' motion. Based on the extensive evidence submitted in support of Plaintiffs' moving papers, there is no question summary judgment against Lend America and Primeau is warranted.

**II. Defendants have not disputed the overwhelming evidence proving that no exemptions from the FLSA's minimum wage and overtime requirements apply to this case.**

None of the Defendants have offered any facts, argument, or even a scintilla of evidence suggesting any exemption relieved them from their obligation to pay their loan officers minimum wage and overtime. Accordingly, Plaintiffs' evidence is undisputed. Defendants, in essence, concede that hundreds of their former loan officers were systematically deprived of earned minimum and overtime wages as a matter of law. Especially given that the employer has the burden to establish the applicability of any exemption under the FLSA, Defendants' failure to make any effort to do so entitles Plaintiffs to judgment as a matter of law. *E.g., Coke v. Long Island Care At Home, Ltd.,* 376 F.3d 118, 123 (2nd Cir. 2004); *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960) ("these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.").

**III. Defendants' Opposition Rests on an Incorrect Legal Standard**

The only contested issue in this case is whether Ashley and DeCillis, two of the three highest-ranking corporate officers of Lend America, are individually responsible for these prolific wage violations as a matter of law. Hoping to create a genuine issue of material fact over whether these individuals exercised operational control over Lend America, Defendants minimize their authority and attempt to shift blame to a co-founder, their subordinates, their counsel, and the victims of their unlawful pay practices—the loan officers themselves. But Ashley and DeCillis erroneously claim that individual liability under the FLSA turns on whether they hold a formal ownership interest in the corporation, have a title such as "director" or, directly supervise or interact with the affected employees. In actuality, none of these factors

determine whether someone is an "employer" under the broad FLSA definition. As the Second Circuit held in the seminal case of *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999), the individual need only possess "the *power* to control the workers in question." (emphasis added). The pivotal question is whether the individual has "operational control" over the business. *Ansoumana v. Gristede's Operating Corp.,* 255 F.Supp.2d 184, 192 (S.D.N.Y. 2003). Such operational control, however, need not be "absolute." *Herman,* 172 F.3d at 139 ("[c]ontrol may be restricted, or exercised only occasionally" and "does not require continuous monitoring of employees, looking over their shoulders at all times"). Thus, the determination of individual liability under the FLSA essentially boils down to three key factors:

>  (1) Did the individual exercise control over the company's operations?
> 
>  (2) Did the individual have control over conduct that led to the alleged violation?
> 
>  (3) Did the individual exercise financial control over the company?

In the case of Ashley's and DeCillis' relationships with Lend America, the answer to all three questions is "Yes." The undisputed facts reveal they not only had authority over significant aspects of Lend America's business, pay policies and employees, but also admittedly exercised their authority specifically with respect to loan officer compensation. Ashley and DeCillis have failed to identify any facts which could suggest they are not "employers" under the FLSA. Having benefitted from Lend America's illegal pay practices for many years, they should be held accountable along with Lend America and Primeau for their violations.

### A. The Facts Establishing Michael Ashley's Operational Control Over Lend America Are Undisputed

Executive Vice-President and Chief Business Strategist Ashley attempts to recast his autocratic role at Lend America as something akin to a motivational speaker or "visionary." But even if this Court chooses not to apply an adverse inference in light of Ashley's invocation of his

3

Fifth Amendment rights, the undisputed facts as revealed largely from his fellow executive officers DeCillis and Timothy Mayette demonstrate he directly controlled almost all aspects of Lend America's operations, especially its loan officers. Ashley, who was the highest paid employee of Lend America (Plaintiffs' Rule 56.1 Statement, hereinafter "PR 56" at ¶15), does not dispute the following facts:

1. Ashley personally and directly controlled Lend America's loan officers. He hired them, fired them, disciplined them, trained them, supervised them, and conducted meetings with them. (PR 56 at ¶¶19, 20, 22, 23 & 28).

2. Ashley personally and directly determined wage and hour policy for Lend America's loan officers. He implemented policies and practices on loan officer hours worked, job duties and pay plans, including the reclassification of loan officers as non-exempt in 2008. (PR 56 at ¶¶26, 33, 34, 35, 36 & 38).

