```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
BIENVENIDO FRANCO, WILLIAM FRASER, and
BRIAN McCABE, individually and on behalf
of all others similarly situated,

                        Plaintiffs,
                                              MEMORANDUM & ORDER
         -against-                            07-CV-3956(JS)(AKT)

IDEAL MORTGAGE BANKERS, LTD., d/b/a
Lend America, Inc., HELENE DeCILLIS,
MICHAEL PRIMEAU, and MICHAEL ASHLEY,

                        Defendants.
----------------------------------------X
```
APPEARANCES
For Plaintiffs:     Erik Harald Langeland, Esq.
                    Erik H. Langeland, P.C.
                    500 Fifth Avenue, Suite 1610
                    New York, NY 10110

                    James B. Zouras, Esq.
                    Ryan F. Stephan, Esq.
                    Stephan Zouras, LLP
                    205 N. Michigan Avenue, Suite 2560
                    Chicago, IL 60601

For Defendants
Ideal Mortgage:     No appearance

Helene DeCillis:    Helene DeCillis, pro se
                    6 Norris Lane
                    East Setauket, NY 11733

Michael Primeau:    No appearance

Michael Ashley:     Robert H. Weiss, Esq.
                    Law Offices of Robert Weiss
                    26 Stonywell Court
                    Huntington Station, NY 11746

SEYBERT, District Judge:

On September 21, 2007, Plaintiff Bienvenido Franco commenced this action, individually and on behalf of all others similarly situated ("Plaintiffs"), alleging that Ideal Mortgage Bankers, Ltd., d/b/a Lend America ("Lend America") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201, et. seq., by failing to pay its loan officers minimum wages and overtime. (Compl., Docket Entry 1, ¶¶ 1 & 4.) On October 1, 2009, Plaintiffs amended their Complaint to name as defendants four Lend America officers: Michael Ashley, Timothy Mayette,[1] Helene DeCillis, and Michael Primeau ("Individual Defendants," and together with Lend America, "Defendants"). (Sec. Am. Compl., Docket Entry 129, ¶¶ 8-11.) Plaintiffs argue that each of the Individual Defendants had sufficient control over Lend America and its employment practices to render them individually liable under the FLSA. Franco v. Ideal Mortg. Bankers, Ltd., No. 07-CV-3956, 2011 WL 317971, at *1 (E.D.N.Y. Jan. 28, 2011). All Defendants filed Answers,[2] but as discussed below, the matter is stayed as to Lend America. (Docket

---

[1] All claims against Defendant Mayette were dismissed with prejudice on August 5, 2011. (Dismissal Order, Docket Entry 228.)

[2] On December 1, 2009, Defendant Primeau filed his Answer through counsel. (Primeau's Answer, Docket Entry 153.) On March 9, 2010, Magistrate Judge A. Kathleen Tomlinson granted Primeau's attorney's motion to withdraw (Withdrawal Order, Docket Entry 189.) Primeau has not participated in this litigation since that time.

2

Entries 134, 153, 155-156, 160; R&R, Docket Entry 227, at 2-3.) This matter is scheduled for trial on November 27, 2017.

Presently pending before the Court is Ashley's motion to (1) stay the action and remove it from the trial calendar and (2) disqualify Plaintiffs' counsel, or alternatively, hold a hearing regarding whether disqualification is appropriate. (Def.'s Mot., Docket Entry 323, at 1.) For the following reasons, Ashley's motion is DENIED in its entirety.

BACKGROUND

I. Lend America's Automatic Stay

In her July 29, 2011 Report and Recommendation, Magistrate Judge A. Kathleen Tomlinson observed that "an involuntary petition pursuant to 11 U.S.C. § 303 was filed against [Lend America] on November 30, 2010 in the United States Bankruptcy Court for the Eastern District of New York." (R&R at 2-3.) Judge Tomlinson explained that pursuant to 11 U.S.C. § 362, the bankruptcy petition operates as an automatic stay with respect to actions against Lend America (the "Automatic Stay"). Thus, Judge Tomlinson recommended that this Court deny Plaintiffs' motion for default judgment against Lend America. On September 14, 2011, this Court adopted Judge Tomlinson's Report and Recommendation. (Mem. & Order, Docket Entry 237, at 1.) While the Automatic Stay

is in place, Plaintiffs are unable to proceed against Lend America.[3] (R&R at 3.)

