**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **BIENVENIDO FRANCO, Individually and on Behalf of All Others Similarly Situated,** | ) | |
| **Plaintiffs,** | ) | **Civ. No.: 07 CV 3956 (JS/AKT)** |
| **v.** | ) | |
| **IDEAL MORTGAGE BANKERS, LTD. d/b/a LEND AMERICA, INC., MICHAEL ASHLEY, TIMOTHY MAYETTE, HELENE DECILLIS, MICHAEL PRIMEAU,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' PRETRIAL MEMORANDUM OF FACTS AND LAW**

This case is about Defendants' failure to pay Plaintiffs minimum wage and overtime compensation due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. The Plaintiffs in this collective action are former loan officers employed by Ideal Mortgage Bankers, Ltd., d/b/a, Lend America, Inc. ("Lend America") and the individual Defendants. The remaining Defendants are Michael Ashley ("Ashley"), Lend America's former "Chief Business Strategist" and Helene DeCillis, its former Chief Operating Officer. Until June 2008, Defendants intentionally misclassified their officers as exempt from the FLSA and failed to pay them minimum wage or overtime. As a result, in June 2008, Defendants changed their practices and began paying loan officers minimum wage and made them eligible for overtime. At all relevant times, Defendants failed to maintain time records of all time worked by their loan officers in accordance with FLSA requirements.

A total of 302 loan officers have joined this collective action, and the Court has ordered that this case proceed on a collective basis through trial. Accordingly, Plaintiffs will present their case through the testimony of select representative Plaintiffs, the testimony of Defendants and their

former agents, and certain documents created by Defendants which are identified by Plaintiffs in the Joint Pre-Trial Order. At trial, Plaintiffs will establish (1) Plaintiffs were not paid for all time worked, including minimum wage and overtime, from September 21, 2004 (the beginning of the statutory period) through June 2008; (2) Defendants knew or should have known that Plaintiffs worked the unreported/unrecorded hours in question; (3) facts necessary to determine unreported/unrecorded hours worked as a matter of just and reasonable inference, in accordance with Supreme Court precedent; (4) Defendants' failure to pay minimum wage and overtime was willful; and, (5) the individual Defendants were "employers" under the FLSA.

## SUMMARY OF RELEVANT FACTS[1]

### I. The Parties

Until it was forced to cease operations in December 2009 when the FHA revoked its authority to make government-backed loans, Lend America was a mortgage banker employing several hundred loan officers in a call center environment. Plaintiffs were inside sales loan officers whose primary job duties were to sell home loans to prospective customers on the telephone from Lend America's call center, input their information in Lend America's computer database and close a deal.

### II. Defendants' Pay Scheme

Until June 2008, Defendants paid Plaintiffs on a "commission only" basis. In other words, inside sales loan officers were paid nothing unless they sold or "closed" a loan, at which time they

[1] In accordance with this Court's Individual Rules, Plaintiffs, in the interests of economy and efficiency, requested that Defendant Michael Ashley stipulate to certain facts which are not genuinely in dispute. For example, Plaintiffs requested that Ashley stipulate that Lend America is bankrupt, that the Court has already found that he was an "employer" under the FLSA during certain time periods as a matter of law (*See* D.E. 224), and to the existence of New York minimum wage rates set forth by statute. In response, Ashley stated that he would refuse to stipulate to <u>any</u> facts.

would receive a set percentage of the sale price. This meant that Plaintiffs routinely worked for weeks or months without any pay whatsoever.

On June 27, 2008, Defendants reclassified their loan officers as non-exempt and instituted a new plan calling for payment to loan officers of a recoverable draw equivalent to the minimum wage. Under this new plan, if a loan officer made a sale Defendants recouped the minimum wage draw from any commission the loan officer later earned. Plaintiffs contend that Defendants failed to pay overtime to loan officers for all time worked in excess of 40 in given work weeks.