3. The Human Resources and Payroll departments at Lend America reported directly to Ashley. (PR 56 at ¶40).

4. Ashley had a personal financial stake in Lend America. He personally signed on checks drawn from Lend America's bank and payroll accounts, entered into loan agreements and other contracts on behalf of Lend America, and personally guaranteed loans taken by Lend America. (PR 56 at ¶¶30, 31 & 32).

Thus, Ashley's undisputed managerial, policymaking and financial authority at Lend America was more significant than in cases where courts have found individual liability under the FLSA, including those cited in Plaintiffs' opening memorandum. (D.E. 206 at 14-20). Ashley ran the company, implemented Lend America's compensation plans, and mandated the unpaid overtime hours at issue in this litigation. As such, Ashley was "acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Because there are no genuine issues of material fact as to whether Ashley is individually liable as an employer under the FLSA, Plaintiffs are entitled to summary judgment in their favor.

**B. Helene DeCillis indisputably controlled day-to-day operations and was intimately involved in establishing Defendants' illegal compensation policies.**

Chief Operating Officer DeCillis claims she merely ran the "back office" at Lend America and compares her authority to that of a restaurant hostess (DeCillis Opp. at 20). But her own testimony plainly dispels any notion that her responsibilities were confined to inconsequential matters.[1] While Ashley was the de facto head of Lend America, DeCillis' undisputed authority over key aspects of Lend America's operations leaves no doubt she exercised more than sufficient functional control to qualify as an employer. DeCillis does not dispute the following facts:

1. Lend America identified DeCillis as the person most knowledgeable under Rule 30(b)(6) about Lend America's decision to classify loan officers as exempt from the FLSA. (PR 56 at ¶43).

2. DeCillis personally and directly determined wage and hour policy for Lend America's loan officers. She, along with a handful of other executives reclassified the loan officers as non-exempt changed their pay plan so that they would begin receiving minimum wage in 2008. (PR 56 at ¶50).

3. DeCillis selected Lend America's payroll company. (PR 56 at ¶52).

4. DeCillis hired, fired and disciplined Lend America's employees. (PR 56 at ¶¶44 & 45).

5. DeCillis had a personal financial stake in Lend America. She personally signed on checks drawn from Lend America's bank and payroll accounts, entered into loan agreements and other contracts on behalf of Lend America, and personally guaranteed loans taken by Lend America. (PR 56 at ¶¶46, 47 & 48).

Thus, far from being a passive observer, DeCillis was an active and willing participant in

---

[1] To the extent DeCillis' declaration is inconsistent with her prior deposition testimony, it is well-settled that this Court cannot consider it. *Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985). Likewise, virtually every pertinent sentence of the declaration of Elizabeth Angerbrandt begins with the qualifier "it is my understanding" or "I am informed and believe." As such, her testimony is clearly speculative, inadmissible and cannot be considered. *Jain v. Securities Industry and Financial Markets Ass'n,* 2009 WL 4059171, at *2 (S.D.N.Y. Nov. 18, 2009).

5

Lend America's day-to-day business operations, going so far as to personally guarantee loans necessary for the company's survival. (PR 56 at ¶¶31, 48 &65). She concededly had daily interaction with her direct reports, was accessible to loan officers, routinely communicated with loan officers about Lend America's policies and practices and determined their commission payments. (PR 56 at ¶¶49, 51).

But despite DeCillis' undisputed supervisory and financial control over Lend America, she is also individually liable because she was intimately involved in perpetrating the violations of the FLSA alleged in this case. *Chao v. Hotel Oasis, Inc.*, 2007 WL 1843089 at *19-20 (1st Cir. 2007); *Freeman v. Foley*, 911 F.Supp. 326, 331 (N.D.Ill. 1995). DeCillis admits that she determined the commission payments paid to loan officers—payments which contained no compensation for overtime. DeCillis was one of the few Lend America executives under which the original commission-only pay policy was implemented and one that later made the decision to reclassify loan officers as non-exempt nine months after this lawsuit had been filed. Tellingly, Lend America designated DeCillis as the person most knowledgeable on the decision to classify loan officers as exempt—the very decision that deprived them of proper pay. No genuine issues of material fact exist as to DeCillis' involvement in the illegal conduct alleged in this case. Plaintiffs are, therefore, entitled to summary judgment as to her liability.