II. Communications Regarding Ashley's Criminal Case

On August 11, 2011, in United States v. Ashley, Docket No. 11-CR-0516, Ashley pled guilty to an Information charging him with bank fraud under 18 U.S.C. §§ 1334 and 2. While Ashley was awaiting sentencing,[4] Erik Langeland, who together with James Zouras and Ryan Stephan represents Plaintiffs, exchanged emails with U.S. Probation Officer Steven S. Guttman. (Pls.' Opp. Ex. A, Docket Entry 324-1.) Langeland and Guttman discussed whether any Plaintiffs were interested in providing information about their losses in this matter, which Guttman stated would be helpful to the court in sentencing Ashley. (Pls.' Opp. Ex. A.) Thereafter, Plaintiffs' counsel emailed Plaintiffs to notify them of the plea and inform them that, if they wished, they could provide information relevant to Ashley's sentencing to the sentencing court. (Def.'s Mot. at 5-6.)

---

3 Lend America's bankruptcy proceeding remains pending. It is listed as the debtor in a Chapter 7 proceeding pending before Judge Louis A. Scarcella, Docket No. 10-79280.

4 Ashley's sentencing is currently scheduled for December 1, 2017.

DISCUSSION

I. Ashley's Motion for a Stay

The Court construes Ashley's motion as a request to extend the Automatic Stay as to the claims against Lend America to the Individual Defendants, which would effectively stay the entire case. (See Def.'s Mot. at 2.) Ashley reasons that he is a "related part[y]" to Lend America and that "[a] decision against him whereby he is found to owe a certain amount of money may have a Res Judicata effect on the Bankruptcy Trustee who is tasked with determining the value of the claims of class members on whose behalf [Plaintiffs' counsel] filed claims in the Bankruptcy Court." (Def.'s Reply, Docket Entry 326, at 1.) Plaintiffs counter that there is no basis to stay Plaintiffs' action against the Individual Defendants because none of them have filed for bankruptcy. (Pls.' Opp., Docket Entry 324, at 2-3.)

A bankruptcy petition filed under 11 U.S.C. § 303 automatically stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding <u>against the debtor</u> that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1) (emphasis added). Generally, "the Automatic Stay applies only to the debtor and does not stay proceedings brought against non-bankrupt co-defendants." <u>Millard v. Developmental Disabilities Inst., Inc.</u>, 266 B.R. 42, 44 (E.D.N.Y. 2001). While an automatic

stay can be extended to non-debtor co-defendants, it "normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir. 2003). "[E]xtensions of the Automatic Stay are the exception rather than the rule and are not favored absent some usual circumstance." Millard, 266 B.R. at 45 (citing CAE Indus. Ltd. v. Aerospace Holdings Co., 116 B.R. 31, 32 (S.D.N.Y. 1990)).

A court should not extend the automatic stay where the non-debtor is "independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of duty." In re FPSDA I, LLC, No. 10-75439, 2012 WL 6681794, at *8 (Bankr. E.D.N.Y. Dec. 21, 2012), as corrected (Dec. 26, 2012) (quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999-1000 (4th Cir. 1986)). Specifically, "[c]ourts have declined to extend a bankruptcy stay to co-defendants in . . . joint employment[] situations" in FLSA cases. Diaz v. Scores Holding Co., No. 07-CV-8718, 2008 WL 7863502, at *3 (S.D.N.Y. May 9, 2008) (citing Millard, 266 B.R. at 43-45); see Hernandez v. Immortal Rise, Inc., No. 11-CV-4360, 2014 WL 991715, at *4-5 (E.D.N.Y. Mar. 13, 2014) (declining to extend automatic stay to non-debtor defendants in FLSA case).

The Court concludes that the Automatic Stay should not extend to the Individual Defendants. Ashley has not alleged that

6

a judgment against him or the other Individual Defendants would have an immediate adverse economic impact on the debtor's estate. Instead, he claims that a decision against him could have a "Res Judicata effect on [Lend America's] bankruptcy trustee." (Def.'s Reply at 1.) However, the Court is not convinced that this argument requires a deviation from the general rule that automatic stays will not extend to non-debtors. In fact, the Second Circuit rejected a similar argument, writing that it had not "located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision." Queenie, 321 F.3d at 288.

Ashley also argues that he is a "related part[y]" to Lend America such that extension of the Automatic Stay is warranted. (Def.'s Reply at 1.) However, whether the parties are "related" is not controlling, particularly in a "joint employment" case under the FLSA. See Diaz, 2008 WL 7863502, at *3. Plaintiffs allege that each Defendant was an "employer" that violated the FLSA. (Sec. Am. Compl. ¶¶ 1, 8-11.) Moreover, this Court held on summary judgment that "Mr. Ashley functioned as an FLSA 'employer' during the period of Mr. Mayette's employment." Franco, 2011 WL 317971, at *9. Thus, he faces--and the other Individual Defendants potentially face--individual liability under the FLSA, id. at *5-11, and extending the Automatic Stay in these circumstances would

7

be inappropriate. See Cano v. DPNY, Inc., 287 F.R.D. 251, 262 (S.D.N.Y. 2012) ("Here, the plaintiffs allege that the Proposed Defendants are joint employers and, therefore, are jointly and severally liable to the plaintiffs for violations of the FLSA and NYLL. Accordingly, the automatic stay in the bankruptcy case would not extend to the Proposed Defendants . . . ."); see also Hernandez, 2014 WL 991715, at *4-5 (denying request to extend automatic stay to non-debtors in FLSA case); Millard, 266 B.R. at 44-45 (same).