## III. Facts Related to the Individual Defendants'[2] Status as "Employers" Unedr the FLSA

### A. Michael Ashley

This Court has already found as a matter of law that Ashley was Plaintiffs' employer from September 2003 to June 2004, and again from February 2005 to June 2005. D.E. 224 at 4 & 25. At trial, Plaintiffs will establish that Ashley controlled Lend America's daily operations, including its loan officers, throughout the entire statutory time period (September 21, 2004 to December 2009). Plaintiffs will prove, among other things, that Ashley hired and fired loan officers, established policies which applied to them, oversaw and evaluated their work, set their hours and established their pay structure.

### B. Helene DeCillis

Plaintiffs will prove at trial that DeCillis had ultimate authority over the Human Resources department at Lend America. In this capacity, DeCillis authorized pay to loan officers and reviewed their "commission sheets" to determine how much they would receive in pay. DeCillis,

---

[2] Plaintiffs' claims against Defendant Timothy Mayette were dismissed with prejudice pursuant to settlement on August 5, 2011. *See* D.E. 228. Defendant Michael Primeau has not participated in this litigation since his counsel withdrew in 2010. *See* D.E. 189.

along with Ashley, decided to change their loan officer pay plan in June 2008.

## IV. Facts Related to Defendants' Willfulness

As early as 2002, both Ashley and DeCillis were specifically informed by Lend America's Director of Human Resources, Denise Tyler, that their commission-only pay plan violated the FLSA. Nevertheless, Defendants failed to take any remedial measures to ensure compliance for several years and did so only after they were sued in this litigation.

## SUMMARY OF CLAIMS

## I. Plaintiffs Will Prove They Were Not Paid Minimum Wage

The FLSA requires employers to pay their employees minimum wage and one and one half times their "regular rate" for each hour worked in excess of forty hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). In addition, § 11(c) of the FLSA requires employers to keep records of their employees' wages and hours. 29 U.S.C. § 211(c). Plaintiffs will prove through testimony that Defendants failed to pay loan officers minimum wage before June 2008. By definition, Plaintiffs did not receive a guaranteed minimum wage because they were not paid anything unless they made a sale. When Plaintiffs failed to make a sale during a pay period, they received no pay at all, regardless of how many hours they worked. Defendants' failure to pay *any* wage for hours worked is a clear violation of the FLSA minimum wage requirements.

## II. Plaintiffs Will Prove They Were Not Paid Overtime

The FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Throughout the statutory period, Defendants encouraged their loan officers to work long hours, and their management reprimanded

or terminated loan officers who were not meeting their sales goals. To remain in good standing with management, loan officers had to work well in excess of 40 hours per week. Plaintiffs followed Defendants' mandates—regularly working over 40 hours per week, and at times worked 65 hours or more per week selling loans. As with Plaintiffs' minimum wage claim, Plaintiffs will prove Defendants failed to pay any overtime before June 2008. Plaintiffs will also establish that even after Defendants ostensibly made loan officers eligible for overtime after June 2008, Defendants failed to comply with the FLSA overtime requirements. As stated by the Second Circuit, if an employer fails to properly compensate an employee "for even one hour of overtime" pursuant to the FLSA, liability is established and the only remaining issue is the amount of damages. *Estrella v. P.R. Painting Corp.*, 356 Fed. Appx. 495, *2 (2d Cir. 2009).

## III. Plaintiffs Will Prove Defendants Knew or Should Have Known Plaintiffs Performed Work for Which They Were Not Compensated

It is well-established that an employee must be paid for all hours worked "if the employer knows or has reason to believe that the employee is continuing to work and that work was suffered or permitted by the employer." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001). Defendants obviously knew that their loan officers were working without any minimum wage before June 2008. Plaintiffs will also prove Defendants knowingly "suffered or permitted" Plaintiffs to work hours in excess of 40 in given workweeks without overtime compensation throughout the entire statutory period.