**IV. Defendants have failed to meet their burden of proving the good faith and reasonableness of their conduct in implementing their compensation policy.**

The undisputed facts demonstrate Plaintiffs are entitled to liquidated damages as a matter of law. At least until June 2008, Ashley and DeCillis simply assumed their commission-only pay plan was legally compliant and did not seek advice from the Department of Labor ("DOL"), legal counsel with expertise in the wage and hour laws, or any other qualified

6

professional regarding how to structure the plan under federal law. Under this plan, loan officers unlawfully and indisputably went several weeks or more without receiving any compensation whatsoever.

"The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one…. *Herman,* 172 F.3d at 142. A guaranteed salary of at least $455 a week is required to qualify for most of the exemptions under the FLSA. 29 C.F.R. §541.600. Yet there is no evidence Defendants even considered compensating Plaintiffs in accordance with any exemption. Defendants, moreover, failed to implement a pay system arguable meeting the requirements of any exemption until long after Lend America was sued in this case. Despite Ashley's and DeCillis' *post hoc* assertions that they did not set out to violate the law, such subjective manifestations of intent are insufficient to avoid liquidated damages. *E.g., Reeves v. Int'l Tel. & Tel. Co.*, 616 F.2d 1342, 1352-53 (5th Cir. 1980) ("It is not enough, for instance, to plead and prove ignorance of the wage requirements."). Courts, moreover, have consistently rejected reliance on "industry practices" to avoid liability under the FLSA. *See Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 910 (3d Cir.1991) ("employer's adherence to customary and widespread industry practices that violate the Act's overtime pay provisions is not evidence of an objectively reasonable good faith violation"); *Wajcman v. Investment Corp. of Palm Beach*, 620 F.Supp.2d 1353, 1361 (S.D.Fla. 2009) ("this Court does not believe that an employer can rely primarily on the practices of others in its industry to demonstrate a reasonable belief that certain conduct conforms with the FLSA"); *Paulitz v. City of Naperville,* 874 F.Supp. 833, 835 (N.D.Ill.1994) ("Failure to take affirmative action to ascertain the Act's requirements precludes a finding of reasonable good faith, even

where the defendant's practices conform to industry customs … .").

Equally without merit is Defendants' baseless opinion that the loan officers desired a compensation scheme which was legally noncompliant. The fact that hundreds of loan officers have affirmatively chosen to join this action defies any notion that they were satisfied with the manner in which they were paid. Perhaps more importantly, employees are legally incapable of waiving their rights to the minimum wage and overtime protections of the FLSA as a matter of law. *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 740 (1981). Accordingly, this Court should find Defendants liable for liquidated damages.

## CONCLUSION

This Court should grant partial summary judgment against defendants because:

1. Neither Lend America nor Michael Primeau has not opposed Plaintiffs' motion;

2. Defendants have not contested Plaintiffs' evidence showing that no exemptions from the FLSA's minimum wage or overtime requirements apply;

3. Michael Ashley controlled day-to-day operations of Lend America's sales force, implemented—along with Helene DeCillis—the illegal pay plan at issue, and subsequently reclassified plaintiffs as non-exempt from overtime after plaintiffs sued;

4. Helene DeCillis controlled day-to-day operations of Lend America, including setting the commissions received by Plaintiffs, implementing the illegal pay plan at issue in conjunction with Ashley, and could sign payroll checks and loans on behalf of the company;

5. Defendants willfully violated the FLSA by failing to investigate whether their commission-only pay plan was legal; and

6. The FLSA requires an award of attorneys' fees and costs if Plaintiffs prevail on their claims.

August 18, 2010  Respectfully submitted,

/s/ Erik H. Langeland
Erik H. Langeland
ERIK H. LANGELAND, P.C.
500 Fifth Avenue, Suite 1610
New York, NY 10110
Phone: (212) 354-6270

8

Fax: (212) 898-9086
elangeland@langelandlaw.com

James B. Zouras
Ryan F. Stephan
(Admitted Pro Hac Vice)
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
(312) 233-1550
(312) 233-1560 (Fax)