Moreover, the cases cited by Ashley are inapposite. (See Def.'s Reply at 1-2.) In A.H. Robins Co. v. Piccinin, the Fourth Circuit affirmed the extension of a stay to non-debtors in the "unusual situation" where "a judgment against the third-party defendant will in effect be a judgment or finding against the debtor" by virtue of the debtor's indemnity obligations toward and insurance policy covering the non-debtors. 788 F.2d 994, 999, 1008 (4th Cir. 1986). Similarly, in Robert Plan Corp. v. Liberty Mutual Insurance Co., this Court affirmed a bankruptcy court order extending a stay to the debtors' officers. No. 09-CV-1930, 2010 WL 1193151, at *3-4 (E.D.N.Y. Mar. 23, 2010). However, in that case, because of indemnification obligations under applicable law and under a debtor's by-laws, it was highly likely that the contempt suit against the officers would have resulted in a claim--an "immediate adverse impact"--against the debtors' estate. Id.

at *3-4. Unlike in Robert Plan Corp., Ashley has not argued that Lend America must indemnify him or the Individual Defendants.

Ashley also cites In re Adler, a veil-piercing case where the court extended an automatic stay to the non-debtor alter egos of the debtor. 494 B.R. 43, 53, 56-58 (Bankr. E.D.N.Y. 2013), appeal denied, judgment aff'd sub nom. Ng v. Adler, 518 B.R. 228 (E.D.N.Y. 2014). Ashley has not alleged that Lend America was his alter ego. In fact, Ashley referred to himself as merely "a sales coach and a cheerleader" for Lend America. (Def.'s Mot. at 2.) Nor does In re Bailey Ridge Partners, LLC bring Ashley within the stay's reach. There, the automatic stay applied to non-debtors who guaranteed the debtor's debt because, among other things, not halting the litigation would have posed "a strong likelihood of imminent and irreparable harm to the estate" and the debtor's reorganization efforts. In re Bailey Ridge Partners, LLC, 571 B.R. 430, 439 (Bankr. N.D. Iowa 2017). Additionally, the Bailey court found that the stay extended to a third party who took out a loan solely for the debtor's benefit and in reliance on the debtor's promise to repay the loan because "it [was] almost certain that 'a judgment against the third-party defendant [would have been] in effect . . . a judgment or finding against the debtor.'" Id. at 440 (quoting In re Panther Mountain Land Dev., LLC, 686 F.3d 916, 923 (8th Cir. 2012)) (first and third alteration in original). Ashley has not alleged such facts here.

9

Accordingly, Ashley's motion to stay this proceeding is DENIED.[5]

## II. Ashley's Motion to Disqualify Counsel

Ashley argues that Plaintiffs' counsel should be disqualified for emailing Plaintiffs to notify them of Ashley's plea and to invite them to provide information to the sentencing court. (Def.'s Mot. at 3, 5-8.) Alternatively, Ashley requests that this Court schedule a hearing to determine whether disqualification is warranted. (Def.'s Reply at 4.) Ashley submits that the email was sent in violation of New York's Rules

---

[5] Ashley also moves for a stay based upon Plaintiffs' alleged failure to request seized Lend America corporate and financial records from the bankruptcy trustee or the federal government. (Def.'s Mot. at 2-3.) A court "'may decide in its discretion to stay civil proceedings pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" United States v. Town of Oyster Bay, 66 F. Supp. 3d 285, 289 (E.D.N.Y. 2014) (quoting Laumann v. Nat'l Hockey League, No. 12-CV-1817, 2013 WL 837640, at *2 (S.D.N.Y. Mar. 6, 2013)). The party moving for the stay bears the burden of establishing "'a clear case of hardship or inequity in being required to go forward.'" Id. (quoting Trikona Advisors Ltd. v. Kai-Lin Chuang, No. 12-CV-3886, 2013 WL 1182960, at *2 (E.D.N.Y. Mar. 20, 2013)). Courts in this Circuit usually apply the following factors when deciding a motion to stay in a civil proceeding: "'(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'" Id. (quoting Trikona Advisors Ltd., 2013 WL 1182960, at *2). After weighing these factors, the Court finds that Plaintiffs' purported failure to seek certain seized documents does not justify staying the case against the Individual Defendants.

of Professional Conduct, Rule 3.4(e), which provides that "[a] lawyer shall not: . . . present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." Ashley avers that Langeland should be disqualified for sending the email, as "writing an email to hundreds of class members and encouraging them to opine on sentencing in case [sic] that is irrelevant to the facts before this court on the Civil matter falls squarely within this prohibition." (Def.'s Mot. at 7.) Ashley maintains that Zouras should be disqualified because he knew or should have known of Langeland's alleged ethical violation and "was likely" obligated to report it to the state bar association. (Def.'s Mot. at 8.)