## IV. Plaintiffs Will Establish Unpaid Time Worked as a Matter of "Just and Reasonable Inference"

Where an employee has shown that he has performed work for which he was not compensated and the employer has maintained adequate records reflecting actual hours worked, plaintiff's burden to establish damages can be easily met by reviewing defendant's records. *E.g.*,

*Brown v. Family Dollar Stores of IN, L.P.*, 534 F.3d 593, 595 (7th Cir. 2008). But when, as here, the employer fails to maintain time records, employees may rely on their own recollection of time worked to meet their initial burden, *see, e.g., Rivera v. Ndola Pharm. Corp.*, 497 F. Supp.2d 381, 388 (E.D.N.Y. 2007); *Yang v. ACBL Corp.*, 427 F. Supp.2d 327, 335-36 (S.D.N.Y. 2005), in which case the employer must proffer evidence sufficient to rebut that recollection. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946). Plaintiff's proof need not be precise, and if the trier of fact finds the testimony at all credible, it may make an award based on an approximation of the employee's losses. *E.g., Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997).

Here, Defendants indisputably failed to maintain time records. Thus, they will not be able to credibly dispute Plaintiffs' reasonable estimate of the amount and extent of work as "a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687-88. Plaintiffs will be able to do just that by testifying to their typical work day and workweek, including overtime.

## V. Plaintiffs Will Establish that Defendants Willfully Violated the FLSA

The FLSA provides a statute of limitations of two years unless the cause of action arises from a "willful violation," in which case a three year limitations period applies. 29 U.S.C. § 255(a). In other words, if a plaintiff demonstrates that the employer's violations were willful, a plaintiff may recover an additional year of back wages. A violation of the FLSA is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (emphasis added). Reckless disregard means a "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 104; *Falzo v. County of Essex*, 2008 WL 2064811, at *9 (D.N.J. May 14, 2008) (citation omitted).

The evidence is that Plaintiffs knew as early as 2002 that that their commission-only pay scheme violated the FLSA. Aside from Defendants' actual knowledge, it was well-established that inside-sales loan officers like Plaintiffs are not exempt from the overtime and minimum wage protections of the FLSA. *See, e.g.,* 29 C.F.R. § 541.500; U.S. Dept. of Labor, Employment Standards Administration, Wage and Hour Division Opinion Letter dated March 31, 2006, at 3 (opining that sales force loan officers who do not engage in outside sales activity as a normal and recurrent part of their workweek are excluded from the FLSA exemption covering employees who were "customarily and regularly engaged in outside sales"). Because there is no dispute that Defendants had actual and constructive knowledge that their conduct violated the law, Plaintiffs are further entitled to a three-year statute of limitations for a willful violation of the FLSA.

## VI. Plaintiffs Will Establish the Individual Defendants' Status as Employers Under the FLSA

"In identifying the persons or entities who qualify as 'employers' ... statutory definitions sweep broadly." *Barfield v. New York City Health and Hosps. Corp.,* 537 F.3d 132, 140 (2d Cir.2008). Subject to a number of exceptions inapplicable here, the FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The term "employer" includes "any *person* acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d) (emphasis added). "The FLSA contemplates several simultaneous employers, each responsible for compliance with the Act." *Jiao v. Shi Ya Chen,* 2007 WL 4944767, at *9 (S.D.N.Y. Mar. 30, 2007).

Based upon Defendants' authority to control their loan officers, at trial Plaintiffs will satisfy the "economic realities" test articulated by the Second Circuit to establish Defendants' status as "employers" under the FLSA. *See Herman v. RSR Sec. Servs*., 172 F.3d 132, 139 (2d Cir. 1999).

## SUMMARY OF DAMAGES

Once the nature and extent of liability is established, damages should be calculated by the parties post-trial. As is clear from the discussion below, the actual monetary amount due Plaintiffs is not a jury question. Rather, the jury in this case will simply need to decide liability and the average number of hours that Plaintiffs worked without minimum and overtime pay. The jury will also decide whether Defendants "willfully" violated the law. Once the jury provides this information, the parties will have all the data necessary to calculate damages. The calculations are simple equations that do not require additional fact-finding. Thus, the jury need not decide the actual numerical value of Plaintiffs' damages. To understand this conclusion, an overview of the categories of damages sought—(1) unpaid minimum wage; (2) unpaid overtime compensation; (3) liquidated damages; and (4) attorneys' fees and costs—and calculation method is warranted.