Plaintiffs' counsel argue that they emailed their clients after the Government "advised [them] that their clients could be considered victims of Ashley's criminal conduct, that information about their losses 'would be helpful to . . . the sentencing court in the matter,' and that they had a right to submit information to the Court." (Pls.' Opp. at 4 (second alteration in original).) Further, Plaintiffs' counsel argue that the email did not result in any improper advantage to Plaintiffs in this matter. (Pls.' Opp. at 4.)

"Whether or not disqualification is warranted is subject to the Court's discretion." Spagnuoli v. Louie's Seafood Rest., LLC, 20 F. Supp. 3d 348, 355 (E.D.N.Y. 2014) (citing Cresswell v.

11

Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990)). Because of the "immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons . . . [and] inevitably cause delay," a party seeking to disqualify counsel faces a high burden of proof. Id. (quoting Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)) (alterations in original). "Accordingly, '[u]nder the restrained approach adopted by the Second Circuit, relief will be granted only when the facts concerning the lawyer's conduct poses a significant risk of trial taint,' particularly when the 'attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . , thus giving his present client an unfair advantage.'" Id. (quoting Mitchell v. Metro. Life Ins. Co., No. 01-CV-2112, 2002 WL 441194, at *4 (S.D.N.Y. Mar. 21, 2002)) (alterations in original).

Generally, an attorney could be disqualified on three grounds: "'(1) where an attorney's conflict of interests undermines the court's confidence in the vigor of the attorney's representation of his client[;] (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation thus giving his present client an unfair advantage[;] . . . [or (3)] where an attorney is in a position to use confidential information obtained from a

potential client.'" Id. (quoting Miness v. Ahuja, 762 F. Supp. 2d 465, 478-79 (E.D.N.Y. 2010)) (alterations in original).

Ashley has not met this high burden. He alleges that Plaintiffs' counsel behaved unethically "to illegally and improperly influence the present matter before this court." (Def.'s Mot. at 6.) However, he does not plausibly assert that the invitation for Plaintiffs to provide information relevant to Ashley's sentencing could taint the underlying civil trial, which is the crux of a motion to disqualify. Xiao Hong Liu v. VMC East Coast, LLC, No. 16-CV-5184, 2017 WL 4564744, at *3 (E.D.N.Y. Oct. 11, 2017) ("[T]he '[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted.'" (quoting Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010))) (second alteration in original). Further, Ashley does not articulate any conflicts of interest that undermine the Court's confidence in Plaintiffs' representation or allege that Plaintiffs' counsel could use privileged or confidential information against Ashley or the other Defendants to gain an unfair advantage. See Spagnuoli, 20 F. Supp. 3d at 355.

Finally, the Court finds Ashley's analogy to Meachum v. Outdoor World Corp. unpersuasive. 171 Misc. 2d 354 (N.Y. Sup. Ct. 1996). There, the Queens County Supreme Court disqualified class

counsel where there was a "potential conflict of interest which emanates from the employment relationship between plaintiffs and counsel [and] . . . a degree of control and dependence which poses a further conflict," as well as "unethical conduct by counsel[] in surreptitiously tape-recording the telephone conversation with defendants' supervisory employee, at a time when counsel knew or should have known that the corporation was represented by or acting through its attorneys."  Id. at 373-75.  Ashley does not allege that Plaintiffs' counsel are conflicted in a similar manner.[6]

Therefore, Ashley's request for Plaintiffs' counsel to be disqualified, or in the alternative, for this Court to hold a hearing on the matter, is DENIED.

## CONCLUSION

For the foregoing reasons, Ashley's motion to (1) stay this matter and remove it from the trial calendar and (2) disqualify Plaintiffs' counsel, or in the alternative, for a hearing on disqualification, is DENIED.  Counsel are directed to appear at the pre-trial conference as scheduled.

---

[6] Moreover, Ashley ignores key distinctions between this case and Meachum, including the problematic relationship between class counsel and plaintiffs that the Meachum court relied on in reaching its decision.

The Clerk of Court is directed to mail a copy of this Order to the pro se Defendants.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: November  9 , 2017
       Central Islip, New York