### I. The Jury's Role in Calculating Damages

The jury plays a limited and discrete role with respect to calculating damages on Plaintiffs' minimum and overtime claims. For the purpose of damage calculations, the jury's role is simply to determine: (1) liability (whether Plaintiffs were wrongfully deprived of minimum and/or wages for regular and overtime hours worked under the FLSA); (2) the time period(s) in which Plaintiffs were wrongfully deprived of minimum and/or overtime wages under the FLSA; (3) the number of unpaid regular and overtime hours worked by Plaintiffs each week during the relevant time periods on average; and, (4) willfulness (whether Defendants willfully failed to pay Plaintiffs' minimum and/or overtime compensation).

After Plaintiffs meet their burden of proof on liability, the jury should be charged with determining the time periods in which Plaintiffs did not receive the required minimum and/or overtime wages and the average number of weekly unpaid regular and overtime hours worked by

each testifying Plaintiff. After this, determining the total number of unrecorded and unpaid regular and overtime hours worked by the class will be a simple function of applying the jury's finding to the class as a whole. It is not necessary for the jury to perform this math to determine classwide damages; rather, these calculations can be performed by the parties after the jury returns their answer on the number of weekly unpaid hours worked. This is simple math that the parties can perform post-trial. As the jury will already have sat through trial, their time should not be wasted by being sent to deliberate with a calculator and attempt to perform mathematical calculations for each of the 302 Plaintiffs on a week-by-week basis.[3]

## II. **Liquidated Damages**

Liquidated damages, also known as double damages, are a standard element of damages in FLSA cases. 29 U.S.C. § 216(b); *Reich v. Southern New England Telecomms. Corp.,* 121 F.3d 58, 66 (2d Cir.1997) ("Double damages are the norm. single damages are the exception … ."). To avoid liquidated damages, an employer found liable under the FLSA has the "plain and substantial" burden of persuading the court by proof that his failure to obey the statute was both in good faith and objective reasonableness. *E.g., Solis v. Cindy's Total Care, Inc.,* 2012 WL 28141, at * 23 (Jan. 5, 2012) (citation omitted). This burden "is a difficult one to meet…." *Reich v. So. New England Telecomm. Corp*., 121 F.3d 58, 71 (2d Cir. 1997). "Under the plain language of the [FLSA] statute, [liquidated damages] is a question for the court to determine not the jury." *Dingman v. Cart Shield USA, LLC*, 2013 WL 3353835, at *1 (S.D.Fla. July 3, 2013) (citation omitted). Thus, the question of liquidated damages remains in the Court's discretion and should not be submitted to the jury.

## III. **Attorneys' Fees**

The FLSA is a fee-shifting statute, which provides that the court, in any collective action,

[3] *See* Plaintiffs' contemporaneously-filed Statement of Damages which sets forth the methodology for calculating damages in FLSA collective actions such as this.

"shall, in addition to any judgment awarded to the plaintiff ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Allende v. Unitech Design, Inc.*, 783 F.Supp.2d 509, 511 (S.D.N.Y. Mar. 15, 2011) (citation omitted). Notably, "[a]n award of attorney fees to a prevailing plaintiff… is mandatory, but the amount of the award is within the discretion of the judge." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994) (citation omitted) (emphasis added). Thus, this component of damages, too, is not a question for the jury.

Dated: November 10, 2017

Respectfully Submitted,

*/s/ James B. Zouras*__________

James B. Zouras
Ryan F. Stephan
(Admitted Pro Hac Vice)
STEPHAN ZOURAS, LLP
205 North Michigan Avenue, Suite 2560
Chicago, IL 60601
(312) 233-1550
(312) 233-1560 (Fax)
Jzouras@stephanzouras.com
Rstephan@stephanzouras.com

Erik H. Langeland
The Law Offices of Erik H. Langeland
733 3rd Avenue, 15th Floor
New York, NY 10017
(212) 354-6270
(212) 898-9086 (Fax)
elangeland@langelandlaw.com

**COUNSEL FOR PLAINTIFFS**